Christopher M. Bunge, Esq. (SBN 258780)
cbunge@watttieder.com
Amanda L. Marutzky, Esq. (SBN 274376)
amarutzky@watttieder.com
WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
4 Park Plaza, Suite 1000
Irvine, California  92614
Telephone:  949-852-6700

Attorneys for Plaintiff
ARCH INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ARCH INSURANCE COMPANY, a
Missouri corporation;

        Plaintiff,

v.

FELDMAN & ASSOCIATES, INC., a
California corporation;

        Defendant.

Case No.

**COMPLAINT FOR:**

**(1)  Declaratory Judgment re Rights of Assignment and Subrogation; and**

**(2)  Declaratory Judgment re Invalidity of Attorneys' Fee Lien.**

Plaintiff Arch Insurance Company ("Plaintiff" or "Arch") hereby alleges as follows:

## PRELIMINARY STATEMENT

1.    By this Complaint, Arch seeks a declaration that Arch's rights and interests established under contract and law to certain funds held by a public agency on a public work of improvement has priority over a purported attorneys' lien asserted by Defendant, Feldman & Associates, Inc. ("Feldman").  Moreover, Arch seeks a declaration that Feldman's failure to obtain a conflict waiver from Arch as its relates to Feldman's attorneys' lien on said funds as defined herein is a violation of Rules of Professional Conduct 1.7, 1.8.1 and 1.9, thus voiding any lien as it pertains to Arch's interests.

/ / /

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

1

COMPLAINT BY ARCH INSURANCE
COMPANY

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this civil action. This court has original jurisdiction under 28 U.S.C. § 1332, in that this action is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand ($75,000.00) dollars.

3. Venue is proper in this judicial district because the corporate Defendant's principal place of business is in the City of Los Angeles, California, and Defendant is subject to jurisdiction in the Central District of California.

## THE PARTIES

4. Arch is, and at all relevant times herein was, a corporation duly organized and existing under the laws of the State of Missouri, with a principal place of business in Jersey City, New Jersey. "[T]he phrase 'principal place of business' refers to the place where the corporation's high-level officers direct, control, and coordinate activities." Hertz Corp. v. Friend, 130 S. Ct. 1181, 1186 (2010). Typically, the principal place of business or "nerve center" will be the corporation's headquarters. Id. Based on the following facts, Arch's principal place of business, or its "nerve center," is in Jersey City, New Jersey:

a.   Arch's headquarters are located in Jersey City, New Jersey.

b.   The Jersey City, New Jersey office is the main administrative office for Arch and contains the substantial predominance of Arch's corporate operations.

c.   The Jersey City, New Jersey office is where the majority of Arch's executive and administrative functions are performed.

d.   Arch's Jersey City, New Jersey office is the primary office of Arch's Chief Executive Officer.

e.   All ultimate decisions regarding Arch's business strategies, management of corporate assets and finances, and corporate governance are made in Jersey City, New Jersey.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

2

COMPLAINT BY ARCH INSURANCE
COMPANY

5.     At all relevant times, Arch was duly licensed to conduct business in the State of California.  Arch is an admitted surety insurer in the State of California, among other jurisdictions, and issues contract surety bonds, among other bonds, and lines of insurance in the course of its business.

6.     Defendant Feldman & Associates, Inc. ("Defendant" or "Feldman") is a corporation duly organized and existing under the laws of the State of California, with a principal place of business in Los Angeles, California.

## GENERAL ALLEGATIONS

7.     USS Cal Builders, Inc. ("USS Cal") is a contractor in the State of California that has performed work on multiple public works of improvement. Since 2005, Arch issued payment and performance bonds as surety for USS Cal in connection with USS Cal's construction of these projects.

8.     As a precondition to Arch issuing payment and performance bonds to USS Cal, Arch required USS Cal, and others, to sign a General Indemnity Agreement in favor of and to protect Arch in the event USS Cal's defaulted on any of its construction contracts.

9.     USS Cal, along with other individuals and entities, executed General Indemnity Agreements on the following dates in connection with Arch's issuance of payment and performance bonds to USS Cal:

a.  October 24, 2007;

b.  January 29, 2013;

c.  February 12, 2014;

d.  February 13, 2014;

e.  May 31, 2017 (Amendment No. 1 the February 13, 2014 GIA);

f.  March 11, 2014;

g.  May 27, 2015, including amendment of same date;

h.  October 15, 2015; and

i.  August 14, 2017.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

3

**COMPLAINT BY ARCH INSURANCE
COMPANY**

A true and correct copy of each General Indemnity Agreement is attached hereto as **Exhibits A through I.**

10.     In reliance upon each of the General Indemnity Agreements,  Arch issued bonds on behalf of USS CAL (the "USS Cal Bonds").  A table of all USS Cal Bonds is attached hereto as **Exhibit J**.

11.     Subsequent to Arch's issuance of the USS Cal Bonds, on July 19, 2018, USS Cal transmitted a letter to Arch requesting financial assistance.  In that letter, USS Cal represented to Arch that it was "experiencing cash flow problems" and that without financial assistance, it would be "unable to pay the bills of its subcontractors and suppliers on many of the contracts for which the Surety executed Payment Bonds and may become unable to perform and/or complete the performance of the work on many of the contracts for which the Surety executed Performance Bonds." USS Cal additionally acknowledged that as a result of its request for financial assistance, it was in default of its obligations to Arch as set forth in the General Indemnity Agreements.  A true and correct copy of that July 19, 2018 letter is attached hereto as **Exhibit K**.

12.     As a result of USS Cal's request for financial assistance, in August 2018, USS Cal, and others, executed with Arch a Collateral Pledge Agreement and subsequently executed amendments to the Collateral Pledge Agreement wherein Arch agreed to provide financing to USS Cal so it could continue to perform on the projects that Arch bonded.  Under the initial Collateral Pledge Agreement, which was effective on July 17, 2018, Arch extended in excess of $5 million in financing to USS Cal.

13.     The Collateral Pledge Agreement was the first in a series of collateral pledge agreements and attendant documents provided to Arch in regard to Arch's extension of financial assistance to USS Cal.  Among the agreements referenced in the preceding paragraph is the Second Amendment to the Collateral Pledge

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

4

COMPLAINT BY ARCH INSURANCE
COMPANY

Agreement, entered into on or about January 16, 2019, and executed by Arch and USS Cal, among others.

14.     The Second Amendment included an assignment of contract funds due and owing to USS Cal on bonded contracts. In furtherance of that assignment, the Second Amendment required USS Cal to direct project owners to direct payments to a Special Account with a specific address in Wichita, Kansas.  It specified that any payments received directly by USS Cal were held in trust for the benefit of Arch:

> In the event that any payment on any Second Amendment Project is received directly by USS Cal Builders, the INDEMNITORS agree that:
> (a) such payment will be held by the INDEMNITORS in trust for the SURETY, which is the beneficial owner of such payment, and
> (b) the INDEMNITORS will cause such payment to be sent immediately to the SURETY for deposit into the Second Amendment Disbursement Account.

15.     Feldman had knowledge of the aforementioned trust provision because attorneys with that firm represented USS Cal in regard to the negotiation of the Second Amendment and reviewed the Second Amendment in the course of that representation.

16.     Prior to the execution of the first Collateral Pledge Agreement, Arch recorded a UCC1 Financing Statement on May 29, 2018 as Doc. No. 70383720002. A true and correct copy of the May 29, 2018 UCC1 is attached hereto as **Exhibit L**. The purpose of the recordation of the UCC1 was to secure Arch's interests in all assets pledged by the Indemnitors under the General Indemnity Agreements.

17.     The amount of financing that Arch extended to USS Cal to keep USS Cal from defaulting on any of its bonded projects ballooned after the initial Collateral Pledge Agreement.  Arch to date has made payments in excess of $119,500,000.00 in the extension of financial assistance to USS Cal in regard to projects relating to which Arch issued the Bonds, and for other losses and expenses incurred by reason of the issuance of the Bonds.  Against that amount, Arch has to

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

5

COMPLAINT BY ARCH INSURANCE
COMPANY

date received roughly $63,000,000 in contract balance receipts, meaning that Arch's loss is in excess of $50 million.

18.    Additionally, Arch has incurred more than $5.4 million in fees and expenses as a result of USS Cal's financial problems and claims made against Arch's bonds.

19.    One of the projects that Arch bonded for USS Cal was Lafayette Station Site Improvements; Contract No. 15QH-150 ("Lafayette"), owned by the San Francisco Bay Area Rapid Transit District ("BART").  USS Cal pursued a Government Code claim against BART on this project.  This dispute resulted in USS Cal filing suit against BART in <u>USS Cal Builders, Inc. v. San Francisco Bay Area Rapid Transit District, et al.</u>, Alameda Superior Court, Case No. RG20061263.

20.    Arch filed a Motion to Intervene as Real Party in Interest based on its rights under the General Indemnity Agreements discussed above as well as its equitable rights of subrogation.  Arch, by intervening, asserted its rights and interests in USS Cal's Government Code claim and any proceeds therefrom.  The Court granted Arch's motion on or about June 6, 2022.

21.    On or about August 8, 2022, Feldman filed a Notice of Lien in the BART Lafayette Action.  It did not specify a lien amount.

22.    In August 2022, USS Cal had reached a settlement with BART in which BART agreed to pay the approximate sum of $1.6 million.  Arch reasserted its rights to the settlement funds.

23.    On August 30, 2022, Defendant Feldman, which was USS Cal's counsel of record in the BART matter, as well as many other lawsuits in which USS Cal and Arch were parties, served a letter upon Arch and BART purporting to be a "Notice of Attorneys' Lien."  Feldman demanded that the entire settlement from the Lafayette project and suit be paid to Feldman to satisfy the attorneys' lien.

24.     Feldman had previously represented to Arch that its attorneys' lien is inchoate and applies to each and every matter in which USS Cal is pursuing claims to recovery contract funds on projects bonded by Arch and other damages.

25.     As an example, Feldman filed a Notice of Attorneys' Fee Lien in a Coordinated Proceeding before the Superior Court of the County of San Francisco known as the USS Cal Construction Cases, Case No. CJC-17-004928. This Coordinated Proceeding arose from disputes on multiple projects owned by the South San Francisco Unified School District and on which USS Cal was the prime contractor along with Arch as its surety. In this proceeding, Arch, by way of its rights of assignment and subrogation, asserted rights to recover funds from the South San Francisco Unified School District by way of stop payment notice claims.  Feldman demanded that the South San Francisco Unified School District recognize its Notice of Attorneys' Fee Lien and therefore refrain from making any payments to Arch on the assigned/subrogated claims.

26.     In addition to representing USS Cal, Feldman has also represented Arch in past matters related to claims by subcontractors and suppliers of USS Cal and its affiliates against Arch's payment bonds.  These matters include, but are not limited to:

a.     Ferma Corp. v. USS Cal Builders, Inc., et al., Contra Costa County Superior Court, Case No. C18-01390;

b.     Alten Construction, Inc. v. Project Frog, Inc. et al., San Mateo Superior Court, Case No. CIV538555;

c.     Atlas Pelizzari Electric, Inc. v. USS Cal Builders, Inc., et al., San Mateo Superior Court, Case No. CIV538968;

d.     Cupertino Electric, Inc. v. Atlas Pelizzari Electric, Inc. et al., San Mateo Superior Court, Case No. 16CIV01556;

e.     Dinelli Plumbing, Inc. v. USS Cal Builders, Inc., et al., San Mateo Superior Court, Case No. CIV538974;

**COMPLAINT BY ARCH INSURANCE COMPANY**

f. <u>Joseph J. Albanese, Inc. v. USS Cal Builders, Inc. et al.</u>, San Mateo Superior Court, Case No. CIV538974;

g. <u>Pioneer Contractors, Inc. v. USS Cal Builders, Inc., et al.</u>, San Francisco Superior Court, Case No. CGC-16-556219;

h. <u>Project Frog, Inc. v. USS Cal Builders, Inc. et al.</u>, San Francisco Superior Court, Case No. CGC-16-554758;

i. <u>Richard Hancock, Inc. v. Project Frog, Inc., et al.</u>, San Mateo Superior Court, Case No. 16CIV01589;

j. <u>S&R Drywall, Inc. v. USS Cal Builders, Inc.</u>, et al., San Mateo Superior Court, Case No. 17CIV05118;

k. <u>A. Teichert & Son, Inc. v. Berkeley Cement, Inc., et al.</u>, San Mateo Superior Court, Case No. 16CIV01826;

l. <u>Waterproofing Associates, Inc. v. Project Frog, Inc., et al.</u>, San Mateo Superior Court, Case No. CIV538989;

m. <u>Pace Supply Corp. v. South San Francisco Unified School District, et al.</u>, San Mateo Superior Court, Case No. CIV 528738;

n. <u>Infinity Metals v. USS Cal  Builders, Inc., et al., Orange County Superior Court, Case No.</u> 30-2020-01151740-CU-CO-CJC;

o. <u>Marina Landscape, Inc. v. USS Cal Builders, Inc., et al.,</u> Orange County Superior Court, Case No. 30-2020-01162442-CU-BC-CJC;

p. <u>USS Cal Builders, Inc. v. Martinez Steel Corp.,</u> Orange County Superior Court, Case No. 30-2016-00858366-CU-BC-CJC;

q. <u>Alcorn Fence Co. v. USS Cal  Builders, Inc., et al., Orange County Superior Court, Case No.</u> 30-2018-01032789-CU-BC-CJC;

r. R.J. Noble Co. v. Arch Insurance Co., et al., <u>Orange County Superior Court, Case No.</u>30-2018-00990265-CU-BC-CJC;

s. <u>USS Cal Builders, Inc. v. Hardy & Harper, Inc., Orange County Superior Court, Case No.</u> 30-2016-00880230-CU-CO-CJC;

t.  Twining, Inc. v. USS Cal Builders, Inc., et al., Orange County Superior Court, Case No. 30-2018-01002788-CU-BC-CJC;

u.  Construction Laborers Trust Funds for Southern California Administrative Company v. MEK Enterprises, Inc., et al., United States District Court for the Central District of California, Case No. 2:17-cv-06990;

v.  Construction Laborers Trust Funds for Southern California Administrative Company v. CLS Constructors, Inc., et al., United States District Court for the Central District of California, Case No. 2:18-cv-06683;

w.  Construction Laborers Trust Funds for Southern California Administrative Company v. MEK Enterprises, Inc., et al., United States District Court for the Central District of California, Case No. 2:17-cv-06990;

x.  Construction Laborers Trust Funds for Southern California Administrative Company v. Lobby Traffic Systems, Inc., et al., United States District Court for the Central District of California, Case No. 8:17-cv-00543;

y.  ACR Glazing Contractors v. Sunnyvale School District, et al., Santa Clara Superior Court, Case No. 20CV366685;

z.  Silao General Engineering, Inc. v. Project Built, Inc. et al., Santa Clara Superior Court, Case No. 19CV360425;

aa.  Rick Slater Construction, Inc. v. USS Cal. Builders, Inc. et al., Santa Clara Superior Court, Case No. 19CV342275;

bb.  Johnson Controls Fire Protection LP fka SimplexGrinnell LP v. USS Cal. Builders, Inc. et al., Los Angeles Superior Court, Case No. 20SMCV00083;

cc.  Avar Construction Systems, Inc. v. USS Cal. Builders, Inc. et al., Los

Watt, Tieder,
Hoffar &
Fitzgerald, L.L.P.
Attorneys At Law

9                    COMPLAINT BY ARCH INSURANCE
                     COMPANY

Angeles Superior Court, Case No. BC662673;

dd.  El Camino Asphalt Paving Corp. v. USS Cal. Builders, Inc. et al,, Los Angeles Superior Court, Case No. 20SMCV01284;

ee.  Sunbelt Controls, Inc. v. Stanton Utilities, Inc. et al,, Los Angeles Superior Court, Case No. 19PSCV00609;

ff.  Huntington Glazing, Inc. v. USS Cal. Builders, Inc. et al,, Los Angeles Superior Court, Case No. 19SMCV01143;

gg.  Trustees of the Southern California Pipe Trades Health and Welfare Trust Fund, et al. vs. USS Cal Builders, Inc., et al., Los Angeles Superior Court, Case No. 19STCV42568

hh.  ACR Glazing Contractors v. San Francisco Bay Area Rapid Transit District , et al., Alameda Superior Court, Case No. RG20061263;

ii.  World Bridge Technologies, Inc. v. USS Cal Builders, Inc., et al., San Diego Superior Court, Case No. 37-2018-00061505-CU-BC-CTL;

jj.  Upland Contracting, Inc. v. CLS Constructors, Inc., et al., San Diego Superior Court, Case No  37-2018-00047101-CU-BC-CTL;

kk.  JDS Plumbing and Mechanical Inc. v. USS Cal Builders, Inc., et al., San Diego Superior Court, Case No  37-2018-00061130-CU-BC-CTL;

ll.  Acme Metals & Steel Supply, Inc. v. USS Cal Builders, Inc., et al., San Diego Superior Court, Case No. 37-2018-00034181-CU-OR-CTL;

mm.  Dick Miller, Inc.  v. USS Cal Builders, Inc., et al., San Diego Superior Court, Case No  37-2015-00027798-CU-BC-NC; and

nn.  FJ Willert Contracting Co., Inc. v. USS Cal Builders, Inc., et al., San Diego Superior Court, Case No  37-2015-00003480-CU-BC-NC.

27.  At no time has Arch ever consented to the purported attorneys' lien asserted by Feldman. Arch has informed Feldman that its attorneys' liens on such matters is in direct conflict with Arch's interests as a former client of Feldman as

well as its rights and obligations under the General Indemnity Agreements and Collateral Pledge Agreements.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment as to Arch's Rights of Assignment and Subrogation)

28.     The Plaintiff incorporates herein by reference paragraphs 1 through 27 of this Complaint as though set forth in full therein.

29.     Feldman has no basis to assert an attorneys' lien against the settlement funds from the BART/Lafayette action or against any proceeds from USS Cal claims arising from projects bonded by Arch.

30.     Pursuant to the multiple General Indemnity Agreements cited above, USS Cal, and others, agreed to exonerate, indemnify and keep indemnified Arch from and against any and all liability for losses and/or expenses of whatsoever kind or nature that Arch may incur as a result of having executed or procured the execution of bonds for USS Cal. Such losses include the payment of valid claims, completion costs, money loaned by the surety, attorneys' fees, and consultant fees.

31.     Additionally, USS Cal agreed that it would be in default under the General Indemnity Agreements for, among other things, failing to pay for labor and materials used in the prosecution of any project for which Arch issued bonds to USS Cal.

32.     Upon any default, USS Cal agreed that it would assign to Arch all rights and interests USS Cal maintained under any contract bonded by Arch, including any sums due to USS Cal under any bonded contract and also any claims arising from any bonded contract.

33.     Because USS Cal defaulted on its obligations under the General Indemnity Agreements when it requested financial assistance in 2018 and when it continued to be financially unable to perform on its bonded contracts, USS Cal's rights and interests in the claims on BART/Lafayette, as well as any proceeds from its claims arising from projects bonded by Arch, were contractually assigned to

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

11

COMPLAINT BY ARCH INSURANCE
COMPANY

Arch. In other words, USS Cal has no rights or interests in such proceeds or settlement funds.

34.    Similarly, USS Cal agreed in executing the Second Amendment that it had at most bare legal title in any payments from any project owner.  Feldman is aware that any payments received from BART on behalf of USS Cal are beneficially owned by Arch.

35.    In addition to its rights of assignment under the General Indemnity Agreements and the Collateral Pledge Agreement and amendments thereto, Arch maintains an interest in the BART/Lafayette settlement funds, as well as any proceeds from its claims arising from projects bonded by Arch, by way of its common law rights of equitable subrogation.

36.    Because USS Cal has no interest in the BART/Lafayette settlement funds, as well as any proceeds from its claims arising from projects bonded by Arch, the Feldman attorneys' lien attaches to nothing.

37.    The above facts establish that there exists a present, substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment by the Court.

38.    The facts alleged herein demonstrate that the parties have adverse legal interests and that valuable legal rights of the parties are directly affected to a specific and substantial degree.

39.    There is an immediate danger to Arch sustaining a distinct and palpable injury to its legal rights absent the determination of this controversy by the Court.

40.    The distinct and palpable injury to the legal rights of Arch is real and not conjectural.

///

///

///

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

12

COMPLAINT BY ARCH INSURANCE
COMPANY

**SECOND CAUSE OF ACTION**

**(Declaratory Judgment as to the Invalidity of the Feldman Attorneys' Lien)**

41.     The Plaintiff incorporates herein by reference paragraphs 1 through 40 of this Complaint as though set forth in full therein.

42.     Any attorneys' lien asserted by Feldman is ineffective as applied to Arch and its interests related to USS Cal.  Feldman was Arch's attorney of record in multiple lawsuits as cited above. Feldman's pursuit of its attorneys' lien is in direct conflict of Arch's rights and interests in the BART/Lafayette settlement funds as well as any other proceeding in which Arch stands to recover money from USS Cal's affirmative claims. Feldman has never sought or obtained Arch's waiver in said conflict of interest.  Feldman's failure to obtain a waiver and its continued pursuit of its attorneys' fee liens on USS Cal claims arising from projects bonded by Arch, including the BART/Lafayette action, is a violation of Rules of Professional Conduct 1.7. 1.8.1 and 1.9.  These violations bar Feldman from asserting a lien against the BART/Lafayette settlement funds and any proceeds arising from USS Cal claims arising from projects bonded by Arch.

43.     The above facts establish that there exists a present, substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment by the Court.

44.     The facts alleged herein demonstrate that the parties have adverse legal interests and that valuable legal rights of the parties are directly affected to a specific and substantial degree.

45.     There is an immediate danger to Arch sustaining a distinct and palpable injury to its legal rights absent the determination of this controversy by the Court.

46.     The distinct and palpable injury to the legal rights of Arch is real and not conjectural.

*///*

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Arch prays for judgment as follows:

ON THE FIRST CAUSE OF ACTION:

1.    For a declaration that Arch's rights and interests established under contract and law to certain funds held by BART as defined herein have priority over a purported attorneys' lien asserted by Defendant, Feldman & Associates, Inc.

2.    For a declaration that Arch's rights and interests established under contract and law to all proceeds from any affirmative claim by USS Cal arising from an Arch-bonded project have priority over a purported attorneys' lien asserted by Defendant, Feldman & Associates, Inc.

3.    For such other and further relief as the Court deems just and proper.

4.    For an award of attorneys' fees expended to prosecute this action; and

5.    For costs of suit herein.

ON THE SECOND CAUSE OF ACTION:

1.    For a declaration that Feldman's violation of Rules of Professional Conduct 1.7, 1.8.1 and 1.9 voids any attorney fee lien by Feldman as it pertains to Arch's interests in all proceeds from claims by USS Cal arising from projects bonded by Arch, including the BART/Lafayette Project.

2.    For such other and further relief as the Court deems just and proper.

3.    For an award of attorneys' fees expended to prosecute this action; and

4.    For costs of suit herein.

Dated: November 16, 2022          Watt, Tieder, Hoffar & Fitzgerald, L.L.P.

                                 By: /s/ Christopher M. Bunge
                                 Christopher M. Bunge
                                 Amanda L. Marutzky
                                 Attorneys for Plaintiffs
                                 ARCH INSURANCE COMPANY

**COMPLAINT BY ARCH INSURANCE COMPANY**

EXHIBIT A –

OCTOBER 24, 2007


**Arch** Insurance Company

a member of Arch Insurance Group

# GENERAL INDEMNITY AGREEMENT

THIS GENERAL INDEMNITY AGREEMENT (hereinafter called "Agreement") is made by the undersigned Indemnitors in favor of Arch Insurance Company, Arch Reinsurance Company, and any present or future subsidiary or affiliate of Arch Insurance Company, (hereinafter collectively called "Arch"), for the purpose of indemnifying Surety (as herein defined below) for any Bonds (as herein defined below), which Surety may have issued, or may hereafter issue, or on which Surety otherwise becomes surety.

**DEFINITIONS**:  The following terms are defined as follows:

**Principal**:  USS Cal Builders, Inc. and/or any person whose name is or has been furnished to Surety by any of the Indemnitors, including any of the Indemnitors named or referred to as "Principal" in any bond, undertaking or recognizance. The term "Principal" includes any present or future direct or indirect subsidiary, successor, affiliate or parent of any Indemnitor, including but not limited to partnerships, LLCs, LLPs or other entities, whether owned in whole or in part by any named Indemnitor.

**Indemnitors**: All Persons who sign this Agreement or whose authorized representatives sign this Agreement or any other agreement that incorporates by reference the terms of this Agreement. The Indemnitors warrant and represent that they have a material and beneficial interest in Surety's issuance of Bonds on behalf of the Principal, and acknowledge that Surety would not issue such Bonds without each Indemnitor's agreement to reimburse Surety for all losses arising under the Bonds.

**Surety**: Arch, or any other present or future subsidiary or affiliate of Arch, which may issue Bonds, as well as any and all sureties, co-sureties or reinsurers who issue, execute or reinsure any portion of the Bond or who procure bonds at the request of Arch.  The terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsurers.

**Persons:** An individual, corporation, partnership, Limited Liability Company (hereinafter called LLC), Limited Liability Partnership (hereinafter called LLP), joint venture, trust, estate or other legal entity.

**Bond:** Any and all bonds, including but not limited to surety bonds, undertakings and any renewals or extensions thereof issued by Surety, or issued by another at the request of Surety, on behalf of Principal, whether issued prior to or subsequent to the effective date of this Agreement.  The term Bond also includes any electronic processes in lieu of the issuance of paper bonds, whether in the contract bidding process, or otherwise.

**Bonded Contract:**  A contract for which Surety issues or has issued a Bond.

**Default:** An instance or condition in which Principal or Indemnitors, or any of them: (a.) fail to pay any Bond premium charge when due, (b.) forfeit, breach, abandon, default or be declared in default on any Bonded Contract, (c.) neglect or refuse to pay for any labor or materials used in the prosecution of a Bonded Contract, (d.) fail to honor any obligation under this Agreement, (e.) institute or have instituted against any or all of them a case under the Bankruptcy Code or similar statute, with respect to any Indemnitor as debtor, or any suit or proceeding alleging that any one of them is insolvent or requesting the appointment of a receiver or trustee for the benefit of creditors, (f.) have proceedings instituted against any of them that may have the effect of depriving any of them of the use of any part of the materials or equipment used in connection with the work under a Bonded Contract so as to hinder, delay or impede the normal and satisfactory progress of the work, (g.) make an assignment for the benefit of creditors that in any way impedes the rights of the Surety, (h.) in the case of Indemnitors which are not individuals, dissolve or cease to continue their legal existence, (i.) in the case of Indemnitors who are individuals, die, abscond, disappear, become incompetent, are convicted of a felony or are imprisoned, or (j.) violate any other written agreement with Surety.

**Loss**: Any and all liability, losses, costs, expenses, and fees of whatever kind or nature, that Surety may sustain or incur as a result of executing any Bond or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement. Loss includes but is not limited to: (a.) sums posted by Surety as a reserve for the payment of potential losses and / or expenses, (b.) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and / or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses, (c.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for the Principal or Indemnitors, (d.) funds advanced by Surety to the Principal in connection with a Bonded Contract, and (e.) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

**IN CONSIDERATION** of the execution of any such Bonds for Principal, from which it is acknowledged the Indemnitors derive a substantial material benefit, and as an inducement to such execution or continuation of suretyship and/or the issuance of Bonds by Surety, the Indemnitors, jointly and severally, agree as follows:

**1. INDEMNITY** - Indemnitors agree to indemnify and hold harmless Surety for any and all Loss sustained or incurred by reason of having executed any and all Bonds. The Indemnitors obligation to indemnify the Surety shall also apply to any Bond renewals, continuations or substitutes therefore. In the event of payments by Surety, Indemnitors agree to accept the voucher or other evidence of such payments as prima facie evidence of the fact and extent of the liability of Indemnitors to Surety in any demand, claim or suit by Surety against Indemnitors. Separate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety.

**2. SURETY'S CONSENT TO CHANGES** - Surety may consent to changes in any Bond or to changes in the contract or obligation, which is the subject of any Bond, or may refuse to consent to any such change. Surety's actions in consenting or in not consenting to any such change shall not release or affect the obligations of Indemnitors to Surety under this Agreement.

**3. SURETY'S RIGHT TO DECLINE BONDS** - Surety has the right to decline to execute any Bond requested by the Principal or Indemnitors, including any such Bond requested after Surety has executed a preliminary bond including, but not limited to, a bid or proposal bond, or a Consent of Surety to the issuance of Bonds. Surety's declining to issue or execute any Bond shall not release or affect the obligations of Indemnitors to Surety under this Agreement.  Principal and Indemnitors acknowledge that the Surety makes no representations as to the acceptability of any of its Bonds to any person, firm or entity under any contract, and that Principal and Indemnitors shall have no claim against the Surety relating to the failure or refusal of any entity to accept any Bond issued by the Surety.

**4. POSTING OF COLLATERAL** – Indemnitors agree to deposit with Surety, immediately upon demand by Surety, an amount equal to the greater of (a.) the amount of any reserve established by Surety to cover any actual or potential Loss, or (b.) the amount of any claim or claims or other liabilities asserted against Surety as a result of issuing any Bond. Surety may, in its sole discretion, use any part or all of the collateral in settlement or payment of any Loss or other liability or expense for which the Indemnitors would be required to reimburse Surety under the terms of this Agreement. If Surety permits the Indemnitors to deposit less than the full amount of either (a.) or (b.) herein, Surety may, from time to time, require the Indemnitors to increase the amount of the collateral by any amount Surety deems appropriate, in its sole discretion, up to an amount equal to the greater of (a.) or (b.) herein. Surety agrees to refund any unused portion of the deposit upon the termination of all liability of Surety on all Bonds and the full performance of all of the Principals and Indemnitors of all obligations under this Agreement.

**5. SURETY'S RIGHTS RE: CLAIMS** - Surety shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and Surety's decision thereon shall be final and binding upon the Indemnitors. Subject to the Surety's rights set forth in the first sentence of this section, which shall remain in full force and effect, if Principal or Indemnitors desire that the Surety litigate such claim or demand, or defend such suit, or appeal from such judgment, they shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered, or which might be rendered, against the Surety, together with interest, costs and attorneys fees.

**6. SURETY'S RIGHTS RE: DEFAULT** - In the event of a Default, Surety shall have the right, but not the obligation, to take possession of the work under any and all Bonded Contracts, and complete or consent to the completion of such Bonded Contracts at the expense of the Indemnitors.

**7. ASSIGNMENTS** - In the event of a Default, Principal and Indemnitors do hereby assign, transfer and set over to Surety, all of their rights under all Bonded Contract(s) including (a.) their right, title and interest in all sub-contracts and purchase orders let in connection therewith, (b.) all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for purposes of the Bonded Contract(s) including all materials ordered or fabricated for the Bonded Contract(s), (c.) all claims and causes of action against any parties to the Bonded Contract(s) or against third parties relating to the Bonded Contract(s), (d.) any and all sums due, or to become due under the Bonded Contract(s) at or after the time of such Default and (e.) all rights it has in patents, patented processes, licenses, designs, copyrights, trademarks and all other intellectual property rights required for the performance of the work for which Surety has issued bonds, and expressly authorize Surety to use these property rights as required in Surety's discretion to complete the Bonded Contract(s). In the event of a Default, each of Principal and Indemnitors hereby appoint and designate Surety or it's authorized representative as their respective Attorneys-in-Fact to endorse and sign in the name of Principal or Indemnitor, as payee or otherwise, all documents and all checks, drafts, warrants or other instruments made or issued in connection with the Bonded Contract(s). Surety shall have the right to receive, collect and disburse the proceeds of all such checks, drafts or warrants.

**8. DISCHARGE OF SURETY** - Upon the request of Surety, Principals and Indemnitors will procure the discharge of Surety from any Bond, and all liability arising there from, and provide evidence to Surety regarding same.

**9. ACCESS TO BOOKS & RECORDS** - Surety, including its designated agents, shall, at any and all times, have unrestricted access upon reasonable notice to review all books and records of Principal and Indemnitors, including all books and records pertaining to their financial condition, and to the status of each unbonded and Bonded Contract. Principal and Indemnitors agree to provide updated financial statements upon the Surety's request. Principal and Indemnitors hereby authorize those with whom such Bonded Contracts are made to furnish to Surety all information concerning such contracts and the work thereunder.

**10. INDEMNITORS' WAIVER OF NOTICE** - Indemnitors warrant that each of them is specifically and beneficially interested in the obtaining of each Bond and agree to keep themselves fully informed as to the business activities and financial affairs of any one or more of the Indemnitors or any Principal for whom Bonds are executed by Surety. Indemnitors hereby expressly waive any notice from the Surety of any fact or information coming to the attention or knowledge of the Surety which affects its rights or the rights or liabilities of the Indemnitors, including notice of execution of any particular Bond subject to this Agreement.

**11. EFFECT OF INVALIDITY** - Any defect or invalidity in the execution of this Agreement by any Indemnitor shall not in any manner affect the validity of these obligations or the liability hereunder of the other Indemnitors. Invalidity of any provision of this Agreement by reason of the laws of any State or for any other reason shall not render the remaining provisions of this Agreement invalid, and this Agreement shall be construed and enforced with the same effect as though such provision or provisions were omitted.

**12. TERMINATION BY ANY INDEMNITOR** - Any Indemnitor wishing to terminate this Agreement must give Arch written notice by Registered Mail at least thirty (30) days prior to termination. The termination will not affect Indemnitor's obligations hereunder with respect to any Bonds executed and issued prior to the termination of this Agreement by that Indemnitor. The termination by any one Indemnitor shall not affect the liability of any other Indemnitor.

**13. EFFECT OF CHANGE IN STATUS/TRANSFER OF ASSETS** - Each Indemnitor agrees not to change or convert its respective individual, corporate or partnership status to either an LLC or an LLP or any other similar structure which has the effect of limiting, reducing or shielding the liability of either the entity or its partners and/or officers hereunder, without the prior, express, written consent of Surety. Should any Indemnitor so change its respective corporate or partnership status without the prior, express, written consent of Surety, Indemnitor agrees that such change in its status shall not limit, reduce or otherwise shield its obligations, its partners' and/or officers' obligations, to Surety which arise from this Agreement. Indemnitors hereby expressly waive as against Surety any and all defenses which may arise from such a conversion to a LLC, LLP or similar status. Indemnitors acknowledge that the Surety relies upon the assets reflected in their financial statements in the issuance of Bonds,

and agree not to dispose of or transfer said assets, except in the ordinary course of business, without the prior, express, written consent of Surety.

**14. NOTICE OF CHANGE IN RESIDENCE** - Each Indemnitor who is an individual agrees to give Surety written notice of any change in his/her principal residence within 30 days of the change of address. Each Indemnitor, which is not an individual, agrees not to change its principal place of business or the state of jurisdiction in which it is incorporated or otherwise organized without also giving Surety 30 days written notice of the proposed change. If Surety has previously filed a Uniform Commercial Code Financing Statement with respect to such Indemnitor, Indemnitor agrees to file a Financing Statement in the new state or jurisdiction.

**15. EFFECT OF RELEASE OF ANY INDEMNITOR** - Indemnitors agree that, at any time, Surety may release any Indemnitor or Indemnitors from this Agreement, without affecting, reducing or otherwise limiting the obligations of any remaining Indemnitor, and Indemnitors hereby expressly waive both (a) notice from Surety of any such release, and (b) any defense that may be created in favor of any remaining Indemnitor as a result of Surety's release of another Indemnitor. Waiver of any one Default shall not be deemed a waiver of any other Default.

**16. FILING OF AGREEMENT UNDER THE UCC** - This Agreement shall constitute a Security Agreement and grants to Surety a security interest in all assets, and also shall constitute a Financing Statement naming Surety as secured creditor and each Indemnitor as debtor, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of a copy of this Agreement shall be solely at the option of Surety and Surety's failure to do so shall not release or impair any obligation of Indemnitors, under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of Surety's rights under this Agreement or otherwise. The appearance of Arch's logo on the first page of this Agreement shall constitute its signature hereon. Indemnitors hereby irrevocably appoint and designate Surety or its authorized representative as their respective Attorneys-In-Fact to sign any Financing Statement form which may be required in order to file the same in any jurisdiction or office.

**17. APPLICABILITY OF AGREEMENT** - This Agreement shall apply to all Bonds executed by and/or procured by Surety for Principal, in its own name or as a joint venture with others.  Indemnitors expressly waive any defense that may arise as a result of this Agreement having been executed subsequent to the date of the issuance of any Bond and Indemnitors admit and acknowledge that any such Bond was executed pursuant to an Indemnitors' request and in reliance on the Indemnitors' representation and promise to execute this Agreement.

**18. PAYMENTS BY INDEMNITORS** - All payments made by Indemnitors to Surety under this Agreement shall be in United States Dollars and in no other currency and shall be sent, at Surety's discretion via check or wire transfer to any bank account subsequently designated by Surety. All sums payable to the Surety under this Agreement shall bear interest if not paid by Indemnitors within ten (10) days of demand by Surety. The interest rate shall be an annual rate of 10%, or the maximum rate permitted by applicable law if less than 10%.

**19. TRUST FUNDS** - Principal and Indemnitors agree and expressly declare that all funds due or to become due under any Bonded Contract are trust funds, whether in the possession of Principal or another and whether designated trust funds or not, for the benefit and payment of all persons to whom Principal incurs obligations in the performance of such contract, for which Surety would be liable under any Bond. If Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds.

**20. JURISDICTION -** As to any legal action related to this Agreement, Principal and Indemnitors consent to the jurisdiction of any court of competent jurisdiction, including the jurisdiction of any state or federal court where the Principal or one or more of any of the Indemnitors is domiciled or doing business, at the sole discretion of the Surety.  Principal and Indemnitors waive any claim or defense in any such action based on alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

**21. NOTICE OF SERVICE -** Notice of Service made by U. S. Mail or by FAX to the last known address constitutes service whether or not received.

**22. ADDRESS FOR NOTICES** - All notices required to be given by Indemnitors under this Agreement shall be sent by registered mail to Arch Insurance Company, 3 Parkway, Suite 1500, Philadelphia, PA 19102 USA and shall include a copy of this Agreement attached thereto.

**23. WRITING CONSTITUTES THE ENTIRE AGREEMENT** - This Agreement constitutes the entire Agreement among the Principal, Indemnitors and the Surety regarding the rights and obligations of the parties hereto and supersedes any prior agreement between the parties. The parties acknowledge that there are no other agreements or understandings, whether oral or written, that in any way modify, change or vitiate the obligations of this Agreement.  This Agreement, and the rights and remedies of Surety hereunder may not be waived, challenged or modified orally. No written waiver, change or modification shall be effective unless signed by an officer or other authorized representative of Surety.

IT IS FURTHER UNDERSTOOD AND AGREED that the Indemnitors, and their successors and assigns, are jointly and severally bound by all of the foregoing conditions of this Agreement.

IN TESTIMONY WHEREOF, the Indemnitors, intending to be legally bound hereby, represent that they have read and understood the foregoing provisions and have below set their hands and affixed their seals, as appropriate, this 24TH_____ day of OCTOBER_____ , 2007.

**Witness/ Attest**

By: _____
                        Corporate Secretary

Principal/Indemnitor:
USS Cal Builders, Inc.
By: _____
Print Name: Jennifer Hotrum
Its: President
Tax I.D. No.: _____
Address: _____
_____

                                                                    (seal)

By: _____

Indemnitor:
Jennifer Hotrum
By: _____
Print Name: Jennifer Hotrum
Its: Individual
Tax I.D. No.: _____
Address: _____
_____

By: _____

Indemnitor: Allen Othman
By: _____
Print Name: Allen Othman
Its: Individual
Tax I.D. No.: _____
Address: _____
_____

By: _____

Indemnitor: Eric Othman
By: E. Othman
Print Name: Eric Othman
Its: Individual
Tax I.D. No.: _____
Address: _____
_____

# ACKNOWLEDGMENTS

**Corporate Acknowledgment(s)**

STATE OF _____California_____

COUNTY OF _____Los Angeles_____ } ss:

On this __29th__ day of __October__ _____, 2007, before me, the undersigned, a Notary Public in and for the said State, personally appeared _____Jennifer Hotrum_____ , known to me (or proved to me on the basis of satisfactory evidence) to be the __President__ , of __USS Cal Builders, Inc.__ , the corporation that executed the within instrument and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

_____ (seal)
Notary Public
My commission expires __5/20/11__

**Individual Acknowledgment**

STATE OF_____California_____

COUNTY OF_____Los Angeles_____ } ss:

On this __29th__ day of __October__, 2007, before me, the undersigned, a Notary Public in and for the said State, personally appeared Jennifer Hotrum, known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same.

_____ (seal)
Notary Public __5/20/11__
My commission expires

C. HOLMES
Commission # 1741035
Notary Public - California
Orange County
My Comm. Expires May 20, 2011

**Individual Acknowledgment**

STATE OF_____California_____

COUNTY OF_____Los Angeles_____ } ss:

On this __29th__ day of __October__, 2007, before me, the undersigned, a Notary Public in and for the said State, personally appeared Allen Othman, known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same.

_____ (seal)
Notary Public
My commission expires __5/20/11__

C. HOLMES
Commission # 1741035
Notary Public - California
Orange County
My Comm. Expires May 20, 2011

**Individual Acknowledgment**

STATE OF_____California_____

COUNTY OF_____Los Angeles_____ } ss:

On this __29th__ day of __October__, 2007, before me, the undersigned, a Notary Public in and for the said State, personally appeared Eric Othman, known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same.

_____ (seal)
Notary Public __5/20/11__
My commission expires

C. HOLMES
Commission # 1741035
Notary Public - California
Orange County
My Comm. Expires May 20, 2011

Arch GIA 01-04                                          Page 6 of 6

EXHIBIT B –

JANUARY 29, 2013



# GENERAL INDEMNITY AGREEMENT

THIS GENERAL INDEMNITY AGREEMENT (hereinafter called "Agreement") is made by the undersigned Indemnitors in favor of Arch Insurance Company, Arch Reinsurance Company, and any present or future subsidiary or affiliate of Arch Insurance Company, (hereinafter collectively called "Arch"), for the purpose of indemnifying Surety (as herein defined below) for any Bonds (as herein defined below), which Surety may have issued, or may hereafter issue, or on which Surety otherwise becomes surety.

## RECITALS

A.  Principal, as hereinafter defined, in the performance of contracts and the fulfillment of obligations generally, whether in their own names or with others, may desire or be required to give or procure Bonds, and to renew, continue or substitute from time to time the same or new Bonds, or the Indemnitors may have an interest in inducing the Surety to refrain from canceling said Bonds.

B. The Indemnitors understand that the Surety expressly requires the execution and delivery of this  Agreement as part of the consideration for the execution by the Surety of such Bonds which may hereafter be furnished, or for the refraining of canceling such Bonds.

C. The Indemnitors have a substantial, material and beneficial interest in the Principal's obtaining of Bonds from the Surety or in the Surety's refraining from canceling such Bonds.

## AGREEMENTS

**IN CONSIDERATION** of the foregoing premises and the Surety's execution and delivery of one or more Bonds or its refraining from canceling the same, and intending to be legally bound hereby, the Indemnitors, for themselves and their respective heirs, executors, administrators, successors, and assigns, hereby agree, jointly and severally, to be obligated to the Surety, its successors and assigns, as follows.

**1.  DEFINITIONS** - In addition to the capitalized terms defined elsewhere in this Agreement, the following terms when used in this Agreement, unless the context otherwise requires, shall have the meanings indicated in this paragraph, which meanings shall be equally applicable to both the singular and plural forms of such terms:

    a.  **Principal**: Any Indemnitor on behalf of which Surety may execute a Bond and/or any Person whose name is or has been furnished to Surety by any of the Indemnitors or on behalf of which Surety has issued any Bond at the request of any Indemnitor, including, but not limited to, any of the Indemnitors named or referred to as "Principal" in any bond, undertaking or recognizance. The term "Principal" also includes any present or future direct or indirect subsidiary, successor, affiliate or parent of any Indemnitor and any partnerships, LLCs, LLPs or other entities owned in whole or in part by any named Indemnitor.

    b.  **Indemnitors**: All Persons who sign this Agreement or whose representatives sign this Agreement or any other agreement that incorporates by reference the terms of this Agreement. The Indemnitors warrant and represent that they have a material and beneficial interest in Surety's issuance of Bonds on behalf of the Principal, and acknowledge that Surety would not issue such Bonds without each Indemnitor's agreement to reimburse Surety for all losses arising under the Bonds.

    c.  **Surety**: Arch and/or any other present or future subsidiary or affiliate of Arch, which may issue Bonds, as well as any and all sureties, co-sureties or reinsurers who issue, execute or reinsure any portion of the Bond or who procure bonds at the request of Arch.  The terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsurers.

d. **Person:** An individual, corporation, partnership, Limited Liability Company (hereinafter called LLC), Limited Liability Partnership (hereinafter called LLP), joint venture, trust, estate or other legal entity.

e. **Bond:** Any and all bonds, including but not limited to surety bonds, undertakings, guaranties, and any renewals or extensions thereof issued by Surety, or issued by another at the request of Surety, on behalf of Principal, whether issued prior to or subsequent to the effective date of this Agreement. The term Bond also includes any electronic processes in lieu of the issuance of paper bonds, whether in the contract bidding process, or otherwise.

f. **Bonded Contract:** A contract for which Surety issues or has issued a Bond.

g. **Default:** An instance or condition in which Principal or Indemnitors, or any of them: (a.) fail to pay any Bond premium charge when due, (b.) forfeit, breach, abandon, default or be declared in default on any Bonded Contract or fail to pay when due any obligation to which any Bond may pertain, (c.) neglect or refuse to pay for any labor or materials used in the prosecution of a Bonded Contract, (d.) make or have made any representation as to any Indemnitor's financial condition or supply any information to Surety which is untrue, materially false or misleading, (e.) fail to honor any obligation under this Agreement, (f.) institute or have instituted against any or all of them a case under the Bankruptcy Code or similar statute, with respect to any Indemnitor as debtor, or any suit or proceeding alleging that any one of them is insolvent or requesting the appointment of a receiver or trustee for the benefit of creditors, (g.) have proceedings instituted against any of them that may have the effect of depriving any of them of the use of any part of the materials or equipment used in connection with the work under a Bonded Contract so as to hinder, delay or impede the normal and satisfactory progress of the work, (h.) make an assignment for the benefit of creditors that in any way impedes the rights of the Surety, (i.) in the case of Indemnitors which are not individuals, dissolve or cease to continue their legal existence, (j.) in the case of Indemnitors who are individuals, die, abscond, disappear, become incompetent, are convicted of a felony or are imprisoned, or (k.) violate any other written agreement with Surety or for the benefit of Surety, including without limitation, subordination agreements with Indemnitors (hereinafter referred to as Other Agreements).

h. **Loss:** Any and all liability, losses, costs, expenses, and fees of whatever kind or nature, that Surety may sustain or incur as a result of executing or procuring any Bond or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement.  Loss includes but is not limited to: (a.) sums posted by Surety as a reserve for the payment of potential losses and/or expenses, (b.) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses,  (c.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for Principal or Indemnitors, (d.) funds advanced by Surety to a Principal, and (e.) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

**2. PREMIUMS** - The Principal and Indemnitors will pay to the Surety, promptly upon demand, all premiums, costs and charges of the Surety, in accordance with its rate filings, rates as it determines from its manual of rates, or rates as the Surety may otherwise determine, for any Bonds requested from and/or issued by the Surety. Where such premiums, costs and charges are annual, the Principal and Indemnitors agree to pay the same until the Principal and Indemnitors shall deliver evidence satisfactory to the Surety of the discharge or release of all liability under such Bonds.

**3. INDEMNITY** - The Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, pre- and post-judgment interest, court costs and counsel fees, and accounting, engineering and consulting fees,  and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, whether such Bond or Bonds were issued prior to or after the date of this Agreement (2) By reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement or Other Agreements.  In the event of any payment by the Surety the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such

payments made by the Surety shall be *prima facie* evidence of the fact and amount of the liability to the Surety.  As used in this paragraph, "good faith" means honesty in fact and the absence of malice or fraud.

**4. POSTING OF COLLATERAL** - If the Surety determines, in its sole discretion and judgment, that potential liability exists for losses, fees, costs, or expenses, for which the Principal and Indemnitors will be obligated to indemnify the Surety under the terms of this Agreement or Other Agreements, the Principal and Indemnitors shall deposit with the Surety, promptly on demand, a sum of money equal to the amount the Surety determines or collateral security of a type and value satisfactory to the Surety, to cover that liability, whether or not the Surety has : (a) established a reserve; (b) made any payments; or (c) received any notice of claims under the Bonds. At the Surety's sole option, such collateral shall be in addition to and not in lieu of any other collateral that has been previously been provided to the Surety with any Bond or Bonds. The Surety shall have the right to use the collateral, or any portion thereof, in payment or settlement of any such liabilities for which the Principal and Indemnitors would be liable to the Surety under this Agreement or Other Agreements with respect to payments made by Surety. The Surety shall have no obligation to invest or provide a return on any collateral provided under this Agreement. Indemnitors acknowledge that the failure of Indemnitors to pay to Surety, immediately upon demand, the sum demanded by Surety hereunder, shall cause irreparable harm to Surety for which Surety has no adequate remedy at law.  Indemnitors agree that Surety shall be entitled to temporary, preliminary and final injunctive relief for specific performance of their obligations hereunder, including the obligation to pay to Surety the sum demanded, and waive any defenses thereto.  To the extent Surety accepts collateral other than money, Surety shall not be liable to any Indemnitor for any diminution in value, loss or destruction of such collateral and shall have no obligation to maintain or insure such collateral.

**5. SURETY'S CONSENT TO CHANGES** - Surety is authorized and empowered, without notice to or knowledge of the Principal and Indemnitors, to  consent to changes in any Bond or to changes in the contract or obligation, which is the subject of any Bond, or may refuse to consent to any such change, including, without limitation, any change in the time for the completion of said contract and to payments or advances thereunder before the same may be due, and to assent  to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of any Bonds and to executed any substitute or substitutes therefore, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Principal and Indemnitors shall remain bound by the terms of this Agreement, even though any such assent by the Surety does or might substantially increase the liability of the Indemnitors. Surety's actions in consenting or in not consenting to any such change shall not release or affect the obligations of Indemnitors to Surety under this Agreement.  The Indemnitors further warrant and represent that they are currently informed and shall remain knowledgeable and apprised of Principal's business activities and financial condition. Surety has no obligation to inform Indemnitors of any change in the business affairs and financial condition of Principal.

**6. SURETY'S RIGHT TO DECLINE BONDS** - Surety has the right to decline to execute any Bond requested by the Principal or Indemnitors, including any such Bond requested after Surety has executed a preliminary bond including, but not limited¹to, a bid or proposal bond, or a Consent of Surety to the issuance of Bonds. This right applies to any Surety's declining to issue or execute any Bond for any reason whatsoever. If the Surety requests another surety to execute a Bond and such other surety declines to execute the Bond, the Surety shall have no liability to the Principal or Indemnitors for such declination. Surety's declining to execute any Bond shall not release or affect the obligations of Indemnitors to Surety under this Agreement. Principal and Indemnitors acknowledge that the Surety makes no representations as to the acceptability of any of its Bonds to any person, firm or entity under any contract, and that Principal and Indemnitors shall have no claim against the Surety relating to the failure or refusal of any entity to accept any Bond issued by the Surety. The Indemnitors acknowledge and agree that it is their sole responsibility to provide the proper forms on a timely basis for the bonds to be executed by the Surety, and to review and approve any bond and undertaking executed by the Surety on its own forms. Neither the Surety, nor its agents, shall have any liability whatsoever to the Indemnitors if they shall fail to furnish the Surety with the proper forms or to object to forms furnished by the Surety.

**7. BOND FORMS** - It shall be the sole responsibility of the Indemnitors to review all bond forms executed by the Surety for appropriateness and for any errors or omissions prior to delivery of the bonds to an obligee. The Surety and its agents shall have no liability to the Indemnitors on account of any negligence (whether sole or concurrent), inadvertence, error or omission in the preparation, execution, or delivery of any bonds. Prior to requesting that the Surety issue any bond, the Indemnitors shall obtain confirmation that the proposed obligee on the bond will accept the Surety as surety on the proposed bond, and neither the Surety, nor its agents, shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the Surety as surety on any bond. The Indemnitors agree that the Indemnitors shall be solely responsible for arranging, independent of the Surety, for the timely delivery of any bond to the obligee. The Surety and its agents shall have no liability to the Indemnitors if any bond is not timely delivered to any obligee for any reason whatsoever, including any negligent acts or omissions on the part of the surety or its agents.

**8. SURETY'S RIGHT TO SETTLE CLAIMS** - Surety shall have the sole and exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and Surety's decision thereon shall be final and binding upon the Indemnitors.  Subject to the Surety's rights set forth in the first sentence of this section, which shall remain in full force and effect, if Principal or Indemnitors desire that the Surety litigate such claim or demand, or defend such suit, or appeal from such judgment, they shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered, or which might be rendered, against the Surety, together with interest, costs and attorneys fees.

**9. SURETY'S RIGHT TO COMPLETE WORK -** In the event of a Default, Surety shall have the right, but not the obligation, to take possession of the work under any and all Bonded Contracts, and complete or consent to the completion of such Bonded Contracts at the expense of the Indemnitors.

**10. ADVANCES** - The Surety is authorized and empowered, but not obligated, to guarantee loans, to advance or lend to the Principal any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Principal, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Principal to the Surety when due, shall be presumed to be a loss by the Surety for which the Principal and the Indemnitors shall be liable, notwithstanding that said money or any part thereof should not be so used by the Principal.

**11. ASSIGNMENTS** - Effective as of the date of this Agreement, but enforceable only in the event of a Default, Principal and Indemnitors do hereby assign, transfer and set over to Surety, all of their rights under all Bonded Contract(s) including (a.) their right, title and interest in all subcontracts, subcontract bonds, and purchase orders let in connection therewith, (b.) all machinery, plant, equipment, tools and materials located anywhere, whether for the purposes of the Bonded Contract(s) or not, (c.) all claims and causes of action against any parties, (d.) any and all sums due, or to become due under any contract, whether bonded or not, (e.) all rights in or arising out of any insurance policies of any type, (f.) all rights it has in patents, patented processes, licenses, designs, copyrights, trademarks and all other intellectual property rights, and expressly authorize Surety to use these property rights, at no cost to the Surety, and all proceeds arising therefrom and all records (in whatever form) related thereto.

**12. ATTORNEY IN FACT** - Principal and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Principal and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Principal and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Principal and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

**13. DISCHARGE OF SURETY** - Upon the request of Surety, Principals and Indemnitors will procure the discharge of Surety from any Bond, and all liability arising there from, and provide evidence to Surety regarding same.

**14. BOOKS & RECORDS** - Principal and Indemnitors shall provide to the Surety within 120 days of the end of their respective fiscal years, financial statements prepared in accordance with Generally Accepted Accounting Principles and reports prepared by reputable accounting firms, prepared in accordance with the AICPA's Statements on Standards for Accounting and Review Services (hereinafter SARS). If the Principal and/or Indemnitors have reports prepared by reputable accounting firms in accordance with AICPA's Statements on Auditing Standards, which reports are prepared in connection with the ordinary course of their financial reporting, then such reports shall be provided instead of reports prepared in accordance with SARS. Principal and Indemnitors shall also provide to Surety any management reports received from their accountants within 30 days of receipt. In addition to the foregoing, the Surety, including its designated agents, shall, at any and all times, have unrestricted access upon reasonable notice to review all books and records of Principal and Indemnitors, including all books and records pertaining to their financial condition, and to the status of each unbonded and Bonded Contract. Principal and Indemnitors hereby authorize those with whom such Bonded Contracts are made to furnish to Surety all information concerning such contracts and the work thereunder. Principal and Indemnitors understand and agree that the failure to provide the information required in this paragraph shall be a material breach of this Agreement and shall entitle the Surety to demand, in its sole discretion, cash collateral up to the penal sums of any and all outstanding Bonds.

**15. INDEMNITORS' WAIVER OF NOTICE** - Indemnitors warrant that each of them is specifically and beneficially interested in the obtaining of each Bond and agree to keep themselves fully informed as to the business activities and financial affairs of any one or more of the Indemnitors or any Principal for whom Bonds are executed by Surety. Indemnitors hereby expressly waive any notice from the Surety of any fact or information coming to the attention or knowledge of the Surety which affects its rights or the rights or liabilities of the Indemnitors, including notice of execution of any particular Bond subject to this Agreement and notice of default by the Principal or of the receipt of claims under any Bond.

**16. EFFECT OF INVALIDITY** - Any defect or invalidity in the execution of this Agreement by any Indemnitor or the failure of any Indemnitor whose name appears hereinbelow to execute this Agreement shall not in any manner affect the validity of these obligations or the liability hereunder of the other Indemnitors. Invalidity of any provision of this Agreement by reason of the laws of any State or for any other reason shall not render the remaining provisions of this Agreement invalid, and this Agreement shall be construed and enforced with the same effect as though such provision or provisions were omitted.

**17. TERMINATION BY ANY INDEMNITOR** - Any Indemnitor wishing to terminate this Agreement must give Arch written notice by Registered Mail at least thirty (30) days prior to termination. The termination will not affect Indemnitor's obligations hereunder with respect to any Bonds executed and issued prior to the termination of this Agreement by that Indemnitor and with respect to any Bonds or renewals executed after the effective date of termination with respect to which Surety had issued a bid bond, consent of surety or prior Bond or undertaking prior to the effective date of termination. The termination by any one Indemnitor shall not affect the liability of any other Indemnitor.

**18. CHANGE IN STATUS/TRANSFER OF ASSETS** - Each Indemnitor agrees not to change or convert its respective individual, corporate or partnership status to either an LLC or an LLP or any other similar structure which has the effect of limiting, reducing or shielding the liability of either the entity or its partners and/or officers hereunder, without the prior, express, written consent of Surety. Should any Indemnitor so change its respective corporate or partnership status without the prior, express, written consent of Surety, Indemnitor agrees that such change in its status shall not limit, reduce or otherwise shield its obligations, its partners' and/or officers' obligations, to Surety which arise from this Agreement. Indemnitors hereby expressly waive as against Surety any and all defenses which may arise from such a conversion to a LLC, LLP or similar status.

**19. CHANGE IN CONTROL** - The Indemnitors shall not permit a Change of Control, as defined hereinbelow, to occur without the Surety's prior written consent. Change in Control means: (a) the transfer, merger or consolidation, in one transaction or a series of transactions, of all or substantially all of the assets of any one Indemnitor, which results in an unaffiliated Person owning, directly or indirectly fifty percent (50%) or more of the beneficial ownership or control of such Indemnitor; (b) the acquisition, in one transaction or a series of transactions, of fifty percent (50%) or more of the beneficial ownership or control of any Indemnitor; or (c) the acquisition by any Indemnitor, directly or indirectly, of fifty percent (50%) or more of the beneficial ownership or control of any joint venture, subsidiary,

division, affiliate, limited partnership, limited liability partnership, limited liability company or other entity through the issuance of fifty percent (50%) or more of the voting power of the total outstanding voting stock of any Indemnitor.

**20. NOTICE OF CHANGE IN RESIDENCE** - Each Indemnitor who is an individual agrees to give Surety written notice of any change in his/her principal residence within 30 days of the change of address. Each Indemnitor, which is not an individual, agrees not to change its principal place of business or the state of jurisdiction in which it is incorporated or otherwise organized without also giving Surety 30 days' written notice of the proposed change. If Surety has previously filed a Uniform Commercial Code Financing Statement with respect to such Indemnitor, Indemnitor agrees to file a Financing Statement in the new state or jurisdiction.

**21. EFFECT OF RELEASE OF ANY INDEMNITOR** - Indemnitors agree that, at any time, Surety may release any Indemnitor or Indemnitors from this Agreement, without affecting, reducing or otherwise limiting the obligations of any remaining Indemnitor, and Indemnitors hereby expressly waive both (a) notice from Surety of any such release, and (b) any defense that may be created in favor of any remaining Indemnitor as a result of Surety's release of another Indemnitor. Waiver of any one Default shall not be deemed a waiver of any other Default.

**22. FILING OF AGREEMENT UNDER THE UCC** - This Agreement shall constitute a Security Agreement to the Surety and also shall constitute a Financing Statement naming Surety as secured creditor and each Indemnitor as debtor, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of a copy of this Agreement shall be solely at the option of Surety and Surety's failure to do so shall not release or impair any obligation of Indemnitors, under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of Surety's rights under this Agreement or otherwise. The appearance of Arch's logo on the first page of this Agreement shall constitute its signature hereon. Indemnitors hereby irrevocably appoint and designate Surety or its authorized representative as their respective Attorneys-In-Fact to sign any Financing Statement form which may be required in order to file the same in any jurisdiction or office.

**23. APPLICABILITY OF AGREEMENT** - This Agreement shall apply to all Bonds executed by and/or procured by Surety for Principal, in its own name or as a joint venture with others. Indemnitors expressly waive any defense that may arise as a result of this Agreement having been executed subsequent to the date of the issuance of any Bond and Indemnitors admit and acknowledge that any such Bond was executed pursuant to Indemnitors' request and in reliance on the Indemnitors' representation and promise to execute this Agreement.

**24. PAYMENTS BY INDEMNITORS** - All payments made by Indemnitors to Surety under this Agreement shall be in United States Dollars and in no other currency and shall be sent, at Surety's discretion via check or wire transfer to any bank account subsequently designated by Surety. All sums payable to the Surety under this Agreement shall bear interest if not paid by Indemnitors within ten (10) days of demand by Surety. The interest rate shall be an annual rate of 10%, or the maximum rate permitted by applicable law if less than 10%. All Payments made shall be credited first to accrued and unpaid interest, if any, and then to the unpaid principal balance of the obligation.

**25. TRUST FUNDS** - Principal and Indemnitors agree and expressly declare that all funds due or to become due under any Bonded Contract are trust funds, whether in the possession of Principal or another and whether designated trust funds or not, for the benefit and payment of all persons to whom Principal incurs obligations in the performance of such contract, for which Surety may be liable under any Bond. If Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds.

**26. HOMESTEAD** - To the extent permitted by applicable law, the Principal and Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory or possession.

**27. SURETIES** - In the event the Surety procures the execution of any Bond by other sureties, or executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsurers, then all the terms and conditions of this Agreement shall inure to the benefit of such Sureties, co-sureties and reinsurers, their successors and assigns, as their interests may appear.

**28. SUITS** - The Surety may bring separate suits under this Agreement as causes of action accrue, and the bringing of suit or the recovery of judgment upon a cause of action shall not bar, prejudice or preclude the Surety's bringing other suits upon other causes of action, whether theretofore or thereafter arising. Surety may enforce this

Agreement against any Indemnitor without the necessity of first proceeding against any Principal or other Indemnitor.

**29. JURISDICTION -** As to any legal action related to this Agreement, Principal and Indemnitors consent to the general jurisdiction of any state or federal court of the United States or its territories having proper subject matter jurisdiction or in any court of the United States in which a claim may be brought against the Surety under any of the Bonds, at the sole discretion of the Surety.  Principal and Indemnitors waive any claim or defense in any such action based on alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

**30. JURY WAIVER -** Principal and Indemnitors hereby expressly waive any right to a trial by jury with respect to any legal proceeding arising under this Agreement.

**31. CURRENCY EXCHANGE -** Should the Surety, when making a payment or incurring any expense directly or indirectly related to the Bond, expend funds in any currency other than U.S. Dollars, then Indemnitors shall either reimburse the Surety in U.S. Dollars equal to the amount expended by the surety at the time the foreign currency was purchased or shall defray the cost of any exchange variation, thereby indemnifying the Surety for any decrease in the valuation of the currency purchased.

**32. NOTICE OF SERVICE -** Notice of Service made by U. S. Mail or by FAX to the last known address constitutes service whether or not received.

**33. ADDRESS FOR NOTICES -** All notices required to be given by Indemnitors under this Agreement shall be sent by registered mail to Arch Insurance Company, 3 Parkway, Suite 1500, Philadelphia, PA 19102 USA and shall include a copy of this Agreement attached thereto.

**34. OTHER INDEMNITY -** The Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of the Bonds, from the Indemnitors or others, it being expressly understood and agreed by the Indemnitors that any and all other rights which the Surety may have or acquire against the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

**35. SUBORDINATION OF INDEMNITORS -** The Indemnitors shall have no rights of indemnity or contribution against the Principal or its property until the Principal's obligations to the Surety under this Agreement have been satisfied in full.

**36.  REPRESENTATIONS -** Indemnitors represent and warrant to Surety that (i) they have carefully read and understand this entire Agreement; (ii) they have had the opportunity to review and discuss it with an attorney of their choosing; (iii) there are no other agreements, understandings or representations made by or on behalf of Surety which would diminish or modify the Indemnitors' obligations or Surety's rights set forth herein; (iv) that this Agreement shall be in addition to and shall not constitute a novation of or revoke or rescind any prior agreements of indemnity executed by an Indemnitor and that Surety's rights under such agreements are cumulative.

**37.  GENERAL PROVISIONS -** (i) This Agreement sets forth unilateral undertakings of Indemnitors only upon which Surety may rely in considering whether to execute Bonds on behalf of any Principal.  Indemnitors acknowledge that Surety is not required to execute this Agreement in order to enforce it; (ii) All references in this Agreement in the singular shall include the plural and vice versa, and all references to a gender shall include all genders.

**38. MODIFICATIONS -** This Agreement, and the rights and remedies of Surety hereunder may not be waived, challenged or modified orally. No written waiver, change or modification shall be effective unless signed by an officer or other authorized representative of Surety.

**IN WITNESS WHEREOF,** the Indemnitors have caused this Agreement to be executed by their respective duly authorized representatives this _29th_ day of _January_, 20 _13_.

**Witness/ Attest**

Eric Othman,    Corporate Secretary

Principal/Indemnitor:
USS Cal Builders, Inc.

By: _____
Print Name: _Jennifer Hotrum_
Its: _President_
Tax I.D. No.: _____
Address: _____

___                    _____
(seal)

Principal/Indemnitor:
Oklan, LLC.

By: _____
Print Name: _Jennifer Hotrum_
Its: _President_
Tax I.D. No.: _____
Address: _____

___                    _____
(seal)

Principal/Indemnitor:
_Jennifer Hotrum_

By: _____
Print Name: _Jennifer Hotrum_
Its: _Individual_
Tax I.D. No.: _____
Address: _____

___                    _____
(seal)

Indemnitor:    Allen Othman

By: _____
Print Name: _Allen Othman_
Its: _Individual_
SSN/Tax I.D. No.: _____
Address: _____

___                    _____
(seal)

_Arlene B. Vargas_
(Name of Witness)

Indemnitor:  Eric Othman

By: _____
Print Name: Eric Othman
Its: Individual
SSN/Tax I.D. No.: _____
Address: _____

(seal)

_Arlene B. Vargas_
(Name of Witness)

Indemnitor:  Shereen Othman

By: _____
Print Name: Shereen Othman
Its: Individual
SSN/Tax I.D. No.: _____
Address: _____

(seal)

_Arlene B. Vargas_
(Name of Witness)

Indemnitor: 2011 Allen Othman Trust

By: _____
Print Name: Allen Othman
Its: Trustee
SSN/Tax I.D. No.: _____
Address: _____

(seal)

_Arlene B. Vargas_
(Name of Witness)

Indemnitor:
IMAD and Shereen Othman Family Trust

By: _____
Print Name: Imad E. Othman
Its: Trustee
SSN/Tax I.D. No.: _____
Address: _____

(seal)

_Arlene B. Vargas_
(Name of Witness)

Indemnitor:
IMAD and Shereen Othman Family Trust

By: _____
Print Name: Shereen Othman
Its: Trustee
SSN/Tax I.D. No.: _____
Address: _____

(seal)

# ACKNOWLEDGMENTS

**Corporate Acknowledgment(s)**

STATE OF _California_

COUNTY OF _Orange_ } ss:

On this _31_ day of _January_, _2013_, before me, the undersigned, a Notary Public in and for the said State, personally appeared _Jennifer Marie Hamim_, known to me (or proved to me on the basis of satisfactory evidence) to be the _President_, of the _USS Cal Builders_, the corporation that executed the within instrument and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

> VERONICA ALICIA LEPE
> Commission # 1914012
> Notary Public - California
> Orange County
> My Comm. Expires Nov 21, 2014

_Veronica Lepe_ (seal)
Notary Public
My commission expires _Nov. 21, 2014_

**Partner(s) Acknowledgment**

STATE OF _____

COUNTY OF _____ } ss:

On this _____ day of _____, _____, before me, the undersigned, a Notary Public in and for the said State, personally appeared _____, known to me (or proved to me on the basis of satisfactory evidence) to be one of the partners of the partnership that executed the within instrument and acknowledged to me that such partnership executed the same.

_____ (seal)
Notary Public
My commission expires _____

**Individual Acknowledgment**

STATE OF _California_

COUNTY OF _Orange_ } ss:

On this _31_ day of _January 2013_ before me, the undersigned, a Notary Public in and for the said State, personally appeared _Allen Amen Ahmari_, known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same.

> VERONICA ALICIA LEPE
> Commission # 1914012
> Notary Public - California
> Orange County
> My Comm. Expires Nov 21, 2014

_Veronica Lepe_ (seal)
Notary Public
My commission expires _Nov. 21, 2014_

GIA Revised 12/07/10

# ACKNOWLEDGMENTS

**Corporate Acknowledgment(s)**

STATE OF _California_

COUNTY OF _Orange_ } ss:

On this _31_ day of _January_, _2013_, before me, the undersigned, a Notary Public in and for the said State, personally appeared _Imad Eric Ghmari_, known to me (or proved to me on the basis of satisfactory evidence) to be the _Secretary_, of the _USS Cal Builders, Inc._, the corporation that executed the within instrument and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

VERONICA ALICIA LEPE
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

_Veronica Lepe_ (seal)
Notary Public
My commission expires _Nov. 21, 2014_

**Partner(s) Acknowledgment**

STATE OF _____

COUNTY OF _____ } ss:

On this _____ day of _____, _____, before me, the undersigned, a Notary Public in and for the said State, personally appeared _____, known to me (or proved to me on the basis of satisfactory evidence) to be one of the partners of the partnership that executed the within instrument and acknowledged to me that such partnership executed the same.

_____ (seal)
Notary Public
My commission expires _____

**Individual Acknowledgment**

STATE OF ~~Orange~~ ^n California

COUNTY OF _Orange_ } ss:

On this _31_ day of _January_, _2013_, before me, the undersigned, a Notary Public in and for the said State, personally appeared _Imad Eric Ghmari_, known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same.

VERONICA ALICIA LEPE
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

_Veronica Lepe_ (seal)
Notary Public
My commission expires _Nov. 21, 2014_

**GIA Revised 12/07/10**

# ACKNOWLEDGMENTS

**Corporate Acknowledgment(s)**

STATE OF _____
} ss:
COUNTY OF _____

On this _____ day of _____ , _____, before me, the undersigned, a Notary Public in and for the said State, personally appeared _____ , known to me (or proved to me on the basis of satisfactory evidence) to be the _____ , of the _____ _____ , the corporation that executed the within instrument and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

_____ (seal)
Notary Public
My commission expires _____

**Partner(s) Acknowledgment**

STATE OF _____
} ss:
COUNTY OF _____

On this _____ day of _____ , _____, before me, the undersigned, a Notary Public in and for the said State, personally appeared _____ , known to me (or proved to me on the basis of satisfactory evidence) to be one of the partners of the partnership that executed the within instrument and acknowledged to me that such partnership executed the same.

_____ (seal)
Notary Public
My commission expires _____

**Individual Acknowledgment**

STATE OF _California_____
} ss:
COUNTY OF _Orange_____

On this _31_ day of _January 2013_, before me, the undersigned, a Notary Public in and for the said State, personally appeared _Shereen Ahman_____ , known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same.

_____ (seal)
Notary Public
My commission expires _Nov. 21, 2014_

VERONICA ALICIA LEPE
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

GIA Revised 12/07/10                                                Page 10 of 10

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of _Orange_ }

On _January 31, 2013_ before me, _Veronica Alicia Lepe, Notary Public_
<br>*Date*            *Here Insert Name and Title of the Officer*

personally appeared _Allen Amer Othman_
<br>*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

**VERONICA ALICIA LEPE**
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

WITNESS my hand and official seal.

Signature: _____
<br>*Signature of Notary Public*

*Place Notary Seal Above*

-------------------- **OPTIONAL** --------------------

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**
Title or Type of Document: _General Indemnity Agreement_
Document Date: _January 29, 2013_ _____ Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _Allen Amer Othman_

☐ Corporate Officer -- Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☒ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

**RIGHT THUMBPRINT OF SIGNER**
Top of thumb here

Signer's Name: _____

☐ Corporate Officer -- Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

**RIGHT THUMBPRINT OF SIGNER**
Top of thumb here

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of _Orange_ }

On _January 31, 2013_ before me, _Veronica Alicia Lepe, Notary Public_

Date                         Here Insert Name and Title of the Officer

personally appeared _Imad Eric Ghman_

Name(s) of Signer(s)

_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

VERONICA ALICIA LEPE
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

Place Notary Seal Above

Signature: _____

Signature of Notary Public

_____ OPTIONAL _____

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _General Indemnity Agreement_

Document Date: _January 29, 2013_                Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _Imad Eric Ghman_

☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☒ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____

☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)                Item #5907

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of __Orange__

On __January 31, 2013__ before me, __Veronica Alicia Lepe, Notary Public__
_Date_                                    _Here Insert Name and Title of the Officer_

personally appeared __Shereen Ahman__
_Name(s) of Signer(s)_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

**VERONICA ALICIA LEPE**
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

WITNESS my hand and official seal.

Signature: _____
                        _Signature of Notary Public_

_Place Notary Seal Above_

---

**OPTIONAL**

_Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document._

**Description of Attached Document**

Title or Type of Document: __General Indemnity Agreement__

Document Date: __January 29, 2013__ _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: __Shereen Ahman__

☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☒ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____

☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)                    Item #5907

EXHIBIT C –

FEBRUARY 12, 2014



**Arch** Insurance Company

a member of Arch Insurance Group

# GENERAL INDEMNITY AGREEMENT

THIS GENERAL INDEMNITY AGREEMENT (hereinafter called "Agreement") is made by the undersigned Indemnitors in favor of Arch Insurance Company, Arch Reinsurance Company, and any present or future subsidiary or affiliate of Arch Insurance Company, (hereinafter collectively called "Arch"), for the purpose of indemnifying Surety (as herein defined below) for any Bonds (as herein defined below), which Surety may have issued, or may hereafter issue, or on which Surety otherwise becomes surety.

## RECITALS

A.  Principal, as hereinafter defined, in the performance of contracts and the fulfillment of obligations generally, whether in their own names or with others, may desire or be required to give or procure Bonds, and to renew, continue or substitute from time to time the same or new Bonds, or the Indemnitors may have an interest in inducing the Surety to refrain from canceling said Bonds.

B. The Indemnitors understand that the Surety expressly requires the execution and delivery of this  Agreement as part of the consideration for the execution by the Surety of such Bonds which may hereafter be furnished, or for the refraining of canceling such Bonds.

C. The Indemnitors have a substantial, material and beneficial interest in the Principal's obtaining of Bonds from the Surety or in the Surety's refraining from canceling such Bonds.

## AGREEMENTS

**IN CONSIDERATION** of the foregoing premises and the Surety's execution and delivery of one or more Bonds or its refraining from canceling the same, and intending to be legally bound hereby, the Indemnitors, for themselves and their respective heirs, executors, administrators, successors, and assigns, hereby agree, jointly and severally, to be obligated to the Surety, its successors and assigns, as follows:

**1. DEFINITIONS** - In addition to the capitalized terms defined elsewhere in this Agreement, the following terms when used in this Agreement, unless the context otherwise requires, shall have the meanings indicated in this paragraph, which meanings shall be equally applicable to both the singular and plural forms of such terms:

    a.  **Principal**: Any Indemnitor on behalf of which Surety may execute a Bond and/or any Person whose name is or has been furnished to Surety by any of the Indemnitors or on behalf of which Surety has issued any Bond at the request of any Indemnitor, including, but not limited to, any of the Indemnitors named or referred to as "Principal" in any bond, undertaking or recognizance. The term "Principal" also includes any present or future direct or indirect subsidiary, successor, affiliate or parent of any Indemnitor and any partnerships, LLCs, LLPs or other entities owned in whole or in part by any named Indemnitor.

    b.  **Indemnitors**: All Persons who sign this Agreement or whose representatives sign this Agreement or any other agreement that incorporates by reference the terms of this Agreement. The Indemnitors warrant and represent that they have a material and beneficial interest in Surety's issuance of Bonds on behalf of the Principal, and acknowledge that Surety would not issue such Bonds without each Indemnitor's agreement to reimburse Surety for all losses arising under the Bonds.

    c.  **Surety**: Arch and/or any other present or future subsidiary or affiliate of Arch, which may issue Bonds, as well as any and all sureties, co-sureties or reinsurers who issue, execute or reinsure any portion of the Bond or who procure bonds at the request of Arch.  The terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsurers.

d.  **Person:** An individual, corporation, partnership, Limited Liability Company (hereinafter called LLC), Limited Liability Partnership (hereinafter called LLP), joint venture, trust, estate or other legal entity.

e.  **Bond:** Any and all bonds, including but not limited to surety bonds, undertakings, guaranties, and any renewals or extensions thereof issued by Surety, or issued by another at the request of Surety, on behalf of Principal, whether issued prior to or subsequent to the effective date of this Agreement.  The term Bond also includes any electronic processes in lieu of the issuance of paper bonds, whether in the contract bidding process, or otherwise.

f.  **Bonded Contract:** A contract for which Surety issues or has issued a Bond.

g.  **Default:** An instance or condition in which Principal or Indemnitors, or any of them: (a.) fail to pay any Bond premium charge when due, (b.) forfeit, breach, abandon, default or be declared in default on any Bonded Contract or fail to pay when due any obligation to which any Bond may pertain, (c.) neglect or refuse to pay for any labor or materials used in the prosecution of a Bonded Contract, (d.) make or have made any representation as to any Indemnitor's financial condition or supply any information to Surety which is untrue, materially false or misleading, (e.) fail to honor any obligation under this Agreement, (f.) institute or have instituted against any or all of them a case under the Bankruptcy Code or similar statute, with respect to any Indemnitor as debtor, or any suit or proceeding alleging that any one of them is insolvent or requesting the appointment of a receiver or trustee for the benefit of creditors, (g.) have proceedings instituted against any of them that may have the effect of depriving any of them of the use of any part of the materials or equipment used in connection with the work under a Bonded Contract so as to hinder, delay or impede the normal and satisfactory progress of the work, (h.) make an assignment for the benefit of creditors that in any way impedes the rights of the Surety, (i.) in the case of Indemnitors which are not individuals, dissolve or cease to continue their legal existence, (j.) in the case of Indemnitors who are individuals, die, abscond, disappear, become incompetent, are convicted of a felony or are imprisoned, or (k.) violate any other written agreement with Surety or for the benefit of Surety, including without limitation, subordination agreements with Indemnitors (hereinafter referred to as Other Agreements).

h.  **Loss:** Any and all liability, losses, costs, expenses, and fees of whatever kind or nature, that Surety may sustain or incur as a result of executing or procuring any Bond or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement.  Loss includes but is not limited to: (a.) sums posted by Surety as a reserve for the payment of potential losses and/or expenses, (b.) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses,  (c.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for Principal or Indemnitors, (d.) funds advanced by Surety to a Principal, and (e.) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

**2. PREMIUMS** - The Principal and Indemnitors will pay to the Surety, promptly upon demand, all premiums, costs and charges of the Surety, in accordance with its rate filings, rates as it determines from its manual of rates, or rates as the Surety may otherwise determine, for any Bonds requested from and/or issued by the Surety. Where such premiums, costs and charges are annual, the Principal and Indemnitors agree to pay the same until the Principal and Indemnitors shall deliver evidence satisfactory to the Surety of the discharge or release of all liability under such Bonds.

**3. INDEMNITY** - The Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, pre- and post-judgment interest, court costs and counsel fees, and accounting, engineering and consulting fees, and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, whether such Bond or Bonds were issued prior to or after the date of this Agreement (2) By reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement or Other Agreements.  In the event of any payment by the Surety the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such

payments made by the Surety shall be *prima facie* evidence of the fact and amount of the liability to the Surety.  As used in this paragraph, "good faith" means honesty in fact and the absence of malice or fraud.

**4. POSTING OF COLLATERAL** - If the Surety determines, in its sole discretion and judgment, that potential liability exists for losses, fees, costs, or expenses, for which the Principal and Indemnitors will be obligated to indemnify the Surety under the terms of this Agreement or Other Agreements, the Principal and Indemnitors shall deposit with the Surety, promptly on demand, a sum of money equal to the amount the Surety determines or collateral security of a type and value satisfactory to the Surety, to cover that liability, whether or not the Surety has : (a) established a reserve; (b) made any payments; or (c) received any notice of claims under the Bonds. At the Surety's sole option, such collateral shall be in addition to and not in lieu of any other collateral that has been previously been provided to the Surety with any Bond or Bonds. The Surety shall have the right to use the collateral, or any portion thereof, in payment or settlement of any such liabilities for which the Principal and Indemnitors would be liable to the Surety under this Agreement or Other Agreements with respect to payments made by Surety. The Surety shall have no obligation to invest or provide a return on any collateral provided under this Agreement.  Indemnitors acknowledge that the failure of Indemnitors to pay to Surety, immediately upon demand, the sum demanded by Surety hereunder, shall cause irreparable harm to Surety for which Surety has no adequate remedy at law.  Indemnitors agree that Surety shall be entitled to temporary, preliminary and final injunctive relief for specific performance of their obligations hereunder, including the obligation to pay to Surety the sum demanded, and waive any defenses thereto.  To the extent Surety accepts collateral other than money, Surety shall not be liable to any Indemnitor for any diminution in value, loss or destruction of such collateral and shall have no obligation to maintain or insure such collateral.

**5. SURETY'S CONSENT TO CHANGES** - Surety is authorized and empowered, without notice to or knowledge of the Principal and Indemnitors, to  consent to changes in any Bond or to changes in the contract or obligation, which is the subject of any Bond, or may refuse to consent to any such change, including, without limitation, any change in the time for the completion of said contract and to payments or advances thereunder before the same may be due, and to assent  to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of any Bonds and to executed any substitute or substitutes therefore, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Principal and Indemnitors shall remain bound by the terms of this Agreement, even though any such assent by the Surety does or might substantially increase the liability of the Indemnitors. Surety's actions in consenting or in not consenting to any such change shall not release or affect the obligations of Indemnitors to Surety under this Agreement.  The Indemnitors further warrant and represent that they are currently informed and shall remain knowledgeable and apprised of Principal's business activities and financial condition. Surety has no obligation to inform Indemnitors of any change in the business affairs and financial condition of Principal.

**6. SURETY'S RIGHT TO DECLINE BONDS** - Surety has the right to decline to execute any Bond requested by the Principal or Indemnitors, including any such Bond requested after Surety has executed a preliminary bond including, but not limited to, a bid or proposal bond, or a Consent of Surety to the issuance of Bonds. This right applies to any Surety's declining to issue or execute any Bond for any reason whatsoever. If the Surety requests another surety to execute a Bond and such other surety declines to execute the Bond, the Surety shall have no liability to the Principal or Indemnitors for such declination. Surety's declining to execute any Bond shall not release or affect the obligations of Indemnitors to Surety under this Agreement. Principal and Indemnitors acknowledge that the Surety makes no representations as to the acceptability of any of its Bonds to any person, firm or entity under any contract, and that Principal and Indemnitors shall have no claim against the Surety relating to the failure or refusal of any entity to accept any Bond issued by the Surety. The Indemnitors acknowledge and agree that it is their sole responsibility to provide the proper forms on a timely basis for the bonds to be executed by the Surety, and to review and approve any bond and undertaking executed by the Surety on its own forms. Neither the Surety, nor its agents, shall have any liability whatsoever to the Indemnitors if they shall fail to furnish the Surety with the proper forms or to object to forms furnished by the Surety.

**7. BOND FORMS** - It shall be the sole responsibility of the Indemnitors to review all bond forms executed by the Surety for appropriateness and for any errors or omissions prior to delivery of the bonds to an obligee. The Surety and its agents shall have no liability to the Indemnitors on account of any negligence (whether sole or concurrent), inadvertence, error or omission in the preparation, execution, or delivery of any bonds. Prior to requesting that the Surety issue any bond, the Indemnitors shall obtain confirmation that the proposed obligee on the bond will accept the Surety as surety on the proposed bond, and neither the Surety, nor its agents, shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the Surety as surety on any bond. The Indemnitors agree that the Indemnitors shall be solely responsible for arranging, independent of the Surety, for the timely delivery of any bond to the obligee. The Surety and its agents shall have no liability to the Indemnitors if any bond is not timely delivered to any obligee for any reason whatsoever, including any negligent acts or omissions on the part of the surety or its agents.

**8. SURETY'S RIGHT TO SETTLE CLAIMS** - Surety shall have the sole and exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and Surety's decision thereon shall be final and binding upon the Indemnitors. Subject to the Surety's rights set forth in the first sentence of this section, which shall remain in full force and effect, if Principal or Indemnitors desire that the Surety litigate such claim or demand, or defend such suit, or appeal from such judgment, they shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered, or which might be rendered, against the Surety, together with interest, costs and attorneys fees.

**9. SURETY'S RIGHT TO COMPLETE WORK** - In the event of a Default, Surety shall have the right, but not the obligation, to take possession of the work under any and all Bonded Contracts, and complete or consent to the completion of such Bonded Contracts at the expense of the Indemnitors.

**10. ADVANCES** - The Surety is authorized and empowered, but not obligated, to guarantee loans, to advance or lend to the Principal any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Principal, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Principal to the Surety when due, shall be presumed to be a loss by the Surety for which the Principal and the Indemnitors shall be liable, notwithstanding that said money or any part thereof should not be so used by the Principal.

**11. ASSIGNMENTS** - Effective as of the date of this Agreement, but enforceable only in the event of a Default, Principal and Indemnitors do hereby assign, transfer and set over to Surety, all of their rights under all Bonded Contract(s) including (a.) their right, title and interest in all subcontracts, subcontract bonds, and purchase orders let in connection therewith, (b.) all machinery, plant, equipment, tools and materials located anywhere, whether for the purposes of the Bonded Contract(s) or not, (c.) all claims and causes of action against any parties, (d.) any and all sums due, or to become due under any contract, whether bonded or not, (e.) all rights in or arising out of any insurance policies of any type, (f.) all rights it has in patents, patented processes, licenses, designs, copyrights, trademarks and all other intellectual property rights, and expressly authorize Surety to use these property rights, at no cost to the Surety, and all proceeds arising therefrom and all records (in whatever form) related thereto.

**12. ATTORNEY IN FACT** - Principal and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Principal and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Principal and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Principal and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

**13. DISCHARGE OF SURETY** - Upon the request of Surety, Principals and Indemnitors will procure the discharge of Surety from any Bond, and all liability arising there from, and provide evidence to Surety regarding same.

**14. BOOKS & RECORDS** - Principal and Indemnitors shall provide to the Surety within 120 days of the end of their respective fiscal years, financial statements prepared in accordance with Generally Accepted Accounting Principles and reports prepared by reputable accounting firms, prepared in accordance with the AICPA's Statements on Standards for Accounting and Review Services (hereinafter SARS). If the Principal and/or Indemnitors have reports prepared by reputable accounting firms in accordance with AICPA's Statements on Auditing Standards, which reports are prepared in connection with the ordinary course of their financial reporting, then such reports shall be provided instead of reports prepared in accordance with SARS. Principal and Indemnitors shall also provide to Surety any management reports received from their accountants within 30 days of receipt. In addition to the foregoing, the Surety, including its designated agents, shall, at any and all times, have unrestricted access upon reasonable notice to review all books and records of Principal and Indemnitors, including all books and records pertaining to their  financial condition, and to the status of each unbonded and Bonded Contract.  Principal and Indemnitors hereby authorize those with whom such Bonded Contracts are made to furnish to Surety all information concerning such contracts and the work thereunder. Principal and Indemnitors understand and agree that the failure to provide the information required in this paragraph shall be a material breach of this Agreement and shall entitle the Surety to demand, in its sole discretion, cash collateral up to the penal sums of any and all outstanding Bonds.

**15. INDEMNITORS' WAIVER OF NOTICE** - Indemnitors warrant that each of them is specifically and beneficially interested in the obtaining of each Bond and agree to keep themselves fully informed as to the business activities and financial affairs of any one or more of the Indemnitors or any Principal for whom Bonds are executed by Surety. Indemnitors hereby expressly waive any notice from the Surety of any fact or information coming to the attention or knowledge of the Surety which affects its rights or the rights or liabilities of the Indemnitors, including notice of execution of any particular Bond subject to this Agreement and notice of default by the Principal or of the receipt of claims under any Bond.

**16. EFFECT OF INVALIDITY** - Any defect or invalidity in the execution of this Agreement by any Indemnitor or the failure of any Indemnitor whose name appears hereinbelow to execute this Agreement shall not in any manner affect the validity of these obligations or the liability hereunder of the other Indemnitors. Invalidity of any provision of this Agreement by reason of the laws of any State or for any other reason shall not render the remaining provisions of this Agreement invalid, and this Agreement shall be construed and enforced with the same effect as though such provision or provisions were omitted.

**17. TERMINATION BY ANY INDEMNITOR** - Any Indemnitor wishing to terminate this Agreement must give Arch written notice by Registered Mail at least thirty (30) days prior to termination.  The termination will not affect Indemnitor's obligations hereunder with respect to any Bonds executed and issued prior to the termination of this Agreement by that Indemnitor and with respect to any Bonds or renewals executed after the effective date of termination with respect to which Surety had issued a bid bond, consent of surety or prior Bond or undertaking prior to the effective date of termination. The termination by any one Indemnitor shall not affect the liability of any other Indemnitor.

**18. CHANGE IN STATUS/TRANSFER OF ASSETS** - Each Indemnitor agrees not to change or convert its respective individual, corporate or partnership status to either an LLC or an LLP or any other similar structure which has the effect of limiting, reducing or shielding the liability of either the entity or its partners and/or officers hereunder, without the prior, express, written consent of Surety.  Should any Indemnitor so change its respective corporate or partnership status without the prior, express, written consent of Surety, Indemnitor agrees that such change in its status shall not limit, reduce or otherwise shield its obligations, its partners' and/or officers' obligations, to Surety which arise from this Agreement.  Indemnitors hereby expressly waive as against Surety any and all defenses which may arise from such a conversion to a LLC, LLP or similar status.

**19. CHANGE IN CONTROL** - The Indemnitors shall not permit a Change of Control, as defined hereinbelow, to occur without the Surety's prior written consent. Change in Control means: (a) the transfer, merger or consolidation, in one transaction or a series of transactions, of all or substantially all of the assets of any one Indemnitor, which results in an unaffiliated Person owning, directly or indirectly fifty percent (50%) or more of the beneficial ownership or control of such Indemnitor; (b) the acquisition, in one transaction or a series of transactions, of fifty percent (50%) or more of the beneficial ownership or control of any Indemnitor; or (c) the acquisition by any Indemnitor, directly or indirectly, of fifty percent (50%) or more of the beneficial ownership or control of any joint venture, subsidiary,

division, affiliate, limited partnership, limited liability partnership, limited liability company or other entity through the issuance of fifty percent (50%) or more of the voting power of the total outstanding voting stock of any Indemnitor.

**20. NOTICE OF CHANGE IN RESIDENCE** - Each Indemnitor who is an individual agrees to give Surety written notice of any change in his/her principal residence within 30 days of the change of address. Each Indemnitor, which is not an individual, agrees not to change its principal place of business or the state of jurisdiction in which it is incorporated or otherwise organized without also giving Surety 30 days' written notice of the proposed change. If Surety has previously filed a Uniform Commercial Code Financing Statement with respect to such Indemnitor, Indemnitor agrees to file a Financing Statement in the new state or jurisdiction.

**21. EFFECT OF RELEASE OF ANY INDEMNITOR** - Indemnitors agree that, at any time, Surety may release any Indemnitor or Indemnitors from this Agreement, without affecting, reducing or otherwise limiting the obligations of any remaining Indemnitor, and Indemnitors hereby expressly waive both (a) notice from Surety of any such release, and (b) any defense that may be created in favor of any remaining Indemnitor as a result of Surety's release of another Indemnitor. Waiver of any one Default shall not be deemed a waiver of any other Default.

**22. FILING OF AGREEMENT UNDER THE UCC** - This Agreement shall constitute a Security Agreement to the Surety and also shall constitute a Financing Statement naming Surety as secured creditor and each Indemnitor as debtor, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of a copy of this Agreement shall be solely at the option of Surety and Surety's failure to do so shall not release or impair any obligation of Indemnitors, under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of Surety's rights under this Agreement or otherwise. The appearance of Arch's logo on the first page of this Agreement shall constitute its signature hereon. Indemnitors hereby irrevocably appoint and designate Surety or its authorized representative as their respective Attorneys-In-Fact to sign any Financing Statement form which may be required in order to file the same in any jurisdiction or office.

**23. APPLICABILITY OF AGREEMENT** - This Agreement shall apply to all Bonds executed by and/or procured by Surety for Principal, in its own name or as a joint venture with others. Indemnitors expressly waive any defense that may arise as a result of this Agreement having been executed subsequent to the date of the issuance of any Bond and Indemnitors admit and acknowledge that any such Bond was executed pursuant to Indemnitors' request and in reliance on the Indemnitors' representation and promise to execute this Agreement.

**24. PAYMENTS BY INDEMNITORS** - All payments made by Indemnitors to Surety under this Agreement shall be in United States Dollars and in no other currency and shall be sent, at Surety's discretion via check or wire transfer to any bank account subsequently designated by Surety. All sums payable to the Surety under this Agreement shall bear interest if not paid by Indemnitors within ten (10) days of demand by Surety. The interest rate shall be an annual rate of 10%, or the maximum rate permitted by applicable law if less than 10%. All Payments made shall be credited first to accrued and unpaid interest, if any, and then to the unpaid principal balance of the obligation.

**25. TRUST FUNDS** - Principal and Indemnitors agree and expressly declare that all funds due or to become due under any Bonded Contract are trust funds, whether in the possession of Principal or another and whether designated trust funds or not, for the benefit and payment of all persons to whom Principal incurs obligations in the performance of such contract, for which Surety may be liable under any Bond. If Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds.

**26. HOMESTEAD** - To the extent permitted by applicable law, the Principal and Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory or possession.

**27. SURETIES** - In the event the Surety procures the execution of any Bond by other sureties, or executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsurers, then all the terms and conditions of this Agreement shall inure to the benefit of such Sureties, co-sureties and reinsurers, their successors and assigns, as their interests may appear.

**28. SUITS** - The Surety may bring separate suits under this Agreement as causes of action accrue, and the bringing of suit or the recovery of judgment upon a cause of action shall not bar, prejudice or preclude the Surety's bringing other suits upon other causes of action, whether theretofore or thereafter arising. Surety may enforce this

Agreement against any Indemnitor without the necessity of first proceeding against any Principal or other Indemnitor.

**29. JURISDICTION -** As to any legal action related to this Agreement, Principal and Indemnitors consent to the general jurisdiction of any state or federal court of the United States or its territories having proper subject matter jurisdiction or in any court of the United States in which a claim may be brought against the Surety under any of the Bonds, at the sole discretion of the Surety.  Principal and Indemnitors waive any claim or defense in any such action based on alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

**30. JURY WAIVER -** Principal and Indemnitors hereby expressly waive any right to a trial by jury with respect to any legal proceeding arising under this Agreement.

**31. CURRENCY EXCHANGE -** Should the Surety, when making a payment or incurring any expense directly or indirectly related to the Bond, expend funds in any currency other than U.S. Dollars, then Indemnitors shall either reimburse the Surety in U.S. Dollars equal to the amount expended by the surety at the time the foreign currency was purchased or shall defray the cost of any exchange variation, thereby indemnifying the Surety for any decrease in the valuation of the currency purchased.

**32. NOTICE OF SERVICE -** Notice of Service made by U. S. Mail or by FAX to the last known address constitutes service whether or not received.

**33. ADDRESS FOR NOTICES -** All notices required to be given by Indemnitors under this Agreement shall be sent by registered mail to Arch Insurance Company, 3 Parkway, Suite 1500, Philadelphia, PA 19102 USA and shall include a copy of this Agreement attached thereto.

**34. OTHER INDEMNITY –** The addition to this Agreement of any Indemnitors and/or Principals, including any entities acquired after the date of execution of this Agreement, may be effected by written amendment executed by such Indemnitors and/or Principals only, notwithstanding any language herein to the contrary.  The Indemnitors and/or Principals shall continue to remain bound under the terms of this Agreement, and any other agreements containing indemnity obligations in connection with the execution or procurement of the Bonds, even though the Surety may  from time to time heretofore or hereafter, with or without notice to or knowledge of the Indemnitors and/or Principals, accept  release or reduce any indemnity obligations or collateral of current or future Indemnitors and/or Principals for any reason. The Indemnitors and/or Principals expressly waive notice from the Surety of any such action and, furthermore, it is explicitly understood and agreed by the Indemnitors and/or Principals that any and all other rights which the Surety may have or acquire against the Indemnitors and/or Principals and/or others under any such other or additional agreements or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.  No Indemnitor shall make any defense to the enforcement of this Agreement based on the execution of other agreements or related to the addition or release of any Indemnitor, and each Indemnitor explicitly confirms its joint and several liability for Bonds issued by the Surety as provided in this Agreement.  The Indemnitors and/or Principals also waive and subordinate all rights of indemnity, subrogation and contribution against each other until all obligations to the Surety under this Agreement, at law or in equity, have been satisfied in full.

**35. SUBORDINATION OF INDEMNITORS -** The Indemnitors shall have no rights of indemnity or contribution against the Principal or its property until the Principal's obligations to the Surety under this Agreement have been satisfied in full.

**36.  REPRESENTATIONS -** Indemnitors represent and warrant to Surety that (i) they have carefully read and understand this entire Agreement; (ii) they have had the opportunity to review and discuss it with an attorney of their choosing; (iii) there are no other agreements, understandings or representations made by or on behalf of Surety which would diminish or modify the Indemnitors' obligations or Surety's rights set forth herein; (iv) that this Agreement shall be in addition to and shall not constitute a novation of or revoke or rescind any prior agreements of indemnity executed by an Indemnitor and that Surety's rights under such agreements are cumulative.

**37.  GENERAL PROVISIONS -** (i) This Agreement sets forth unilateral undertakings of Indemnitors only upon which Surety may rely in considering whether to execute Bonds on behalf of any Principal.  Indemnitors acknowledge that Surety is not required to execute this Agreement in order to enforce it; (ii) All references in this Agreement in the singular shall include the plural and vice versa, and all references to a gender shall include all genders.

**38. MODIFICATIONS** - This Agreement, and the rights and remedies of Surety hereunder may not be waived, challenged or modified orally. No written waiver, change or modification shall be effective unless signed by an officer or other authorized representative of Surety.

**IN WITNESS WHEREOF,** the Indemnitors have caused this Agreement to be executed by their respective duly authorized representatives this _12 th_ day of _February_, 20_14_.

**Witness/ Attest**

_Arleene B. Vargas_
(Name of Witness)

Principal/Indemnitor: USS Cal Builders, Inc.
By: _____
Print Name: Allen Othman
Its: President
SSN/Tax I.D. No.: _____
Address: _____
                              (seal)

_Arleene B. Vargas_
(Name of Witness)

Principal/Indemnitor: Oaklan, LLC
By: _____
Print Name: Allen Othman
Its: President
SSN/Tax I.D. No.: _____
Address: _____
                              (seal)

_Arleene B. Vargas_
(Name of Witness)

Indemnitor: Allen Othman
By: _____
Print Name: Allen Othman
Its: Individual Indemnitor
SSN/Tax I.D. No.: _____
Address: _____
                              (seal)

_Arleene B. Vargas_
(Name of Witness)

Indemnitor: Eric Othman
By: _____
Print Name: Eric Othman
Its: Individual Indemnitor
SSN/Tax I.D. No.: _____
Address _____
                              (seal)

_Arleene B. Vargas_
(Name of Witness)

Indemnitor: Shereen Othman
By: _____
Print Name: Shereen Othman
Its: Individual
SSN/Tax I.D. No. _____
Address: _____
                              (seal)

_Arleene B. Vargas_
(Name of Witness)

Indemnitor: 2011 Allen Othman Trust _____

By: _____
Print Name: Allen Othman _____
Its: Trustee _____
SSN/Tax I.D. No.: _____
Address: _____

(seal)

_Arleene B. Vargas_
(Name of Witness)

Indemnitor: IMAD and Shereen Othman Family Trust

By: _____
Print Name: Imad E. Othman _____
Its: Trustee _____
SSN/Tax I.D. No.: _____
Address: _____

(seal)

_Arleene B. Vargas_
(Name of Witness)

Indemnitor: IMAD and Shereen Othman Family Trust

By: _____
Print Name: Shereen Othman _____
Its: Trustee _____
SSN/Tax I.D. No.: _____
Address: _____

(seal)

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of __Orange__

On _February 14, 2014_ before me, _Veronica Alicia Lepe, Notary Public_,
Date                                    Here Insert Name and Title of the Officer

personally appeared _Allen Amer Othman, Imad Eric Othman and_
Sheereen Othman
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

VERONICA ALICIA LEPE
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Place Notary Seal Above

Signature: _____
                              Signature of Notary Public

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _General Indemnity Agreement_

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Individual | ☐ Individual |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of Orange

On February 14 2014 before me, Veronica Alicia Lepe, Notary Public,
     Date                              Here Insert Name and Title of the Officer

personally appeared Allen Amen Othman, Imad Eric Othman
                                        Name(s) of Signer(s)

and Shereen Othman,

VERONICA ALICIA LEPE
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____
                    Signature of Notary Public

Place Notary Seal Above

— **OPTIONAL** —

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: General Indemnity Agreement

Document Date: _____  Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____

☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____
_____

Signer Is Representing: _____

**RIGHT THUMBPRINT OF SIGNER**
Top of thumb here

Signer's Name: _____

☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____
_____

Signer Is Representing: _____

**RIGHT THUMBPRINT OF SIGNER**
Top of thumb here

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of __Orange__

On __February 14, 2014__ before me, __Veronica Alicia Lepe, Notary Public__ ,
Date                                    Here Insert Name and Title of the Officer

personally appeared __Allen Amer Othman__
Name(s) of Signer(s)

_____

> VERONICA ALICIA LEPE
> Commission # 1914012
> Notary Public - California
> Orange County
> My Comm. Expires Nov 21, 2014

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____
Signature of Notary Public

Place Notary Seal Above

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**
Title or Type of Document: __General Indemnity Gen Agreement__

Document Date: _____   Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Individual | ☐ Individual |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of _Orange_ }

On _February 14, 2011_ before me, _Veronica Alicia Lepe, Notary Public_,
     Date                               Here Insert Name and Title of the Officer

personally appeared __Allen Amer Othman__
                                     Name(s) of Signer(s)

VERONICA ALICIA LEPE
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _[signature]_
                               Signature of Notary Public

Place Notary Seal Above

——————————— OPTIONAL ———————————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _General Indemnity Agreement_

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
- Corporate Officer — Title(s): _____
- Individual
- Partner — Limited General
- Attorney in Fact
- Trustee
- Guardian or Conservator
- Other: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer Is Representing: _____

Signer's Name: _____
- Corporate Officer — Title(s): _____
- Individual
- Partner — Limited General
- Attorney in Fact
- Trustee
- Guardian or Conservator
- Other: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer Is Representing: _____

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)        Item #5907

EXHIBIT D –

FEBRUARY 13, 2014



**Arch** Insurance
Company
a member of Arch Insurance Group

# GENERAL INDEMNITY AGREEMENT

THIS GENERAL INDEMNITY AGREEMENT (hereinafter called "Agreement") is made by the undersigned Indemnitors in favor of Arch Insurance Company, Arch Reinsurance Company, and any present or future subsidiary or affiliate of Arch Insurance Company, (hereinafter collectively called "Arch"), for the purpose of indemnifying Surety (as herein defined below) for any Bonds (as herein defined below), which Surety may have issued, or may hereafter issue, or on which Surety otherwise becomes surety.

## RECITALS

A.  Principal, as hereinafter defined, in the performance of contracts and the fulfillment of obligations generally, whether in their own names or with others, may desire or be required to give or procure Bonds, and to renew, continue or substitute from time to time the same or new Bonds, or the Indemnitors may have an interest in inducing the Surety to refrain from canceling said Bonds.

B. The Indemnitors understand that the Surety expressly requires the execution and delivery of this  Agreement as part of the consideration for the execution by the Surety of such Bonds which may hereafter be furnished, or for the refraining of canceling such Bonds.

C. The Indemnitors have a substantial, material and beneficial interest in the Principal's obtaining of Bonds from the Surety or in the Surety's refraining from canceling such Bonds.

## AGREEMENTS

**IN CONSIDERATION** of the foregoing premises and the Surety's execution and delivery of one or more Bonds or its refraining from canceling the same, and intending to be legally bound hereby, the Indemnitors, for themselves and their respective heirs, executors, administrators, successors, and assigns, hereby agree, jointly and severally, to be obligated to the Surety, its successors and assigns, as follows:

**1. DEFINITIONS** - In addition to the capitalized terms defined elsewhere in this Agreement, the following terms when used in this Agreement, unless the context otherwise requires, shall have the meanings indicated in this paragraph, which meanings shall be equally applicable to both the singular and plural forms of such terms:

    a.  **Principal**: Any Indemnitor on behalf of which Surety may execute a Bond and/or any Person whose name is or has been furnished to Surety by any of the Indemnitors or on behalf of which Surety has issued any Bond at the request of any Indemnitor, including, but not limited to, any of the Indemnitors named or referred to as "Principal" in any bond, undertaking or recognizance. The term "Principal" also includes any present or future direct or indirect subsidiary, successor, affiliate or parent of any Indemnitor and any partnerships, LLCs, LLPs or other entities owned in whole or in part by any named Indemnitor.

    b.  **Indemnitors**: All Persons who sign this Agreement or whose representatives sign this Agreement or any other agreement that incorporates by reference the terms of this Agreement. The Indemnitors warrant and represent that they have a material and beneficial interest in Surety's issuance of Bonds on behalf of the Principal, and acknowledge that Surety would not issue such Bonds without each Indemnitor's agreement to reimburse Surety for all losses arising under the Bonds.

    c.  **Surety**: Arch and/or any other present or future subsidiary or affiliate of Arch, which may issue Bonds, as well as any and all sureties, co-sureties or reinsurers who issue, execute or reinsure any portion of the Bond or who procure bonds at the request of Arch.  The terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsurers.

d. **Person:** An individual, corporation, partnership, Limited Liability Company (hereinafter called LLC), Limited Liability Partnership (hereinafter called LLP), joint venture, trust, estate or other legal entity.

e. **Bond:** Any and all bonds, including but not limited to surety bonds, undertakings, guaranties, and any renewals or extensions thereof issued by Surety, or issued by another at the request of Surety, on behalf of Principal, whether issued prior to or subsequent to the effective date of this Agreement. The term Bond also includes any electronic processes in lieu of the issuance of paper bonds, whether in the contract bidding process, or otherwise.

f. **Bonded Contract:** A contract for which Surety issues or has issued a Bond.

g. **Default:** An instance or condition in which Principal or Indemnitors, or any of them: (a.) fail to pay any Bond premium charge when due, (b.) forfeit, breach, abandon, default or be declared in default on any Bonded Contract or fail to pay when due any obligation to which any Bond may pertain, (c.) neglect or refuse to pay for any labor or materials used in the prosecution of a Bonded Contract, (d.) make or have made any representation as to any Indemnitor's financial condition or supply any information to Surety which is untrue, materially false or misleading, (e.) fail to honor any obligation under this Agreement, (f.) institute or have instituted against any or all of them a case under the Bankruptcy Code or similar statute, with respect to any Indemnitor as debtor, or any suit or proceeding alleging that any one of them is insolvent or requesting the appointment of a receiver or trustee for the benefit of creditors, (g.) have proceedings instituted against any of them that may have the effect of depriving any of them of the use of any part of the materials or equipment used in connection with the work under a Bonded Contract so as to hinder, delay or impede the normal and satisfactory progress of the work, (h.) make an assignment for the benefit of creditors that in any way impedes the rights of the Surety, (i.) in the case of Indemnitors which are not individuals, dissolve or cease to continue their legal existence, (j.) in the case of Indemnitors who are individuals, die, abscond, disappear, become incompetent, are convicted of a felony or are imprisoned, or (k.) violate any other written agreement with Surety or for the benefit of Surety, including without limitation, subordination agreements with Indemnitors (hereinafter referred to as Other Agreements).

h. **Loss:** Any and all liability, losses, costs, expenses, and fees of whatever kind or nature, that Surety may sustain or incur as a result of executing or procuring any Bond or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement. Loss includes but is not limited to: (a.) sums posted by Surety as a reserve for the payment of potential losses and/or expenses, (b.) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses, (c.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for Principal or Indemnitors, (d.) funds advanced by Surety to a Principal, and (e.) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

**2. PREMIUMS -** The Principal and Indemnitors will pay to the Surety, promptly upon demand, all premiums, costs and charges of the Surety, in accordance with its rate filings, rates as it determines from its manual of rates, or rates as the Surety may otherwise determine, for any Bonds requested from and/or issued by the Surety. Where such premiums, costs and charges are annual, the Principal and Indemnitors agree to pay the same until the Principal and Indemnitors shall deliver evidence satisfactory to the Surety of the discharge or release of all liability under such Bonds.

**3. INDEMNITY -** The Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, pre- and post-judgment interest, court costs and counsel fees, and accounting, engineering and consulting fees,  and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, whether such Bond or Bonds were issued prior to or after the date of this Agreement (2) By reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement or Other Agreements.  In the event of any payment by the Surety the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such

payments made by the Surety shall be *prima facie* evidence of the fact and amount of the liability to the Surety. As used in this paragraph, "good faith" means honesty in fact and the absence of malice or fraud.

**4. POSTING OF COLLATERAL** - If the Surety determines, in its sole discretion and judgment, that potential liability exists for losses, fees, costs, or expenses, for which the Principal and Indemnitors will be obligated to indemnify the Surety under the terms of this Agreement or Other Agreements, the Principal and Indemnitors shall deposit with the Surety, promptly on demand, a sum of money equal to the amount the Surety determines or collateral security of a type and value satisfactory to the Surety, to cover that liability, whether or not the Surety has : (a) established a reserve; (b) made any payments; or (c) received any notice of claims under the Bonds. At the Surety's sole option, such collateral shall be in addition to and not in lieu of any other collateral that has been previously been provided to the Surety with any Bond or Bonds. The Surety shall have the right to use the collateral, or any portion thereof, in payment or settlement of any such liabilities for which the Principal and Indemnitors would be liable to the Surety under this Agreement or Other Agreements with respect to payments made by Surety. The Surety shall have no obligation to invest or provide a return on any collateral provided under this Agreement. Indemnitors acknowledge that the failure of Indemnitors to pay to Surety, immediately upon demand, the sum demanded by Surety hereunder, shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to temporary, preliminary and final injunctive relief for specific performance of their obligations hereunder, including the obligation to pay to Surety the sum demanded, and waive any defenses thereto. To the extent Surety accepts collateral other than money, Surety shall not be liable to any Indemnitor for any diminution in value, loss or destruction of such collateral and shall have no obligation to maintain or insure such collateral.

**5. SURETY'S CONSENT TO CHANGES** - Surety is authorized and empowered, without notice to or knowledge of the Principal and Indemnitors, to consent to changes in any Bond or to changes in the contract or obligation, which is the subject of any Bond, or may refuse to consent to any such change, including, without limitation, any change in the time for the completion of said contract and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of any Bonds and to executed any substitute or substitutes therefore, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Principal and Indemnitors shall remain bound by the terms of this Agreement, even though any such assent by the Surety does or might substantially increase the liability of the Indemnitors. Surety's actions in consenting or in not consenting to any such change shall not release or affect the obligations of Indemnitors to Surety under this Agreement. The Indemnitors further warrant and represent that they are currently informed and shall remain knowledgeable and apprised of Principal's business activities and financial condition. Surety has no obligation to inform Indemnitors of any change in the business affairs and financial condition of Principal.

**6. SURETY'S RIGHT TO DECLINE BONDS** - Surety has the right to decline to execute any Bond requested by the Principal or Indemnitors, including any such Bond requested after Surety has executed a preliminary bond including, but not limited to, a bid or proposal bond, or a Consent of Surety to the issuance of Bonds. This right applies to any Surety's declining to issue or execute any Bond for any reason whatsoever. If the Surety requests another surety to execute a Bond and such other surety declines to execute the Bond, the Surety shall have no liability to the Principal or Indemnitors for such declination. Surety's declining to execute any Bond shall not release or affect the obligations of Indemnitors to Surety under this Agreement. Principal and Indemnitors acknowledge that the Surety makes no representations as to the acceptability of any of its Bonds to any person, firm or entity under any contract, and that Principal and Indemnitors shall have no claim against the Surety relating to the failure or refusal of any entity to accept any Bond issued by the Surety. The Indemnitors acknowledge and agree that it is their sole responsibility to provide the proper forms on a timely basis for the bonds to be executed by the Surety, and to review and approve any bond and undertaking executed by the Surety on its own forms. Neither the Surety, nor its agents, shall have any liability whatsoever to the Indemnitors if they shall fail to furnish the Surety with the proper forms or to object to forms furnished by the Surety.

**7. BOND FORMS** - It shall be the sole responsibility of the Indemnitors to review all bond forms executed by the Surety for appropriateness and for any errors or omissions prior to delivery of the bonds to an obligee. The Surety and its agents shall have no liability to the Indemnitors on account of any negligence (whether sole or concurrent), inadvertence, error or omission in the preparation, execution, or delivery of any bonds. Prior to requesting that the Surety issue any bond, the Indemnitors shall obtain confirmation that the proposed obligee on the bond will accept the Surety as surety on the proposed bond, and neither the Surety, nor its agents, shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the Surety as surety on any bond. The Indemnitors agree that the Indemnitors shall be solely responsible for arranging, independent of the Surety, for the timely delivery of any bond to the obligee. The Surety and its agents shall have no liability to the Indemnitors if any bond is not timely delivered to any obligee for any reason whatsoever, including any negligent acts or omissions on the part of the surety or its agents.

**8. SURETY'S RIGHT TO SETTLE CLAIMS** - Surety shall have the sole and exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and Surety's decision thereon shall be final and binding upon the Indemnitors. Subject to the Surety's rights set forth in the first sentence of this section, which shall remain in full force and effect, if Principal or Indemnitors desire that the Surety litigate such claim or demand, or defend such suit, or appeal from such judgment, they shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered, or which might be rendered, against the Surety, together with interest, costs and attorneys fees.

**9. SURETY'S RIGHT TO COMPLETE WORK** - In the event of a Default, Surety shall have the right, but not the obligation, to take possession of the work under any and all Bonded Contracts, and complete or consent to the completion of such Bonded Contracts at the expense of the Indemnitors.

**10. ADVANCES** - The Surety is authorized and empowered, but not obligated, to guarantee loans, to advance or lend to the Principal any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Principal, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Principal to the Surety when due, shall be presumed to be a loss by the Surety for which the Principal and the Indemnitors shall be liable, notwithstanding that said money or any part thereof should not be so used by the Principal.

**11. ASSIGNMENTS** - Effective as of the date of this Agreement, but enforceable only in the event of a Default, Principal and Indemnitors do hereby assign, transfer and set over to Surety, all of their rights under all Bonded Contract(s) including (a.) their right, title and interest in all subcontracts, subcontract bonds, and purchase orders let in connection therewith, (b.) all machinery, plant, equipment, tools and materials located anywhere, whether for the purposes of the Bonded Contract(s) or not, (c.) all claims and causes of action against any parties, (d.) any and all sums due, or to become due under any contract, whether bonded or not, (e.) all rights in or arising out of any insurance policies of any type, (f.) all rights it has in patents, patented processes, licenses, designs, copyrights, trademarks and all other intellectual property rights, and expressly authorize Surety to use these property rights, at no cost to the Surety, and all proceeds arising therefrom and all records (in whatever form) related thereto.

**12. ATTORNEY IN FACT** - Principal and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Principal and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Principal and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Principal and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

**13. DISCHARGE OF SURETY** - Upon the request of Surety, Principals and Indemnitors will procure the discharge of Surety from any Bond, and all liability arising there from, and provide evidence to Surety regarding same.

**14. BOOKS & RECORDS** - Principal and Indemnitors shall provide to the Surety within 120 days of the end of their respective fiscal years, financial statements prepared in accordance with Generally Accepted Accounting Principles and reports prepared by reputable accounting firms, prepared in accordance with the AICPA's Statements on Standards for Accounting and Review Services (hereinafter SARS). If the Principal and/or Indemnitors have reports prepared by reputable accounting firms in accordance with AICPA's Statements on Auditing Standards, which reports are prepared in connection with the ordinary course of their financial reporting, then such reports shall be provided instead of reports prepared in accordance with SARS. Principal and Indemnitors shall also provide to Surety any management reports received from their accountants within 30 days of receipt. In addition to the foregoing, the Surety, including its designated agents, shall, at any and all times, have unrestricted access upon reasonable notice to review all books and records of Principal and Indemnitors, including all books and records pertaining to their financial condition, and to the status of each unbonded and Bonded Contract. Principal and Indemnitors hereby authorize those with whom such Bonded Contracts are made to furnish to Surety all information concerning such contracts and the work thereunder. Principal and Indemnitors understand and agree that the failure to provide the information required in this paragraph shall be a material breach of this Agreement and shall entitle the Surety to demand, in its sole discretion, cash collateral up to the penal sums of any and all outstanding Bonds.

**15. INDEMNITORS' WAIVER OF NOTICE** - Indemnitors warrant that each of them is specifically and beneficially interested in the obtaining of each Bond and agree to keep themselves fully informed as to the business activities and financial affairs of any one or more of the Indemnitors or any Principal for whom Bonds are executed by Surety. Indemnitors hereby expressly waive any notice from the Surety of any fact or information coming to the attention or knowledge of the Surety which affects its rights or the rights or liabilities of the Indemnitors, including notice of execution of any particular Bond subject to this Agreement and notice of default by the Principal or of the receipt of claims under any Bond.

**16. EFFECT OF INVALIDITY** - Any defect or invalidity in the execution of this Agreement by any Indemnitor or the failure of any Indemnitor whose name appears hereinbelow to execute this Agreement shall not in any manner affect the validity of these obligations or the liability hereunder of the other Indemnitors. Invalidity of any provision of this Agreement by reason of the laws of any State or for any other reason shall not render the remaining provisions of this Agreement invalid, and this Agreement shall be construed and enforced with the same effect as though such provision or provisions were omitted.

**17. TERMINATION BY ANY INDEMNITOR** - Any Indemnitor wishing to terminate this Agreement must give Arch written notice by Registered Mail at least thirty (30) days prior to termination. The termination will not affect Indemnitor's obligations hereunder with respect to any Bonds executed and issued prior to the termination of this Agreement by that Indemnitor and with respect to any Bonds or renewals executed after the effective date of termination with respect to which Surety had issued a bid bond, consent of surety or prior Bond or undertaking prior to the effective date of termination. The termination by any one Indemnitor shall not affect the liability of any other Indemnitor.

**18. CHANGE IN STATUS/TRANSFER OF ASSETS** - Each Indemnitor agrees not to change or convert its respective individual, corporate or partnership status to either an LLC or an LLP or any other similar structure which has the effect of limiting, reducing or shielding the liability of either the entity or its partners and/or officers hereunder, without the prior, express, written consent of Surety. Should any Indemnitor so change its respective corporate or partnership status without the prior, express, written consent of Surety, Indemnitor agrees that such change in its status shall not limit, reduce or otherwise shield its obligations, its partners' and/or officers' obligations, to Surety which arise from this Agreement. Indemnitors hereby expressly waive as against Surety any and all defenses which may arise from such a conversion to a LLC, LLP or similar status.

**19. CHANGE IN CONTROL** - The Indemnitors shall not permit a Change of Control, as defined hereinbelow, to occur without the Surety's prior written consent. Change in Control means: (a) the transfer, merger or consolidation, in one transaction or a series of transactions, of all or substantially all of the assets of any one Indemnitor, which results in an unaffiliated Person owning, directly or indirectly fifty percent (50%) or more of the beneficial ownership or control of such Indemnitor; (b) the acquisition, in one transaction or a series of transactions, of fifty percent (50%) or more of the beneficial ownership or control of any Indemnitor; or (c) the acquisition by any Indemnitor, directly or indirectly, of fifty percent (50%) or more of the beneficial ownership or control of any joint venture, subsidiary,

division, affiliate, limited partnership, limited liability partnership, limited liability company or other entity through the issuance of fifty percent (50%) or more of the voting power of the total outstanding voting stock of any Indemnitor.

**20. NOTICE OF CHANGE IN RESIDENCE** - Each Indemnitor who is an individual agrees to give Surety written notice of any change in his/her principal residence within 30 days of the change of address.  Each Indemnitor, which is not an individual, agrees not to change its principal place of business or the state of jurisdiction in which it is incorporated or otherwise organized without also giving Surety 30 days' written notice of the proposed change. If Surety has previously filed a Uniform Commercial Code Financing Statement with respect to such Indemnitor, Indemnitor agrees to file a Financing Statement in the new state or jurisdiction.

**21. EFFECT OF RELEASE OF ANY INDEMNITOR** - Indemnitors agree that, at any time, Surety may release any Indemnitor or Indemnitors from this Agreement, without affecting, reducing or otherwise limiting the obligations of any remaining Indemnitor, and Indemnitors hereby expressly waive both (a) notice from Surety of any such release, and (b) any defense that may be created in favor of any remaining Indemnitor as a result of Surety's release of another Indemnitor. Waiver of any one Default shall not be deemed a waiver of any other Default.

**22. FILING OF AGREEMENT UNDER THE UCC** - This Agreement shall constitute a Security Agreement to the Surety and also shall constitute a Financing Statement naming Surety as secured creditor and each Indemnitor as debtor, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of a copy of this Agreement shall be solely at the option of Surety and Surety's failure to do so shall not release or impair any obligation of Indemnitors, under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of Surety's rights under this Agreement or otherwise. The appearance of Arch's logo on the first page of this Agreement shall constitute its signature hereon. Indemnitors hereby irrevocably appoint and designate Surety or its authorized representative as their respective Attorneys-In-Fact to sign any Financing Statement form which may be required in order to file the same in any jurisdiction or office.

**23. APPLICABILITY OF AGREEMENT** - This Agreement shall apply to all Bonds executed by and/or procured by Surety for Principal, in its own name or as a joint venture with others.  Indemnitors expressly waive any defense that may arise as a result of this Agreement having been executed subsequent to the date of the issuance of any Bond and Indemnitors admit and acknowledge that any such Bond was executed pursuant to Indemnitors' request and in reliance on the Indemnitors' representation and promise to execute this Agreement.

**24. PAYMENTS BY INDEMNITORS** - All payments made by Indemnitors to Surety under this Agreement shall be in United States Dollars and in no other currency and shall be sent, at Surety's discretion via check or wire transfer to any bank account subsequently designated by Surety. All sums payable to the Surety under this Agreement shall bear interest if not paid by Indemnitors within ten (10) days of demand by Surety. The interest rate shall be an annual rate of 10%, or the maximum rate permitted by applicable law if less than 10%. All Payments made shall be credited first to accrued and unpaid interest, if any, and then to the unpaid principal balance of the obligation.

**25. TRUST FUNDS** - Principal and Indemnitors agree and expressly declare that all funds due or to become due under any Bonded Contract are trust funds, whether in the possession of Principal or another and whether designated trust funds or not, for the benefit and payment of all persons to whom Principal incurs obligations in the performance of such contract, for which Surety may be liable under any Bond. If Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds.

**26.  HOMESTEAD** - To the extent permitted by applicable law, the Principal and Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory or possession.

**27**.  **SURETIES** - In the event the Surety procures the execution of any Bond by other sureties, or executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsurers, then all the terms and conditions of this Agreement shall inure to the benefit of such Sureties, co-sureties and reinsurers, their successors and assigns, as their interests may appear.

**28. SUITS** - The Surety may bring separate suits under this Agreement as causes of action accrue, and the bringing of suit or the recovery of judgment upon a cause of action shall not bar, prejudice or preclude the Surety's bringing other suits upon other causes of action, whether theretofore or thereafter arising.  Surety may enforce this

Agreement against any Indemnitor without the necessity of first proceeding against any Principal or other Indemnitor.

**29. JURISDICTION -** As to any legal action related to this Agreement, Principal and Indemnitors consent to the general jurisdiction of any state or federal court of the United States or its territories having proper subject matter jurisdiction or in any court of the United States in which a claim may be brought against the Surety under any of the Bonds, at the sole discretion of the Surety.   Principal and Indemnitors waive any claim or defense in any such action based on alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

**30. JURY WAIVER -** Principal and Indemnitors hereby expressly waive any right to a trial by jury with respect to any legal proceeding arising under this Agreement.

**31. CURRENCY EXCHANGE -** Should the Surety, when making a payment or incurring any expense directly or indirectly related to the Bond, expend funds in any currency other than U.S. Dollars, then Indemnitors shall either reimburse the Surety in U.S. Dollars equal to the amount expended by the surety at the time the foreign currency was purchased or shall defray the cost of any exchange variation, thereby indemnifying the Surety for any decrease in the valuation of the currency purchased.

**32.  NOTICE OF SERVICE -** Notice of Service made by U. S. Mail or by FAX to the last known address constitutes service whether or not received.

**33. ADDRESS FOR NOTICES -** All notices required to be given by Indemnitors under this Agreement shall be sent by registered mail to Arch Insurance Company, 3 Parkway, Suite 1500, Philadelphia, PA 19102 USA and shall include a copy of this Agreement attached thereto.

**34. OTHER INDEMNITY -** The Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of the Bonds, from the Indemnitors or others, it being expressly understood and agreed by the Indemnitors that any and all other rights which the Surety may have or acquire against the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

**35. SUBORDINATION OF INDEMNITORS -** The Indemnitors shall have no rights of indemnity or contribution against the Principal or its property until the Principal's obligations to the Surety under this Agreement have been satisfied in full.

**36.  REPRESENTATIONS -** Indemnitors represent and warrant to Surety that (i) they have carefully read and understand this entire Agreement; (ii) they have had the opportunity to review and discuss it with an attorney of their choosing; (iii) there are no other agreements, understandings or representations made by or on behalf of Surety which would diminish or modify the Indemnitors' obligations or Surety's rights set forth herein; (iv) that this Agreement shall be in addition to and shall not constitute a novation of or revoke or rescind any prior agreements of indemnity executed by an Indemnitor and that Surety's rights under such agreements are cumulative.

**37.  GENERAL PROVISIONS -** (i) This Agreement sets forth unilateral undertakings of Indemnitors only upon which Surety may rely in considering whether to execute Bonds on behalf of any Principal.    Indemnitors acknowledge that Surety is not required to execute this Agreement in order to enforce it; (ii) All references in this Agreement in the singular shall include the plural and vice versa, and all references to a gender shall include all genders.

**38. MODIFICATIONS -** This Agreement, and the rights and remedies of Surety hereunder may not be waived, challenged or modified orally. No written waiver, change or modification shall be effective unless signed by an officer or other authorized representative of Surety.

**IN WITNESS WHEREOF,** the Indemnitors have caused this Agreement to be executed by their respective duly authorized representatives this ___*13 th*___ day of *February* , 20*14* .

**Witness/ Attest**

_Arleene B. Vargas_
(Name of Witness)

Principal/Indemnitor: Platinum Construction, Inc.

By: _____
Print Name: Darrin W. Streilein
Its: President and Corporate Secretary
Tax I.D. No.: _____
Address: _____

(seal)

_Arleene B. Vargas_
(Name of Witness)

Principal/Indemnitor: USS Cal Builders, Inc.

By: _____
Print Name: Allen Othman
Its: President
Tax I.D. No. _____
Address: _____

(seal)

_Arleene B. Vargas_
(Name of Witness)

Principal/Indemnitor: USS Cal Builders, Inc.

By: _____
Print Name: Eric Othman
Its: Corporate Secretary
Tax I.D. No.: _____
Address: _____

(seal)

_Arleene B. Vargas_
(Name of Witness)

Indemnitor: Darrin W. Streilein

By: _____
Print Name: Darrin W. Streilein
Its: Individual
SSN/Tax I.D. No.: _____
Address: _____

(seal)

_Arleene B. Vargas_
(Name of Witness)

Indemnitor: Allen Othman

By: _____
Print Name: Allen Othman
Its: Individual
SSN/Tax I.D. No.: _____
Address: _____

(seal)

_Arleene B. Vargas_
(Name of Witness)

Indemnitor: Eric Othman
By: _____
Print Name: Allen Othman
Its: Individual
SSN/Tax I.D. No.: _____
Address: _____

(seal)

_Arleene B. Vargas_
(Name of Witness)

Indemnitor: Shereen Othman
By: _____
Print Name: Shereen Othman
Its: Individual
SSN/Tax I.D. No.: _____
Address: _____

(seal)

_Arleene B. Vargas_
(Name of Witness)

Indemnitor: 2011 Allen Othman Trust
By: _____
Print Name: Allen Othman
Its: Trustee
SSN/Tax I.D. No.: _____
Address: _____

(seal)

_Arleene B. Vargas_
(Name of Witness)

Indemnitor: Imad and Shereen Othman Family Trust
By: _____
Print Name: Imad E. Othman
Its: Trustee
SSN/Tax I.D. No.: _____
Address: _____

(seal)

_Arleene B. Vargas_
(Name of Witness)

Indemnitor: Imad and Shereen Othman Family Trust
By: _____
Print Name: Shereen Othman
Its: Trustee
SSN/Tax I.D. No.: _____
Address: _____

(seal)

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of Orange

On February 13, 2014 before me, Veronica Alicia Lepe, Notary Public,
_____ Date _____ Here Insert Name and Title of the Officer

personally appeared Darrin William Gizeilein
_____ Name(s) of Signer(s)

VERONICA ALICIA LEPE
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

Place Notary Seal Above

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____
Signature of Notary Public

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: General Indemnity Agreement

Document Date: February 13, 2014 _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)                Item #5907

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

CIVIL CODE § 1189

State of California

County of Orange

On February 13, 204 before me, Veronica Alicia Lepe, Notary Public
<br>Here Insert Name and Title of the Officer

personally appeared Darrin William Shrailen
<br>Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

VERONICA ALICIA LEPE
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

Place Notary Seal Above

Signature: _____
<br>Signature of Notary Public

——————— **OPTIONAL** ———————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: General Indemnity Agreement

Document Date: February 13, 2014 _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____
_____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____
_____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of _Orange_

On _February 14, 2014_ before me, _Veronica Alicia Lepe, Notary Public_ ,
      (Date)                                    Here Insert Name and Title of the Officer

personally appeared _Allen Amen Othman Imad Eric Othman,_
_and Sheneen Othman_
                                    Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                Signature of Notary Public

**VERONICA ALICIA LEPE**
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

Place Notary Seal Above

---

### ───────── OPTIONAL ─────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**
Title or Type of Document: _General Indemnity Agreement_

Document Date: _____   Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____
_____

Signer Is Representing: _____

| RIGHT THUMBPRINT OF SIGNER |
|---|
| Top of thumb here |

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

| RIGHT THUMBPRINT OF SIGNER |
|---|
| Top of thumb here |

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)                    Item #5907

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

CIVIL CODE § 1189

State of California

County of _Orange_ }

On _February 14, 2014_ before me, _Veronica Alicia Lepe, Notary Public_
    Date                     Here Insert Name and Title of the Officer

personally appeared _Allen Amer Ahman Imad Eric Ahman and_
_Shereen Ahman_
                              Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

VERONICA ALICIA LEPE
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

Signature: _____
             Signature of Notary Public

Place Notary Seal Above

———— **OPTIONAL** ————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _General Indemnity Agreement_

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

| RIGHT THUMBPRINT OF SIGNER |
| Top of thumb here |

Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

| RIGHT THUMBPRINT OF SIGNER |
| Top of thumb here |

Signer Is Representing: _____

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)      Item #5907

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of Orange

On February 14 2014 before me, Veronica Alicia Lepe, Notary Public
Date                                Here Insert Name and Title of the Officer

personally appeared   Allen Amer Othman
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

VERONICA ALICIA LEPE
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

Place Notary Seal Above

Signature: _____
Signature of Notary Public

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**
Title or Type of Document: General Indemnity Agreement

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

---

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)          Item #5907

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of _Orange_____

On _February 14, 2014_ before me, _Veronica Alicia Lepe, Notary Public_ ,
        Date                                Here Insert Name and Title of the Officer

personally appeared _Allen Amer Othman_____
                                              Name(s) of Signer(s)

_____,

VERONICA ALICIA LEPE
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

Place Notary Seal Above

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____
                        Signature of Notary Public

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**
Title or Type of Document: _General Indemnity Agreement_

Document Date: _____  Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
- Corporate Officer — Title(s): _____
- Individual
- Partner — Limited  General
- Attorney in Fact
- Trustee
- Guardian or Conservator
- Other: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer Is Representing: _____

Signer's Name: _____
- Corporate Officer — Title(s): _____
- Individual
- Partner — Limited  General
- Attorney in Fact
- Trustee
- Guardian or Conservator
- Other: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer Is Representing: _____

From: (626) 639-5313
Aza Ekizyan
Aekizyan@Archinsurance.com
135 N. Los Robles Ave Ste. 825

Pasadena, CA 91101

Origin ID: WHPA

**FedEx** Express

J14101402070326

Ship Date: 01APR14
ActWgt: 1.0 LB
CAD: 4157875/INET3490

Delivery Address Bar Code

SHIP TO: (215) 606-1617
**Dennis Stefano**
**Arch Insurance ( PA)**
**3 PARKWAY STE 1500**

**PHILADELPHIA, PA 19102**

**BILL SENDER**

Ref # 6520-11 *Original to Home office Per Marc Henry*
Invoice #
PO #
Dept # 6520-1104

*Attn: Claim (Construction) Inc. - ASS Co*



WED - 02 APR AA
STANDARD OVERNIGHT

TRK# 7984 1212 7918
0201

**XB MUVA**

19102
PA-US
PHL



522G1/7809/F220

**After printing this label**:

1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**COPY**

EXHIBIT E –

MAY 31, 2017 (AMENDMENT NO. 1 TO THE
FEBRUARY 13, 2014 GIA)



**Arch** Insurance Company
a member of Arch Insurance Group

### AMENDMENT #01 TO THE GENERAL INDEMNITY AGREEMENT
### (Additional Indemnitors)

This Amendment No. #01 (hereinafter this "Amendment") shall be attached to and form part of the General Indemnity Agreement made and entered into by Platinum Construction, Inc. in favor of the Surety, dated 13th day of February, 2017, and as may have been amended from time to time (hereinafter the "Indemnity Agreement"). It is hereby agreed that:

1. All capitalized terms used but not defined in this Amendment shall have the meaning given to them in the Indemnity Agreement.

2. This Amendment shall take effect and form part of the Indemnity Agreement immediately upon execution, and except as amended herein, all other terms and conditions of the Indemnity Agreement are unchanged and shall remain in full force and effect.

3. The following individual(s), trust(s), and/or business entities shall be added to the Indemnity Agreement as Indemnitor(s) and Principal(s) and shall be bound by all of its terms for all Bonds issued pursuant to the Indemnity Agreement, whether such Bonds were issued before or after the execution of this Amendment or before or after the date of the Indemnity Agreement:

   Lutfi Bustami
   Line Alghannam
   JJ Zhang
   Loretta Wu

4. Pursuant to Paragraph THIRTY-FOUR (34) of the Indemnity Agreement, the addition to the Indemnity Agreement of the Indemnitor(s) named in Paragraph 3 above shall be effected by written amendment executed by such Indemnitor(s) only.

IN WITNESS WHEREOF, I/we have signed and sealed this ⟨31⟩ day of ⟨5⟩, 20 ⟨17⟩.

By affixing his/her/their signatures hereto, each Indemnitor signing on behalf of a business entity warrants that each is duly authorized by Indemnitor to bind the respective Indemnitor(s) hereto.

**Witness/ Attest**

*Chelsea Chichester*
(Name of Witness)

Indemnitor: Lutfi Bustami
By:
Print Name: Lutfi Bustami
Its: Individual
SSN/Tax I.D. No.:
Address:

(seal)

_Chelsea Chichester_
(Name of Witness)

Indemnitor: Line Alghannam

By: _____

Print Name: Line Alghannam

Its: Individual

SSN/Tax I.D. No.: _____

Address: _____

(seal)

_Chelsea Chichester_
(Name of Witness)

Indemnitor: JJ Zhang

By: _____

Print Name: JJ Zhang

Its: Individual

SSN/Tax I.D. No.: _____

Address: _____

(seal)

_Chelsea Chichester_
(Name of Witness)

Indemnitor: Loretta Wu

By: _____

Print Name: Loretta Wu

Its: Individual

SSN/Tax I.D. No.: _____

Address: _____

(seal)

_Chelsea Chichester_
(Name of Witness)

Indemnitor: Platinum Construction, Inc.

By: _____

Print Name: Lutfi Bustami

Its: President

SSN/Tax I.D. No.: _____

Address: _____

(seal)

**Signature of Surety**

_Azatui Evizyan_
(Name of Witness)

Marc M. Henry

**Revised 01/27/2015**

**Page 2 of 2**

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**          CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California          )

County of ___Orange___          )

On __5|3|17__ before me, _____Jeanette Plotnik, Notary Public_____,
　　　*Date*　　　　　　　　　　*Here Insert Name and Title of the Officer*

personally appeared _____Lutfi Mustafa Bustami_____
　　　　　　　　　　　　　　　*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

JEANETTE PLOTNIK
Commission # 2141770
Notary Public - California
San Bernardino County
My Comm. Expires Feb 6, 2020

Signature _____Jeanette Plotnik_____
　　　　　　*Signature of Notary Public*

　　　　*Place Notary Seal Above*

———— **OPTIONAL** ————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____　Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____　　Signer's Name: _____
☐ Corporate Officer — Title(s): _____　☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General　☐ Partner — ☐ Limited  ☐ General
☐ Individual　　☐ Attorney in Fact　☐ Individual　　☐ Attorney in Fact
☐ Trustee　☐ Guardian or Conservator　☐ Trustee　☐ Guardian or Conservator
☐ Other: _____　　☐ Other: _____
Signer Is Representing: _____　Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California                                    )
County of _Orange_____                         )
On _5/31/17_____ before me, _Jeanette Plotnik, Notary Public_
    *Date*                                              *Here Insert Name and Title of the Officer*
personally appeared ____Line Alahannam_____
                                *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

JEANETTE PLOTNIK
Commission # 2141770
Notary Public - California
San Bernardino County
My Comm. Expires Feb 6, 2020

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Jeanette Plotnik_
                    *Signature of Notary Public*

    *Place Notary Seal Above*
———————————————— **OPTIONAL** ————————————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**          **CIVIL CODE § 1189**

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California                                    )
County of _Orange_                                  )

On _5|31|17_ before me, _Jeanette Plotnik, Notary Public_
     Date                                    Here Insert Name and Title of the Officer

personally appeared _JJ Zhang_
                        Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

JEANETTE PLOTNIK
Commission # 2141770
Notary Public - California
San Bernardino County
My Comm. Expires Feb 6, 2020

Signature _Jeanette Plotnik_

             Signature of Notary Public

Place Notary Seal Above
———————————————— **OPTIONAL** ————————————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____  Document Date: _____
Number of Pages: _____  Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
| --- | --- |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited  ☐ General | ☐ Partner — ☐ Limited  ☐ General |
| ☐ Individual  ☐ Attorney in Fact | ☐ Individual  ☐ Attorney in Fact |
| ☐ Trustee  ☐ Guardian or Conservator | ☐ Trustee  ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**    **CIVIL CODE § 1189**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )

County of _Orange_ )

On _5/31/17_ before me, _Jeanette Plotnik, Notary Public_
      Date                                *Here Insert Name and Title of the Officer*

personally appeared _Loretta Chung Mei Wu_
                                        *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Jeanette Plotnik_
                                  *Signature of Notary Public*

> JEANETTE PLOTNIK
> Commission # 2141770
> Notary Public - California
> San Bernardino County
> My Comm. Expires Feb 6, 2020

*Place Notary Seal Above*

———————————— **OPTIONAL** ————————————

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____ Document Date: _____

Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____ | Signer's Name: _____
☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General | ☐ Partner — ☐ Limited  ☐ General
☐ Individual  ☐ Attorney in Fact | ☐ Individual  ☐ Attorney in Fact
☐ Trustee  ☐ Guardian or Conservator | ☐ Trustee  ☐ Guardian or Conservator
☐ Other: _____ | ☐ Other: _____
Signer Is Representing: _____ | Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

AIC 0000191770

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON BLUE BACKGROUND.**

*This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.  Not valid for Mortgage, Note, Loan, Letter of Credit, Bank Deposit, Currency Rate, Interest Rate or Residential Value Guarantees.*

# POWER OF ATTORNEY

Know All Persons By These Presents:

That the Arch Insurance Company, a corporation organized and existing under the laws of the State of Missouri, having its principal administrative office in Jersey City, New Jersey (hereinafter referred to as the "Company") does hereby appoint:

Diana Popescu, Marc M. Henry and Maria Vargas of Los Angeles, CA (EACH)

its true and lawful Attorney(s)in-Fact, to make, execute, seal, and deliver from the date of issuance of this power for and on its behalf as surety, and as its act and deed:

Any and all bonds, undertakings, recognizances and other surety obligations, in the penal sum not exceeding <u>Ninety Million</u> Dollars (<u>$90,000,000.00</u>).

This authority does not permit the same obligation to be split into two or more bonds In order to bring each such bond within the dollar limit of authority as set forth herein.

The execution of such bonds, undertakings, recognizances and other surety obligations in pursuance of these presents shall be as binding upon the said Company as fully and amply to all intents and purposes, as if the same had been duly executed and acknowledged by its regularly elected officers at its principal administrative office in Jersey City, New Jersey.

This Power of Attorney is executed by authority of resolutions adopted by unanimous consent of the Board of Directors of the Company on September 15, 2011, true and accurate copies of which are hereinafter set forth and are hereby certified to by the undersigned Secretary as being in full force and effect:

"VOTED, That the Chairman of the Board, the President, or the Executive Vice President, or any Senior Vice President, of the Surety Business Division, or their appointees designated in writing and filed with the Secretary, or the Secretary shall have the power and authority to appoint agents and attorneys-in-fact, and to authorize them subject to the limitations set forth in their respective powers of attorney, to execute on behalf of the Company, and attach the seal of the Company thereto, bonds, undertakings, recognizances and other surety obligations obligatory in the nature thereof, and any such officers of the Company may appoint agents for acceptance of process."

This Power of Attorney is signed, sealed and certified by facsimile under and by authority of the following resolution adopted by the unanimous consent of the Board of Directors of the Company on September 15, 2011:

VOTED, That the signature of the Chairman of the Board, the President, or the Executive Vice President, or any Senior Vice President, of the Surety Business Division, or their appointees designated in writing and filed with the Secretary, and the signature of the Secretary, the seal of the Company, and certifications by the Secretary, may be affixed by facsimile on any power of attorney or bond executed pursuant to the resolution adopted by the Board of Directors on September 15, 2011, and any such power so executed, sealed and certified with respect to any bond or undertaking to which it is attached, shall continue to be valid and binding upon the Company.

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California            )
County of __Los Angeles__      )

On __06/12/2017__ before me, __Azatui Mary Ekizyan / Notary Public__ ,
　　　　*Date*　　　　　　　　　*Here Insert Name and Title of the Officer*

personally appeared _____Marc M. Henry_____
　　　　　　　　　　　　　　　　　*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> **AZATUI MARY EKIZYAN**
> Commission # 2138318
> Notary Public - California
> Los Angeles County
> My Comm. Expires Jan 21, 2020

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
　　　　　　　*Signature of Notary Public*

　　　　*Place Notary Seal Above*

―――――――――――――――― **OPTIONAL** ――――――――――――――――
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

EXHIBIT F –

MARCH 11, 2014



Arch Insurance Company
a member of Arch Insurance Group

# GENERAL INDEMNITY AGREEMENT

THIS GENERAL INDEMNITY AGREEMENT (hereinafter called "Agreement") is made by the undersigned Indemnitors in favor of Arch Insurance Company, Arch Reinsurance Company, and any present or future subsidiary or affiliate of Arch Insurance Company, (hereinafter collectively called "Arch"), for the purpose of indemnifying Surety (as herein defined below) for any Bonds (as herein defined below), which Surety may have issued, or may hereafter issue, or on which Surety otherwise becomes surety.

## RECITALS

A.  Principal, as hereinafter defined, in the performance of contracts and the fulfillment of obligations generally, whether in their own names or with others, may desire or be required to give or procure Bonds, and to renew, continue or substitute from time to time the same or new Bonds, or the Indemnitors may have an interest in inducing the Surety to refrain from canceling said Bonds.

B. The Indemnitors understand that the Surety expressly requires the execution and delivery of this  Agreement as part of the consideration for the execution by the Surety of such Bonds which may hereafter be furnished, or for the refraining of canceling such Bonds.

C. The Indemnitors have a substantial, material and beneficial interest in the Principal's obtaining of Bonds from the Surety or in the Surety's refraining from canceling such Bonds.

## AGREEMENTS

**IN CONSIDERATION** of the foregoing premises and the Surety's execution and delivery of one or more Bonds or its refraining from canceling the same, and intending to be legally bound hereby, the Indemnitors, for themselves and their respective heirs, executors, administrators, successors, and assigns, hereby agree, jointly and severally, to be obligated to the Surety, its successors and assigns, as follows:

**1. DEFINITIONS** - In addition to the capitalized terms defined elsewhere in this Agreement, the following terms when used in this Agreement, unless the context otherwise requires, shall have the meanings indicated in this paragraph, which meanings shall be equally applicable to both the singular and plural forms of such terms:

a.  **Principal:** Any Indemnitor on behalf of which Surety may execute a Bond and/or any Person whose name is or has been furnished to Surety by any of the Indemnitors or on behalf of which Surety has issued any Bond at the request of any Indemnitor, including, but not limited to, any of the Indemnitors named or referred to as "Principal" in any bond, undertaking or recognizance. The term "Principal" also includes any present or future direct or indirect subsidiary, successor, affiliate or parent of any Indemnitor and any partnerships, LLCs, LLPs or other entities owned in whole or in part by any named Indemnitor.

b.  **Indemnitors:** All Persons who sign this Agreement or whose representatives sign this Agreement or any other agreement that incorporates by reference the terms of this Agreement. The Indemnitors warrant and represent that they have a material and beneficial interest in Surety's issuance of Bonds on behalf of the Principal, and acknowledge that Surety would not issue such Bonds without each Indemnitor's agreement to reimburse Surety for all losses arising under the Bonds.

c.  **Surety:** Arch and/or any other present or future subsidiary or affiliate of Arch, which may issue Bonds, as well as any and all sureties, co-sureties or reinsurers who issue, execute or reinsure any portion of the Bond or who procure bonds at the request of Arch.  The terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsurers.

d.   **Person:** An individual, corporation, partnership, Limited Liability Company (hereinafter called LLC), Limited Liability Partnership (hereinafter called LLP), joint venture, trust, estate or other legal entity.

e.   **Bond:** Any and all bonds, including but not limited to surety bonds, undertakings, guaranties, and any renewals or extensions thereof issued by Surety, or issued by another at the request of Surety, on behalf of Principal, whether issued prior to or subsequent to the effective date of this Agreement.  The term Bond also includes any electronic processes in lieu of the issuance of paper bonds, whether in the contract bidding process, or otherwise.

f.   **Bonded Contract:** A contract for which Surety issues or has issued a Bond.

g.   **Default:** An instance or condition in which Principal or Indemnitors, or any of them: (a.) fail to pay any Bond premium charge when due, (b.) forfeit, breach, abandon, default or be declared in default on any Bonded Contract or fail to pay when due any obligation to which any Bond may pertain, (c.) neglect or refuse to pay for any labor or materials used in the prosecution of a Bonded Contract, (d.) make or have made any representation as to any Indemnitor's financial condition or supply any information to Surety which is untrue, materially false or misleading, (e.) fail to honor any obligation under this Agreement, (f.) institute or have instituted against any or all of them a case under the Bankruptcy Code or similar statute, with respect to any Indemnitor as debtor, or any suit or proceeding alleging that any one of them is insolvent or requesting the appointment of a receiver or trustee for the benefit of creditors, (g.) have proceedings instituted against any of them that may have the effect of depriving any of them of the use of any part of the materials or equipment used in connection with the work under a Bonded Contract so as to hinder, delay or impede the normal and satisfactory progress of the work, (h.) make an assignment for the benefit of creditors that in any way impedes the rights of the Surety, (i.) in the case of Indemnitors which are not individuals, dissolve or cease to continue their legal existence, (j.) in the case of Indemnitors who are individuals, die, abscond, disappear, become incompetent, are convicted of a felony or are imprisoned, or (k.) violate any other written agreement with Surety or for the benefit of Surety, including without limitation, subordination agreements with Indemnitors (hereinafter referred to as Other Agreements).

h.   **Loss:** Any and all liability, losses, costs, expenses, and fees of whatever kind or nature, that Surety may sustain or incur as a result of executing or procuring any Bond or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement.  Loss includes but is not limited to: (a.) sums posted by Surety as a reserve for the payment of potential losses and/or expenses, (b.) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses, (c.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for Principal or Indemnitors, (d.) funds advanced by Surety to a Principal, and (e.) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

**2. PREMIUMS** - The Principal and Indemnitors will pay to the Surety, promptly upon demand, all premiums, costs and charges of the Surety, in accordance with its rate filings, rates as it determines from its manual of rates, or rates as the Surety may otherwise determine, for any Bonds requested from and/or issued by the Surety. Where such premiums, costs and charges are annual, the Principal and Indemnitors agree to pay the same until the Principal and Indemnitors shall deliver evidence satisfactory to the Surety of the discharge or release of all liability under such Bonds.

**3. INDEMNITY** - The Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, pre- and post-judgment interest, court costs and counsel fees, and accounting, engineering and consulting fees,  and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, whether such Bond or Bonds were issued prior to or after the date of this Agreement (2) By reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement or Other Agreements.  In the event of any payment by the Surety the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such

payments made by the Surety shall be *prima facie* evidence of the fact and amount of the liability to the Surety. As used in this paragraph, "good faith" means honesty in fact and the absence of malice or fraud.

**4. POSTING OF COLLATERAL -** If the Surety determines, in its sole discretion and judgment, that potential liability exists for losses, fees, costs, or expenses, for which the Principal and Indemnitors will be obligated to indemnify the Surety under the terms of this Agreement or Other Agreements, the Principal and Indemnitors shall deposit with the Surety, promptly on demand, a sum of money equal to the amount the Surety determines or collateral security of a type and value satisfactory to the Surety, to cover that liability, whether or not the Surety has : (a) established a reserve; (b) made any payments; or (c) received any notice of claims under the Bonds. At the Surety's sole option, such collateral shall be in addition to and not in lieu of any other collateral that has been previously been provided to the Surety with any Bond or Bonds. The Surety shall have the right to use the collateral, or any portion thereof, in payment or settlement of any such liabilities for which the Principal and Indemnitors would be liable to the Surety under this Agreement or Other Agreements with respect to payments made by Surety. The Surety shall have no obligation to invest or provide a return on any collateral provided under this Agreement. Indemnitors acknowledge that the failure of Indemnitors to pay to Surety, immediately upon demand, the sum demanded by Surety hereunder, shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to temporary, preliminary and final injunctive relief for specific performance of their obligations hereunder, including the obligation to pay to Surety the sum demanded, and waive any defenses thereto. To the extent Surety accepts collateral other than money, Surety shall not be liable to any Indemnitor for any diminution in value, loss or destruction of such collateral and shall have no obligation to maintain or insure such collateral.

**5. SURETY'S CONSENT TO CHANGES -** Surety is authorized and empowered, without notice to or knowledge of the Principal and Indemnitors, to  consent to changes in any Bond or to changes in the contract or obligation, which is the subject of any Bond, or may refuse to consent to any such change, including, without limitation, any change in the time for the completion of said contract and to payments or advances thereunder before the same may be due, and to assent  to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of any Bonds and to executed any substitute or substitutes therefore, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Principal and Indemnitors shall remain bound by the terms of this Agreement, even though any such assent by the Surety does or might substantially increase the liability of the Indemnitors. Surety's actions in consenting or in not consenting to any such change shall not release or affect the obligations of Indemnitors to Surety under this Agreement. The Indemnitors further warrant and represent that they are currently informed and shall remain knowledgeable and apprised of Principal's business activities and financial condition. Surety has no obligation to inform Indemnitors of any change in the business affairs and financial condition of Principal.

**6. SURETY'S RIGHT TO DECLINE BONDS -** Surety has the right to decline to execute any Bond requested by the Principal or Indemnitors, including any such Bond requested after Surety has executed a preliminary bond including, but not limited to, a bid or proposal bond, or a Consent of Surety to the issuance of Bonds. This right applies to any Surety's declining to issue or execute any Bond for any reason whatsoever. If the Surety requests another surety to execute a Bond and such other surety declines to execute the Bond, the Surety shall have no liability to the Principal or Indemnitors for such declination. Surety's declining to execute any Bond shall not release or affect the obligations of Indemnitors to Surety under this Agreement. Principal and Indemnitors acknowledge that the Surety makes no representations as to the acceptability of any of its Bonds to any person, firm or entity under any contract, and that Principal and Indemnitors shall have no claim against the Surety relating to the failure or refusal of any entity to accept any Bond issued by the Surety. The Indemnitors acknowledge and agree that it is their sole responsibility to provide the proper forms on a timely basis for the bonds to be executed by the Surety, and to review and approve any bond and undertaking executed by the Surety on its own forms. Neither the Surety, nor its agents, shall have any liability whatsoever to the Indemnitors if they shall fail to furnish the Surety with the proper forms or to object to forms furnished by the Surety.

**7. BOND FORMS -** It shall be the sole responsibility of the Indemnitors to review all bond forms executed by the Surety for appropriateness and for any errors or omissions prior to delivery of the bonds to an obligee. The Surety and its agents shall have no liability to the Indemnitors on account of any negligence (whether sole or concurrent), inadvertence, error or omission in the preparation, execution, or delivery of any bonds. Prior to requesting that the Surety issue any bond, the Indemnitors shall obtain confirmation that the proposed obligee on the bond will accept the Surety as surety on the proposed bond, and neither the Surety, nor its agents, shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the Surety as surety on any bond. The Indemnitors agree that the Indemnitors shall be solely responsible for arranging, independent of the Surety, for the timely delivery of any bond to the obligee. The Surety and its agents shall have no liability to the Indemnitors if any bond is not timely delivered to any obligee for any reason whatsoever, including any negligent acts or omissions on the part of the surety or its agents.

**8. SURETY'S RIGHT TO SETTLE CLAIMS -** Surety shall have the sole and exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and Surety's decision thereon shall be final and binding upon the Indemnitors. Subject to the Surety's rights set forth in the first sentence of this section, which shall remain in full force and effect, if Principal or Indemnitors desire that the Surety litigate such claim or demand, or defend such suit, or appeal from such judgment, they shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered, or which might be rendered, against the Surety, together with interest, costs and attorneys fees.

**9. SURETY'S RIGHT TO COMPLETE WORK -** In the event of a Default, Surety shall have the right, but not the obligation, to take possession of the work under any and all Bonded Contracts, and complete or consent to the completion of such Bonded Contracts at the expense of the Indemnitors.

**10. ADVANCES -** The Surety is authorized and empowered, but not obligated, to guarantee loans, to advance or lend to the Principal any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Principal, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Principal to the Surety when due, shall be presumed to be a loss by the Surety for which the Principal and the Indemnitors shall be liable, notwithstanding that said money or any part thereof should not be so used by the Principal.

**11. ASSIGNMENTS -** Effective as of the date of this Agreement, but enforceable only in the event of a Default, Principal and Indemnitors do hereby assign, transfer and set over to Surety, all of their rights under all Bonded Contract(s) including (a.) their right, title and interest in all subcontracts, subcontract bonds, and purchase orders let in connection therewith, (b.) all machinery, plant, equipment, tools and materials located anywhere, whether for the purposes of the Bonded Contract(s) or not, (c.) all claims and causes of action against any parties, (d.) any and all sums due, or to become due under any contract, whether bonded or not, (e.) all rights in or arising out of any insurance policies of any type, (f.) all rights it has in patents, patented processes, licenses, designs, copyrights, trademarks and all other intellectual property rights, and expressly authorize Surety to use these property rights, at no cost to the Surety, and all proceeds arising therefrom and all records (in whatever form) related thereto.

**12. ATTORNEY IN FACT -** Principal and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Principal and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Principal and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Principal and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

**13. DISCHARGE OF SURETY** - Upon the request of Surety, Principals and Indemnitors will procure the discharge of Surety from any Bond, and all liability arising there from, and provide evidence to Surety regarding same.

**14. BOOKS & RECORDS** - Principal and Indemnitors shall provide to the Surety within 120 days of the end of their respective fiscal years, financial statements prepared in accordance with Generally Accepted Accounting Principles and reports prepared by reputable accounting firms, prepared in accordance with the AICPA's Statements on Standards for Accounting and Review Services (hereinafter SARS). If the Principal and/or Indemnitors have reports prepared by reputable accounting firms in accordance with AICPA's Statements on Auditing Standards, which reports are prepared in connection with the ordinary course of their financial reporting, then such reports shall be provided instead of reports prepared in accordance with SARS. Principal and Indemnitors shall also provide to Surety any management reports received from their accountants within 30 days of receipt. In addition to the foregoing, the Surety, including its designated agents, shall, at any and all times, have unrestricted access upon reasonable notice to review all books and records of  Principal and  Indemnitors, including all books and records pertaining to their  financial condition, and to the status of each unbonded and Bonded Contract.  Principal and Indemnitors hereby authorize those with whom such Bonded Contracts are made to furnish to Surety all information concerning such contracts and the work thereunder. Principal and Indemnitors understand and agree that the failure to provide the information required in this paragraph shall be a material breach of this Agreement and shall entitle the Surety to demand, in its sole discretion, cash collateral up to the penal sums of any and all outstanding Bonds.

**15. INDEMNITORS' WAIVER OF NOTICE** - Indemnitors warrant that each of them is specifically and beneficially interested in the obtaining of each Bond and agree to keep themselves fully informed as to the business activities and financial affairs of any one or more of the Indemnitors or any Principal for whom Bonds are executed by Surety. Indemnitors hereby expressly waive any notice from the Surety of any fact or information coming to the attention or knowledge of the Surety which affects its rights or the rights or liabilities of the Indemnitors, including notice of execution of any particular Bond subject to this Agreement and notice of default by the Principal or of the receipt of claims under any Bond.

**16. EFFECT OF INVALIDITY** - Any defect or invalidity in the execution of this Agreement by any Indemnitor or the failure of any Indemnitor whose name appears hereinbelow to execute this Agreement shall not in any manner affect the validity of these obligations or the liability hereunder of the other Indemnitors.  Invalidity of any provision of this Agreement by reason of the laws of any State or for any other reason shall not render the remaining provisions of this Agreement invalid, and this Agreement shall be construed and enforced with the same effect as though such provision or provisions were omitted.

**17. TERMINATION BY ANY INDEMNITOR** - Any Indemnitor wishing to terminate this Agreement must give Arch written notice by Registered Mail at least thirty (30) days prior to termination.  The termination will not affect Indemnitor's obligations hereunder with respect to any Bonds executed and issued prior to the termination of this Agreement by that Indemnitor and with respect to any Bonds or renewals executed after the effective date of termination with respect to which Surety had issued a bid bond, consent of surety or prior Bond or undertaking prior to the effective date of termination. The termination by any one Indemnitor shall not affect the liability of any other Indemnitor.

**18. CHANGE IN STATUS/TRANSFER OF ASSETS** - Each Indemnitor agrees not to change or convert its respective individual, corporate or partnership status to either an LLC or an LLP or any other similar structure which has the effect of limiting, reducing or shielding the liability of either the entity or its partners and/or officers hereunder, without the prior, express, written consent of Surety. Should any Indemnitor so change its respective corporate or partnership status without the prior, express, written consent of Surety, Indemnitor agrees that such change in its status shall not limit, reduce or otherwise shield its obligations, its partners' and/or officers' obligations, to Surety which arise from this Agreement.  Indemnitors hereby expressly waive as against Surety any and all defenses which may arise from such a conversion to a LLC, LLP or similar status.

**19. CHANGE IN CONTROL** - The Indemnitors shall not permit a Change of Control, as defined hereinbelow, to occur without the Surety's prior written consent. Change in Control means: (a) the transfer, merger or consolidation, in one transaction or a series of transactions, of all or substantially all of the assets of any one Indemnitor, which results in an unaffiliated Person owning, directly or indirectly fifty percent (50%) or more of the beneficial ownership or control of such Indemnitor; (b) the acquisition, in one transaction or a series of transactions, of fifty percent (50%) or more of the beneficial ownership or control of any Indemnitor; or (c) the acquisition by any Indemnitor, directly or indirectly, of fifty percent (50%) or more of the beneficial ownership or control of any joint venture, subsidiary,

division, affiliate, limited partnership, limited liability partnership, limited liability company or other entity through the issuance of fifty percent (50%) or more of the voting power of the total outstanding voting stock of any Indemnitor.

**20. NOTICE OF CHANGE IN RESIDENCE** - Each Indemnitor who is an individual agrees to give Surety written notice of any change in his/her principal residence within 30 days of the change of address. Each Indemnitor, which is not an individual, agrees not to change its principal place of business or the state of jurisdiction in which it is incorporated or otherwise organized without also giving Surety 30 days' written notice of the proposed change. If Surety has previously filed a Uniform Commercial Code Financing Statement with respect to such Indemnitor, Indemnitor agrees to file a Financing Statement in the new state or jurisdiction.

**21. EFFECT OF RELEASE OF ANY INDEMNITOR** - Indemnitors agree that, at any time, Surety may release any Indemnitor or Indemnitors from this Agreement, without affecting, reducing or otherwise limiting the obligations of any remaining Indemnitor, and Indemnitors hereby expressly waive both (a) notice from Surety of any such release, and (b) any defense that may be created in favor of any remaining Indemnitor as a result of Surety's release of another Indemnitor. Waiver of any one Default shall not be deemed a waiver of any other Default.

**22. FILING OF AGREEMENT UNDER THE UCC** - This Agreement shall constitute a Security Agreement to the Surety and also shall constitute a Financing Statement naming Surety as secured creditor and each Indemnitor as debtor, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of a copy of this Agreement shall be solely at the option of Surety and Surety's failure to do so shall not release or impair any obligation of Indemnitors, under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of Surety's rights under this Agreement or otherwise. The appearance of Arch's logo on the first page of this Agreement shall constitute its signature hereon. Indemnitors hereby irrevocably appoint and designate Surety or its authorized representative as their respective Attorneys-In-Fact to sign any Financing Statement form which may be required in order to file the same in any jurisdiction or office.

**23. APPLICABILITY OF AGREEMENT** - This Agreement shall apply to all Bonds executed by and/or procured by Surety for Principal, in its own name or as a joint venture with others. Indemnitors expressly waive any defense that may arise as a result of this Agreement having been executed subsequent to the date of the issuance of any Bond and Indemnitors admit and acknowledge that any such Bond was executed pursuant to Indemnitors' request and in reliance on the Indemnitors' representation and promise to execute this Agreement.

**24. PAYMENTS BY INDEMNITORS** - All payments made by Indemnitors to Surety under this Agreement shall be in United States Dollars and in no other currency and shall be sent, at Surety's discretion via check or wire transfer to any bank account subsequently designated by Surety. All sums payable to the Surety under this Agreement shall bear interest if not paid by Indemnitors within ten (10) days of demand by Surety. The interest rate shall be an annual rate of 10%, or the maximum rate permitted by applicable law if less than 10%. All Payments made shall be credited first to accrued and unpaid interest, if any, and then to the unpaid principal balance of the obligation.

**25. TRUST FUNDS** - Principal and Indemnitors agree and expressly declare that all funds due or to become due under any Bonded Contract are trust funds, whether in the possession of Principal or another and whether designated trust funds or not, for the benefit and payment of all persons to whom Principal incurs obligations in the performance of such contract, for which Surety may be liable under any Bond. If Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds.

**26. HOMESTEAD** - To the extent permitted by applicable law, the Principal and Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory or possession.

**27. SURETIES** - In the event the Surety procures the execution of any Bond by other sureties, or executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsurers, then all the terms and conditions of this Agreement shall inure to the benefit of such Sureties, co-sureties and reinsurers, their successors and assigns, as their interests may appear.

**28. SUITS** - The Surety may bring separate suits under this Agreement as causes of action accrue, and the bringing of suit or the recovery of judgment upon a cause of action shall not bar, prejudice or preclude the Surety's bringing other suits upon other causes of action, whether theretofore or thereafter arising. Surety may enforce this

Agreement against any Indemnitor without the necessity of first proceeding against any Principal or other Indemnitor.

**29. JURISDICTION** - As to any legal action related to this Agreement, Principal and Indemnitors consent to the general jurisdiction of any state or federal court of the United States or its territories having proper subject matter jurisdiction or in any court of the United States in which a claim may be brought against the Surety under any of the Bonds, at the sole discretion of the Surety. Principal and Indemnitors waive any claim or defense in any such action based on alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

**30. JURY WAIVER** - Principal and Indemnitors hereby expressly waive any right to a trial by jury with respect to any legal proceeding arising under this Agreement.

**31. CURRENCY EXCHANGE** - Should the Surety, when making a payment or incurring any expense directly or indirectly related to the Bond, expend funds in any currency other than U.S. Dollars, then Indemnitors shall either reimburse the Surety in U.S. Dollars equal to the amount expended by the surety at the time the foreign currency was purchased or shall defray the cost of any exchange variation, thereby indemnifying the Surety for any decrease in the valuation of the currency purchased.

**32. NOTICE OF SERVICE** - Notice of Service made by U. S. Mail or by FAX to the last known address constitutes service whether or not received.

**33. ADDRESS FOR NOTICES** - All notices required to be given by Indemnitors under this Agreement shall be sent by registered mail to Arch Insurance Company, 3 Parkway, Suite 1500, Philadelphia, PA 19102 USA and shall include a copy of this Agreement attached thereto.

**34. OTHER INDEMNITY** - The Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of the Bonds, from the Indemnitors or others, it being expressly understood and agreed by the Indemnitors that any and all other rights which the Surety may have or acquire against the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

**35. SUBORDINATION OF INDEMNITORS** - The Indemnitors shall have no rights of indemnity or contribution against the Principal or its property until the Principal's obligations to the Surety under this Agreement have been satisfied in full.

**36. REPRESENTATIONS** - Indemnitors represent and warrant to Surety that (i) they have carefully read and understand this entire Agreement; (ii) they have had the opportunity to review and discuss it with an attorney of their choosing; (iii) there are no other agreements, understandings or representations made by or on behalf of Surety which would diminish or modify the Indemnitors' obligations or Surety's rights set forth herein; (iv) that this Agreement shall be in addition to and shall not constitute a novation of or revoke or rescind any prior agreements of indemnity executed by an Indemnitor and that Surety's rights under such agreements are cumulative.

**37. GENERAL PROVISIONS** - (i) This Agreement sets forth unilateral undertakings of Indemnitors only upon which Surety may rely in considering whether to execute Bonds on behalf of any Principal. Indemnitors acknowledge that Surety is not required to execute this Agreement in order to enforce it; (ii) All references in this Agreement in the singular shall include the plural and vice versa, and all references to a gender shall include all genders.

**38. MODIFICATIONS** - This Agreement, and the rights and remedies of Surety hereunder may not be waived, challenged or modified orally. No written waiver, change or modification shall be effective unless signed by an officer or other authorized representative of Surety.

**IN WITNESS WHEREOF,** the Indemnitors have caused this Agreement to be executed by their respective duly authorized representatives this _March_ day of _11_ , 20 _14_.

**Witness/ Attest**

_____
(Name of Witness)

Principal/Indemnitor: CLS Constructors Inc.

By: _____
Print Name: Larry Sobolewski Jr.
Its: President
Tax I.D. No.: _____
Address: _____

(seal)

_____
(Name of Witness)

Principal/Indemnitor: Cecelia Sobolewski

By: _____
Print Name: Cecelia Sobolewski
Its: Secretary
Tax I.D. No.: _____
Address: _____

(seal)

_Arlene B. Vargas_

_____
(Name of Witness)

Principal/Indemnitor: USS Cal Builders, Inc.

By: _____
Print Name: Allen Othman
Its: President
Tax I.D. No.: _____
Address: _____

(seal)

_____
(Name of Witness)

Indemnitor: Larry Sobolewski Jr.

By: _____
Print Name: Larry Sobolewski Jr.
Its: Individual
SSN/Tax I.D. No.: _____
Address: _____

(seal)

_____
(Name of Witness)

Indemnitor: Cecelia Sobolewski

By: _____
Print Name: Cecelia Sobolewski.
Its: Individual
SSN/Tax I.D. No.: _____
Address: _____

(seal)

_(signature)_
_____
(Name of Witness)

Indemnitor: Allen Othman
_____
By: _____
Print Name: Allen Othman
Its: Individual
SSN/Tax I.D. No.:
Address:
_____
                                    (seal)

_(signature)_
_____
(Name of Witness)

Indemnitor: Eric Othman
_____
By: _____
Print Name: Eric Othman
Its: Individual
SSN/Tax I.D. No.:
Address:
_____
                                    (seal)

_(signature)_
_____
(Name of Witness)

Indemnitor: Shereen Othman
_____
By: _____
Print Name: Shereen Othman
Its: Individual
SSN/Tax I.D. No.:
Address:
_____
                                    (seal)

_(signature)_
_____
(Name of Witness)

Indemnitor: 2011 Allen Othman Trust
_____
By: _____
Print Name: Allen Othman
Its: Trustee
SSN/Tax I.D. No.:
Address:
_____
                                    (seal)

_(signature)_
_____
(Name of Witness)

Indemnitor: IMAD and Shereen Othman Family Trust
_____
By: _____
Print Name: Imad E. Othman
Its: Trustee
SSN/Tax I.D. No.:
Address:
_____
                                    (seal)

_(Name of Witness)_

**Indemnitor: IMAD and Shereen Othman Family Trust**

By: _____

Print Name: Shereen Othman _____

Its: Trustee _____

SSN/Tax I.D. No.: _____

Address: _____

_____

(seal)

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of _Riverside_

On _02/17/2014_ before me, _C. Montana Notary Public_,
(Here insert name and title of the officer)

personally appeared _Larry Lee Sobolewski Jr and Cecelia Marie Sobolewski_,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____   (Notary Seal)
Signature of Notary Public

> C. MONTANA
> COMM. #2043306
> Notary Public - California
> SAN BERNARDINO
> My Commission Expires Sept. 29, 2017

---

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_General Indemnity Agreement_
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date _____

_____
(Additional information)

### CAPACITY CLAIMED BY THE SIGNER
☐ Individual (s)
☐ Corporate Officer

_____
(Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other

### INSTRUCTIONS FOR COMPLETING THIS FORM

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
  ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of Orange

On March 13, 2014 before me, Veronica Alicia Lepe, Notary Public
  Date                                    Here Insert Name and Title of the Officer

personally appeared Allen Amer Othman, Imad Eric Othman
and Shereen Othman
  Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**VERONICA ALICIA LEPE**
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

Place Notary Seal Above

Signature: _____
                    Signature of Notary Public

--- **OPTIONAL** ---

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: General Indemnity Agreement

Document Date: March 11, 2014                  Number of Pages: 10

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of _Orange_

On _March 13 204_ before me, _Veronica Alicia Lepe, Notary Public_
     Date                Here Insert Name and Title of the Officer

personally appeared _Allen Amer Othman  Imad Eric Othman_
_and Shereen Othman_
                                    Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

VERONICA ALICIA LEPE
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

Place Notary Seal Above

Signature: _Veronica_
                          Signature of Notary Public

---

**OPTIONAL**

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _General Indemnity Agreement_

Document Date: _March 11, 204_       Number of Pages: _10_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Individual | ☐ Individual |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

RIGHT THUMBPRINT OF SIGNER — Top of thumb here
RIGHT THUMBPRINT OF SIGNER — Top of thumb here

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)         Item #5907

EXHIBIT G –

MAY 27, 2015, INCLUDING AMENDMENT OF
SAME DATE



**Arch** Insurance Company
a member of Arch Insurance Group

# GENERAL INDEMNITY AGREEMENT

THIS GENERAL INDEMNITY AGREEMENT (hereinafter called "Agreement") is made by the undersigned Indemnitors in favor of Arch Insurance Company, Arch Reinsurance Company, and any present or future subsidiary or affiliate of Arch Insurance Company, (hereinafter collectively called "Arch"), for the purpose of indemnifying Surety (as herein defined below) for any Bonds (as herein defined below), which Surety may have issued, or may hereafter issue, or on which Surety otherwise becomes surety.

## RECITALS

A.  Principal, as hereinafter defined, in the performance of contracts and the fulfillment of obligations generally, whether in their own names or with others, may desire or be required to give or procure Bonds, and to renew, continue or substitute from time to time the same or new Bonds, or the Indemnitors may have an interest in inducing the Surety to refrain from canceling said Bonds.

B. The Indemnitors understand that the Surety expressly requires the execution and delivery of this Agreement as part of the consideration for the execution by the Surety of such Bonds which may hereafter be furnished, or for the refraining of canceling such Bonds.

C. The Indemnitors have a substantial, material and beneficial interest in the Principal's obtaining of Bonds from the Surety or in the Surety's refraining from canceling such Bonds.

## AGREEMENTS

**IN CONSIDERATION** of the foregoing premises and the Surety's execution and delivery of one or more Bonds or its refraining from canceling the same, and intending to be legally bound hereby, the Indemnitors, for themselves and their respective heirs, executors, administrators, successors, and assigns, hereby agree, jointly and severally, to be obligated to the Surety, its successors and assigns, as follows.

**1. DEFINITIONS** - In addition to the capitalized terms defined elsewhere in this Agreement, the following terms when used in this Agreement, unless the context otherwise requires, shall have the meanings indicated in this paragraph, which meanings shall be equally applicable to both the singular and plural forms of such terms:

   a.  **Principal**: Any Indemnitor on behalf of which Surety may execute a Bond and/or any Person whose name is or has been furnished to Surety by any of the Indemnitors or on behalf of which Surety has issued any Bond at the request of any Indemnitor, including, but not limited to, any of the Indemnitors named or referred to as "Principal" in any bond, undertaking or recognizance. The term "Principal" also includes any present or future direct or indirect subsidiary, successor, affiliate or parent of any Indemnitor and any partnerships, LLCs, LLPs or other entities owned in whole or in part by any named Indemnitor.

   b.  **Indemnitors**: All Persons who sign this Agreement or whose representatives sign this Agreement or any other agreement that incorporates by reference the terms of this Agreement. The Indemnitors warrant and represent that they have a material and beneficial interest in Surety's issuance of Bonds on behalf of the Principal, and acknowledge that Surety would not issue such Bonds without each Indemnitor's agreement to reimburse Surety for all losses arising under the Bonds.

   c.  **Surety**: Arch and/or any other present or future subsidiary or affiliate of Arch, which may issue Bonds, as well as any and all sureties, co-sureties or reinsurers who issue, execute or reinsure any portion of the Bond or who procure bonds at the request of Arch. The terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsurers.

d.  **Person:** An individual, corporation, partnership, Limited Liability Company (hereinafter called LLC), Limited Liability Partnership (hereinafter called LLP), joint venture, trust, estate or other legal entity.

e.  **Bond:** Any and all bonds, including but not limited to surety bonds, undertakings, guaranties, and any renewals or extensions thereof issued by Surety, or issued by another at the request of Surety, on behalf of Principal, whether issued prior to or subsequent to the effective date of this Agreement. The term Bond also includes any electronic processes in lieu of the issuance of paper bonds, whether in the contract bidding process, or otherwise.

f.  **Bonded Contract:** A contract for which Surety issues or has issued a Bond.

g.  **Default:** An instance or condition in which Principal or Indemnitors, or any of them: (a.) fail to pay any Bond premium charge when due, (b.) forfeit, breach, abandon, default or be declared in default on any Bonded Contract or fail to pay when due any obligation to which any Bond may pertain, (c.) neglect or refuse to pay for any labor or materials used in the prosecution of a Bonded Contract, (d.) make or have made any representation as to any Indemnitor's financial condition or supply any information to Surety which is untrue, materially false or misleading, (e.) fail to honor any obligation under this Agreement, (f.) institute or have instituted against any or all of them a case under the Bankruptcy Code or similar statute, with respect to any Indemnitor as debtor, or any suit or proceeding alleging that any one of them is insolvent or requesting the appointment of a receiver or trustee for the benefit of creditors, (g.) have proceedings instituted against any of them that may have the effect of depriving any of them of the use of any part of the materials or equipment used in connection with the work under a Bonded Contract so as to hinder, delay or impede the normal and satisfactory progress of the work, (h.) make an assignment for the benefit of creditors that in any way impedes the rights of the Surety, (i.) in the case of Indemnitors which are not individuals, dissolve or cease to continue their legal existence, (j.) in the case of Indemnitors who are individuals, die, abscond, disappear, become incompetent, are convicted of a felony or are imprisoned, or (k.) violate any other written agreement with Surety or for the benefit of Surety, including without limitation, subordination agreements with Indemnitors (hereinafter referred to as Other Agreements).

h.  **Loss**: Any and all liability, losses, costs, expenses, and fees of whatever kind or nature, that Surety may sustain or incur as a result of executing or procuring any Bond or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement. Loss includes but is not limited to: (a.) sums posted by Surety as a reserve for the payment of potential losses and/or expenses, (b.) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses, (c.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for Principal or Indemnitors, (d.) funds advanced by Surety to a Principal, and (e.) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

**2. PREMIUMS** - The Principal and Indemnitors will pay to the Surety, promptly upon demand, all premiums, costs and charges of the Surety, in accordance with its rate filings, rates as it determines from its manual of rates, or rates as the Surety may otherwise determine, for any Bonds requested from and/or issued by the Surety. Where such premiums, costs and charges are annual, the Principal and Indemnitors agree to pay the same until the Principal and Indemnitors shall deliver evidence satisfactory to the Surety of the discharge or release of all liability under such Bonds.

**3. INDEMNITY** - The Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, pre- and post-judgment interest, court costs and counsel fees, and accounting, engineering and consulting fees, and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, whether such Bond or Bonds were issued prior to or after the date of this Agreement (2) By reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement or Other Agreements. In the event of any payment by the Surety the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such

payments made by the Surety shall be *prima facie* evidence of the fact and amount of the liability to the Surety. As used in this paragraph, "good faith" means honesty in fact and the absence of malice or fraud.

**4. POSTING OF COLLATERAL** - If the Surety determines, in its sole discretion and judgment, that potential liability exists for losses, fees, costs, or expenses, for which the Principal and Indemnitors will be obligated to indemnify the Surety under the terms of this Agreement or Other Agreements, the Principal and Indemnitors shall deposit with the Surety, promptly on demand, a sum of money equal to the amount the Surety determines or collateral security of a type and value satisfactory to the Surety, to cover that liability, whether or not the Surety has : (a) established a reserve; (b) made any payments; or (c) received any notice of claims under the Bonds. At the Surety's sole option, such collateral shall be in addition to and not in lieu of any other collateral that has been previously been provided to the Surety with any Bond or Bonds. The Surety shall have the right to use the collateral, or any portion thereof, in payment or settlement of any such liabilities for which the Principal and Indemnitors would be liable to the Surety under this Agreement or Other Agreements with respect to payments made by Surety. The Surety shall have no obligation to invest or provide a return on any collateral provided under this Agreement. Indemnitors acknowledge that the failure of Indemnitors to pay to Surety, immediately upon demand, the sum demanded by Surety hereunder, shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to temporary, preliminary and final injunctive relief for specific performance of their obligations hereunder, including the obligation to pay to Surety the sum demanded, and waive any defenses thereto. To the extent Surety accepts collateral other than money, Surety shall not be liable to any Indemnitor for any diminution in value, loss or destruction of such collateral and shall have no obligation to maintain or insure such collateral.

**5. SURETY'S CONSENT TO CHANGES** - Surety is authorized and empowered, without notice to or knowledge of the Principal and Indemnitors, to consent to changes in any Bond or to changes in the contract or obligation, which is the subject of any Bond, or may refuse to consent to any such change, including, without limitation, any change in the time for the completion of said contract and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of any Bonds and to executed any substitute or substitutes therefore, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Principal and Indemnitors shall remain bound by the terms of this Agreement, even though any such assent by the Surety does or might substantially increase the liability of the Indemnitors. Surety's actions in consenting or in not consenting to any such change shall not release or affect the obligations of Indemnitors to Surety under this Agreement. The Indemnitors further warrant and represent that they are currently informed and shall remain knowledgeable and apprised of Principal's business activities and financial condition. Surety has no obligation to inform Indemnitors of any change in the business affairs and financial condition of Principal.

**6. SURETY'S RIGHT TO DECLINE BONDS** - Surety has the right to decline to execute any Bond requested by the Principal or Indemnitors, including any such Bond requested after Surety has executed a preliminary bond including, but not limited to, a bid or proposal bond, or a Consent of Surety to the issuance of Bonds. This right applies to any Surety's declining to issue or execute any Bond for any reason whatsoever. If the Surety requests another surety to execute a Bond and such other surety declines to execute the Bond, the Surety shall have no liability to the Principal or Indemnitors for such declination. Surety's declining to execute any Bond shall not release or affect the obligations of Indemnitors to Surety under this Agreement. Principal and Indemnitors acknowledge that the Surety makes no representations as to the acceptability of any of its Bonds to any person, firm or entity under any contract, and that Principal and Indemnitors shall have no claim against the Surety relating to the failure or refusal of any entity to accept any Bond issued by the Surety. The Indemnitors acknowledge and agree that it is their sole responsibility to provide the proper forms on a timely basis for the bonds to be executed by the Surety, and to review and approve any bond and undertaking executed by the Surety on its own forms. Neither the Surety, nor its agents, shall have any liability whatsoever to the Indemnitors if they shall fail to furnish the Surety with the proper forms or to object to forms furnished by the Surety.

**7. BOND FORMS** - It shall be the sole responsibility of the Indemnitors to review all bond forms executed by the Surety for appropriateness and for any errors or omissions prior to delivery of the bonds to an obligee. The Surety and its agents shall have no liability to the Indemnitors on account of any negligence (whether sole or concurrent), inadvertence, error or omission in the preparation, execution, or delivery of any bonds. Prior to requesting that the Surety issue any bond, the Indemnitors shall obtain confirmation that the proposed obligee on the bond will accept the Surety as surety on the proposed bond, and neither the Surety, nor its agents, shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the Surety as surety on any bond. The Indemnitors agree that the Indemnitors shall be solely responsible for arranging, independent of the Surety, for the timely delivery of any bond to the obligee. The Surety and its agents shall have no liability to the Indemnitors if any bond is not timely delivered to any obligee for any reason whatsoever, including any negligent acts or omissions on the part of the surety or its agents.

**8. SURETY'S RIGHT TO SETTLE CLAIMS** - Surety shall have the sole and exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and Surety's decision thereon shall be final and binding upon the Indemnitors. Subject to the Surety's rights set forth in the first sentence of this section, which shall remain in full force and effect, if Principal or Indemnitors desire that the Surety litigate such claim or demand, or defend such suit, or appeal from such judgment, they shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered, or which might be rendered, against the Surety, together with interest, costs and attorneys fees.

**9. SURETY'S RIGHT TO COMPLETE WORK** - In the event of a Default, Surety shall have the right, but not the obligation, to take possession of the work under any and all Bonded Contracts, and complete or consent to the completion of such Bonded Contracts at the expense of the Indemnitors.

**10. ADVANCES** - The Surety is authorized and empowered, but not obligated, to guarantee loans, to advance or lend to the Principal any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Principal, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Principal to the Surety when due, shall be presumed to be a loss by the Surety for which the Principal and the Indemnitors shall be liable, notwithstanding that said money or any part thereof should not be so used by the Principal.

**11. ASSIGNMENTS** - Effective as of the date of this Agreement, but enforceable only in the event of a Default, Principal and Indemnitors do hereby assign, transfer and set over to Surety, all of their rights under all Bonded Contract(s) including (a.) their right, title and interest in all subcontracts, subcontract bonds, and purchase orders let in connection therewith, (b.) all machinery, plant, equipment, tools and materials located anywhere, whether for the purposes of the Bonded Contract(s) or not, (c.) all claims and causes of action against any parties, (d.) any and all sums due, or to become due under any contract, whether bonded or not, (e.) all rights in or arising out of any insurance policies of any type, (f.) all rights it has in patents, patented processes, licenses, designs, copyrights, trademarks and all other intellectual property rights, and expressly authorize Surety to use these property rights, at no cost to the Surety, and all proceeds arising therefrom and all records (in whatever form) related thereto.

**12. ATTORNEY IN FACT** - Principal and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Principal and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Principal and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Principal and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

**13. DISCHARGE OF SURETY** - Upon the request of Surety, Principals and Indemnitors will procure the discharge of Surety from any Bond, and all liability arising there from, and provide evidence to Surety regarding same.

**14. BOOKS & RECORDS** - Principal and Indemnitors shall provide to the Surety within 120 days of the end of their respective fiscal years, financial statements prepared in accordance with Generally Accepted Accounting Principles and reports prepared by reputable accounting firms, prepared in accordance with the AICPA's Statements on Standards for Accounting and Review Services (hereinafter SARS). If the Principal and/or Indemnitors have reports prepared by reputable accounting firms in accordance with AICPA's Statements on Auditing Standards, which reports are prepared in connection with the ordinary course of their financial reporting, then such reports shall be provided instead of reports prepared in accordance with SARS. Principal and Indemnitors shall also provide to Surety any management reports received from their accountants within 30 days of receipt. In addition to the foregoing, the Surety, including its designated agents, shall, at any and all times, have unrestricted access upon reasonable notice to review all books and records of Principal and Indemnitors, including all books and records pertaining to their financial condition, and to the status of each unbonded and Bonded Contract. Principal and Indemnitors hereby authorize those with whom such Bonded Contracts are made to furnish to Surety all information concerning such contracts and the work thereunder. Principal and Indemnitors understand and agree that the failure to provide the information required in this paragraph shall be a material breach of this Agreement and shall entitle the Surety to demand, in its sole discretion, cash collateral up to the penal sums of any and all outstanding Bonds.

**15. INDEMNITORS' WAIVER OF NOTICE** - Indemnitors warrant that each of them is specifically and beneficially interested in the obtaining of each Bond and agree to keep themselves fully informed as to the business activities and financial affairs of any one or more of the Indemnitors or any Principal for whom Bonds are executed by Surety. Indemnitors hereby expressly waive any notice from the Surety of any fact or information coming to the attention or knowledge of the Surety which affects its rights or the rights or liabilities of the Indemnitors, including notice of execution of any particular Bond subject to this Agreement and notice of default by the Principal or of the receipt of claims under any Bond.

**16. EFFECT OF INVALIDITY** - Any defect or invalidity in the execution of this Agreement by any Indemnitor or the failure of any Indemnitor whose name appears hereinbelow to execute this Agreement shall not in any manner affect the validity of these obligations or the liability hereunder of the other Indemnitors. Invalidity of any provision of this Agreement by reason of the laws of any State or for any other reason shall not render the remaining provisions of this Agreement invalid, and this Agreement shall be construed and enforced with the same effect as though such provision or provisions were omitted.

**17. TERMINATION BY ANY INDEMNITOR** - Any Indemnitor wishing to terminate this Agreement must give Arch written notice by Registered Mail at least thirty (30) days prior to termination. The termination will not affect Indemnitor's obligations hereunder with respect to any Bonds executed and issued prior to the termination of this Agreement by that Indemnitor and with respect to any Bonds or renewals executed after the effective date of termination with respect to which Surety had issued a bid bond, consent of surety or prior Bond or undertaking prior to the effective date of termination. The termination by any one Indemnitor shall not affect the liability of any other Indemnitor.

**18. CHANGE IN STATUS/TRANSFER OF ASSETS** - Each Indemnitor agrees not to change or convert its respective individual, corporate or partnership status to either an LLC or an LLP or any other similar structure which has the effect of limiting, reducing or shielding the liability of either the entity or its partners and/or officers hereunder, without the prior, express, written consent of Surety. Should any Indemnitor so change its respective corporate or partnership status without the prior, express, written consent of Surety, Indemnitor agrees that such change in its status shall not limit, reduce or otherwise shield its obligations, its partners' and/or officers' obligations, to Surety which arise from this Agreement. Indemnitors hereby expressly waive as against Surety any and all defenses which may arise from such a conversion to a LLC, LLP or similar status.

**19. CHANGE IN CONTROL** - The Indemnitors shall not permit a Change of Control, as defined hereinbelow, to occur without the Surety's prior written consent. Change in Control means: (a) the transfer, merger or consolidation, in one transaction or a series of transactions, of all or substantially all of the assets of any one Indemnitor, which results in an unaffiliated Person owning, directly or indirectly fifty percent (50%) or more of the beneficial ownership or control of such Indemnitor; (b) the acquisition, in one transaction or a series of transactions, of fifty percent (50%) or more of the beneficial ownership or control of any Indemnitor; or (c) the acquisition by any Indemnitor, directly or indirectly, of fifty percent (50%) or more of the beneficial ownership or control of any joint venture, subsidiary,

division, affiliate, limited partnership, limited liability partnership, limited liability company or other entity through the issuance of fifty percent (50%) or more of the voting power of the total outstanding voting stock of any Indemnitor.

**20. NOTICE OF CHANGE IN RESIDENCE** - Each Indemnitor who is an individual agrees to give Surety written notice of any change in his/her principal residence within 30 days of the change of address.  Each Indemnitor, which is not an individual, agrees not to change its principal place of business or the state of jurisdiction in which it is incorporated or otherwise organized without also giving Surety 30 days' written notice of the proposed change. If Surety has previously filed a Uniform Commercial Code Financing Statement with respect to such Indemnitor, Indemnitor agrees to file a Financing Statement in the new state or jurisdiction.

**21. EFFECT OF RELEASE OF ANY INDEMNITOR** - Indemnitors agree that, at any time, Surety may release any Indemnitor or Indemnitors from this Agreement, without affecting, reducing or otherwise limiting the obligations of any remaining Indemnitor, and Indemnitors hereby expressly waive both (a) notice from Surety of any such release, and (b) any defense that may be created in favor of any remaining Indemnitor as a result of Surety's release of another Indemnitor. Waiver of any one Default shall not be deemed a waiver of any other Default.

**22. FILING OF AGREEMENT UNDER THE UCC** - This Agreement shall constitute a Security Agreement to the Surety and also shall constitute a Financing Statement naming Surety as secured creditor and each Indemnitor as debtor, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of a copy of this Agreement shall be solely at the option of Surety and Surety's failure to do so shall not release or impair any obligation of Indemnitors, under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of Surety's rights under this Agreement or otherwise. The appearance of Arch's logo on the first page of this Agreement shall constitute its signature hereon. Indemnitors hereby irrevocably appoint and designate Surety or its authorized representative as their respective Attorneys-In-Fact to sign any Financing Statement form which may be required in order to file the same in any jurisdiction or office.

**23. APPLICABILITY OF AGREEMENT** - This Agreement shall apply to all Bonds executed by and/or procured by Surety for Principal, in its own name or as a joint venture with others.  Indemnitors expressly waive any defense that may arise as a result of this Agreement having been executed subsequent to the date of the issuance of any Bond and Indemnitors admit and acknowledge that any such Bond was executed pursuant to Indemnitors' request and in reliance on the Indemnitors' representation and promise to execute this Agreement.

**24. PAYMENTS BY INDEMNITORS** - All payments made by Indemnitors to Surety under this Agreement shall be in United States Dollars and in no other currency and shall be sent, at Surety's discretion via check or wire transfer to any bank account subsequently designated by Surety. All sums payable to the Surety under this Agreement shall bear interest if not paid by Indemnitors within ten (10) days of demand by Surety. The interest rate shall be an annual rate of 10%, or the maximum rate permitted by applicable law if less than 10%. All Payments made shall be credited first to accrued and unpaid interest, if any, and then to the unpaid principal balance of the obligation.

**25. TRUST FUNDS** - Principal and Indemnitors agree and expressly declare that all funds due or to become due under any Bonded Contract are trust funds, whether in the possession of Principal or another and whether designated trust funds or not, for the benefit and payment of all persons to whom Principal incurs obligations in the performance of such contract, for which Surety may be liable under any Bond. If Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds.

**26. HOMESTEAD** - To the extent permitted by applicable law, the Principal and Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory or possession.

**27. SURETIES** - In the event the Surety procures the execution of any Bond by other sureties, or executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsurers, then all the terms and conditions of this Agreement shall inure to the benefit of such Sureties, co-sureties and reinsurers, their successors and assigns, as their interests may appear.

**28. SUITS** - The Surety may bring separate suits under this Agreement as causes of action accrue, and the bringing of suit or the recovery of judgment upon a cause of action shall not bar, prejudice or preclude the Surety's bringing other suits upon other causes of action, whether theretofore or thereafter arising.  Surety may enforce this

Agreement against any Indemnitor without the necessity of first proceeding against any Principal or other Indemnitor.

**29. JURISDICTION** - As to any legal action related to this Agreement, Principal and Indemnitors consent to the general jurisdiction of any state or federal court of the United States or its territories having proper subject matter jurisdiction or in any court of the United States in which a claim may be brought against the Surety under any of the Bonds, at the sole discretion of the Surety.  Principal and Indemnitors waive any claim or defense in any such action based on alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

**30. JURY WAIVER** - Principal and Indemnitors hereby expressly waive any right to a trial by jury with respect to any legal proceeding arising under this Agreement.

**31. CURRENCY EXCHANGE** - Should the Surety, when making a payment or incurring any expense directly or indirectly related to the Bond, expend funds in any currency other than U.S. Dollars, then Indemnitors shall either reimburse the Surety in U.S. Dollars equal to the amount expended by the surety at the time the foreign currency was purchased or shall defray the cost of any exchange variation, thereby indemnifying the Surety for any decrease in the valuation of the currency purchased.

**32. NOTICE OF SERVICE** - Notice of Service made by U. S. Mail or by FAX to the last known address constitutes service whether or not received.

**33. ADDRESS FOR NOTICES** - All notices required to be given by Indemnitors under this Agreement shall be sent by registered mail to Arch Insurance Company, 3 Parkway, Suite 1500, Philadelphia, PA 19102 USA and shall include a copy of this Agreement attached thereto.

**34. OTHER INDEMNITY** – This Agreement incorporates, as if set forth at length herein, any duly executed amendments relating to any one or more Indemnitors, Principals and/or entities acquired, whether such amendments are executed contemporaneously with the signing of this Agreement or from time to time in the future. The Indemnitors and/or Principals shall continue to remain bound under the terms of this Agreement, and any other agreements containing indemnity obligations in connection with the execution or procurement of the Bonds, even though the Surety may  from time to time heretofore or hereafter, with or without notice to or knowledge of the Indemnitors and/or Principals, accept  release or reduce any indemnity obligations or collateral of current or future Indemnitors and/or Principals for any reason. The Indemnitors and/or Principals expressly waive notice from the Surety of any such action and, furthermore, it is explicitly understood and agreed by the Indemnitors and/or Principals that any and all other rights which the Surety may have or acquire against the Indemnitors and/or Principals and/or others under any such other or additional agreements or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.  No Indemnitor shall make any defense to the enforcement of this Agreement based on the execution of other agreements or related to the addition or release of any Indemnitor, and each Indemnitor explicitly confirms its joint and several liability for Bonds issued by the Surety as provided in this Agreement.   The Indemnitors and/or Principals also waive and subordinate all rights of indemnity, subrogation and contribution against each other until all obligations to the Surety under this Agreement, at law or in equity, have been satisfied in full.

**35. SUBORDINATION OF INDEMNITORS** - The Indemnitors shall have no rights of indemnity or contribution against the Principal or its property until the Principal's obligations to the Surety under this Agreement have been satisfied in full.

**36.  REPRESENTATIONS** - Indemnitors represent and warrant to Surety that (i) they have carefully read and understand this entire Agreement; (ii) they have had the opportunity to review and discuss it with an attorney of their choosing; (iii) there are no other agreements, understandings or representations made by or on behalf of Surety which would diminish or modify the Indemnitors' obligations or Surety's rights set forth herein; (iv) that this Agreement shall be in addition to and shall not constitute a novation of or revoke or rescind any prior agreements of indemnity executed by an Indemnitor and that Surety's rights under such agreements are cumulative.

**37.  GENERAL PROVISIONS** - (i) This Agreement sets forth unilateral undertakings of Indemnitors only upon which Surety may rely in considering whether to execute Bonds on behalf of any Principal.   Indemnitors acknowledge that Surety is not required to execute this Agreement in order to enforce it; (ii) All references in this Agreement in the singular shall include the plural and vice versa, and all references to a gender shall include all genders.

**38. MODIFICATIONS** - This Agreement, and the rights and remedies of Surety hereunder may not be waived, challenged or modified orally. No change or modification shall be effective unless made by written amendment executed to form a part hereof.

39. **LIMITED INDEMNITY OF ALLEN OTHMAN, 2011 ALLEN OTHMAN TRUST, ERIC OTHMAN, AND IMAD AND SHEREEN FAMILY TRUST** - It is understood and agreed that the following Indemnitors are executing this Agreement as limited Indemnitors hereunder and as such his/its liability hereunder shall not exceed the following:

a.       Allen Othman and 2011 Allen Othman Trust, collectively:  Two million dollars ($2,000,000.00).

b.       Eric Othman, and IMAD and Shereen Othman Family Trust, collectively:  Two million dollars ($2,000,000.00).

Allen Othman, 2011 Allen Othman Trust, Eric Othman, and IMAD and Shereen Othman Family Trust are fully liable hereunder up to the amounts specified above, whether or not the Surety seeks to enforce any or all of its rights against any other Indemnitors to this Agreement.

**IN WITNESS WHEREOF,** the Indemnitors have caused this Agreement to be executed by their respective duly authorized representatives this ___27th___ day of ___May___ , 20_15_.

**Witness/ Attest**

_Arlene B. Vargas_
(Name of Witness)

Principal/Indemnitor: USS Cal Builders, Inc.

By: _____
Print Name: Allen Othman
Its: President
SSN/Tax I.D. No.:
Address:

(seal)

_Arlene B. Vargas_
(Name of Witness)

Principal/Indemnitor: Oaklan, LLC

By: _____
Print Name: Allen Othman
Its: President
SSN/Tax I.D. No.:
Address:

(seal)

_Arlene B. Vargas_
(Name of Witness)

Indemnitor: Allen Othman

By: _____
Print Name: Allen Othman
Its: Individual Indemnitor
SSN/Tax I.D. No.:
Address:

(seal)

_Arlene B. Vargas_
(Name of Witness)

Indemnitor: Eric Othman

By: _____
Print Name: Eric Othman
Its: Individual Indemnitor

SSN/Tax I.D. No.: _____
Address: _____
_____
(seal)

_Arlene B. Vargas_
(Name of Witness)

Indemnitor: Shereen Othman
By: _____
Print Name: Shereen Othman
Its: Individual
SSN/Tax I.D. No.: _____
Address: _____
(seal)

_Arlene B. Vargas_
(Name of Witness)

Indemnitor: 2011 Allen Othman Trust
By: _____
Print Name: Allen Othman
Its: Trustee
SSN/Tax I.D. No.: _____
Address: _____
(seal)

_Arlene B. Vargas_
(Name of Witness)

Indemnitor: IMAD and Shereen Othman Family Trust
By: _____
Print Name: Imad E. Othman
Its: Trustee
SSN/Tax I.D. No.: _____
Address: _____
(seal)

_Arlene B. Vargas_
(Name of Witness)

Indemnitor: IMAD and Shereen Othman Family Trust
By: _____
Print Name: Shereen Othman
Its: Trustee
SSN/Tax I.D. No.: _____
Address: _____
(seal)

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. | **CALIFORNIA ALL-PURPOSE CERTIFICATE OF ACKNOWLEDGMENT** |

State of California            )

County of _Orange_            )

On _May 27th, 2015_ before me, _Mona Sultan_ ,
(here insert name and title of the officer)

personally appeared _Allen Othman and Imad Eric Othman_ ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**MONA SULTAN**
COMMISSION # 2102140
Notary Public - California
ORANGE COUNTY
My Comm. Expires Mar 5 2019

Signature _____                    (Seal)

---

**OPTIONAL INFORMATION**

*Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.*

## Description of Attached Document

The preceding Certificate of Acknowledgment is attached to a document

titled/for the purpose of _____

_____

containing _____ pages, and dated _____ .

The signer(s) capacity or authority is/are as:

☐ Individual(s)
☐ Attorney-in-Fact
☐ Corporate Officer(s)
                        _____
                        Title(s)

☐ Guardian/Conservator
☐ Partner - Limited/General
☐ Trustee(s)
☐ Other: _____

representing: _____
                Name(s) of Person(s) or Entity(ies) Signer is Representing

**Additional Information**

**Method of Signer Identification**

Proved to me on the basis of satisfactory evidence:

└ ☐ form(s) of identification   ☐ credible witness(es)

Notarial event is detailed in notary journal on:

Page # _____    Entry # _____

Notary contact: _____

**Other**

☐ Additional Signer(s)    ☐ Signer(s) Thumbprint(s)
☐

© Copyright 2007-2014 Notary Rotary, Inc. PO Box 41400, Des Moines, IA 50311-0507.  All Rights Reserved.  Item Number 101772.  Please contact your Authorized Reseller to purchase copies of this form.



a member of Arch Insurance Group

## AMENDMENT #01 TO GENERAL INDEMNITY AGREEMENT

This Amendment No. #01 (hereinafter, this "Amendment") shall be attached to and form part of the General Indemnity Agreement made and entered into by USS Cal Builders, Inc., Oaklan, LLC, Allen Othman, Eric Othman, Shereen Othman, 2011 Allen Othman Trust, IMAD and Shereen Othman Family Trust (collectively "Indemnitors"), in favor of the **Surety**, dated 27th day of May, 2015 and as may be amended from time to time, (hereinafter, the "Indemnity Agreement"). It is hereby agreed that:

1. All boldface terms used but not defined in this Amendment shall have the meaning given to them in the Indemnity Agreement.

2. This Amendment shall take effect and form part of the Indemnity Agreement immediately upon its execution. Except as specifically amended herein, all other terms and conditions of the Indemnity Agreement are unchanged and shall remain in full force and effect. As such, and without limitation, the provisions of this Amendment apply to all **Bonds**, as the term is defined the Indemnity Agreement, whenever executed, and to all **Loss**, as the term is defined in the Indemnity Agreement, whenever incurred.

3. It is understood and agreed that the liability of the following Indemnitors under Paragraphs 3 and 4 of the Agreement shall not exceed the following:

4. a. As to the **Group A Bonds**:

      i. Allen Othman and 2011 Allen Othman Trust, jointly, severally and collectively: The sum of two million dollars ($2,000,000.00) and one-half of the **Collateral Pledge Deficiency**.

ii. Eric Othman, Shereen Othman, and IMAD and Shereen Othman Family Trust, jointly, severally and collectively: The sum of two million dollars ($2,000,000.00) and one-half of the **Collateral Pledge Deficiency**.

iii. For purposes of the computation of the amounts specified in subparagraphs a and b, the **Collateral Pledge Proceeds** shall not be credited as a payment or payments from Allen Othman, Eric Othman, Shereen Othman, 2011 Allen Othman Trust, or IMAD and Shereen Othman Family Trust

b.  As to the **Group B Bonds**:

i. Allen Othman and 2011 Allen Othman Trust, jointly, severally and collectively: Six million dollars ($6,000,000.00).

ii. Eric Othman, Shereen Othman, and IMAD and Shereen Othman Family Trust, jointly, severally and collectively: Six million dollars ($6,000,000.00).

c. Allen Othman, Eric Othman, Shereen Othman, 2011 Allen Othman Trust, and IMAD and Shereen Othman Family Trust are fully liable hereunder and under the Indemnity Agreement up to the amounts specified above, whether or not the **Surety** seeks to enforce any or all of its rights against and other Indemnitors to this Amendment or the Indemnity Agreement.

5.  The Indemnitors hereby agree that commencing December 20, 2018, and on the 20th day of each month thereafter, they shall provide the **Surety** with the following documents for USS Cal Builders, Inc. or any corporate successor thereto in a form acceptable to the **Surety:**

a, An updated Cash Flow Analysis looking ahead three months; and
b, Financial statements consisting of a balance sheet, an income statement, and a work in process report, each as of the last day of the second preceding month

Indemnitors agree that failure to timely provide the foregoing shall constitute a **Default**.

6.  For the purposes of this Amendment, the following terms shall have the following meanings:

a.  **Group A Bonds** shall mean those **Bonds** issued before November 19, 2018.
b.  **Group B Bonds** shall mean those **Bonds** issued on or after November 19, 2018.
c.  The **Collateral Pledge Agreement** shall mean the agreement between Arch Insurance Company and certain indemnitors under certain general indemnity agreements, including but not necessarily limited to the Indemnitors, executed on or about August 14, 2018.
d.  The **Collateral Pledge Amount** shall mean amounts tendered by Arch pursuant to the **Collateral Pledge Agreement**.
e.  The **Collateral Pledge Proceeds** shall mean the funds received by Arch Insurance Company in the form of: a) monetary payments made to Arch Insurance Company pursuant to the **Collateral Pledge Agreement** and b) funds received by Arch Insurance Company from the disposition of collateral pledged to Arch pursuant to the **Collateral Pledge Agreement**, subtracting therefrom costs, taxes, and fees incurred to effect such disposition.
f.  The **Collateral Pledge Deficiency** shall have one of the following meanings, as applicable:
    i.  If the **Collateral Pledge Amount** exceeds the **Collateral Pledge Proceeds**, the "**Collateral Pledge Deficiency**" shall mean the difference between the **Collateral Pledge Amount** and the **Collateral Pledge Proceeds**, or

       ii.      If the **Collateral Pledge Proceeds** are equal to or exceed the **Collateral Pledge Amount**, the "**Collateral Pledge Deficiency**" shall mean zero.

7.  The Indemnitors hereby agree that nothing herein shall waive, limit, modify or affect the Surety's Right to Decline Bonds, and that Paragraph 6 of the Indemnity Agreement shall remain in full force and effect.

8.  The Indemnitors hereby agree that nothing herein shall waive, limit, modify, or affect any Indemnitor's obligation under any other Indemnity Agreements any of them executed in favor of the **Surety**.

9.  Paragraph 39 of the Indemnity Agreement is no longer in effect, having been replaced by the terms of this Amendment.

10.  The Indemnitors hereby agree that in the event any portion of this Amendment is declared by a court of competent jurisdiction to be invalid, illegal, unconstitutional, or unenforceable, such portion shall be deemed severed from this Amendment and Indemnity Agreement and the remaining parts shall remain in full force and effect as if no invalid or unenforceable provisions had been part of this Amendment.

IN WITNESS WHEREOF, I/we have signed and sealed this _26_ day of _November_ , 20_18_.

By affixing his/her/their signatures hereto, each individual signing on behalf of a business entity warrants that each is duly authorized by the Indemnitor to bind such Indemnitor hereto.

**Witness / Attest**

*Arlene Vargas*
(Name of Witness)

Principal/Indemnitor: USS Cal Builders, Inc.

By: _____   Print
Name: Allen Othman   Its: President
SSN/Tax I.D. No.:
Address:   _____
_____ (seal)

*Arlene Vargas*
(Name of Witness)

Principal/Indemnitor: Oaklan, LLC

By: _____   Print
Name: Allen Othman
Its: President   _____
SSN/Tax I.D. No.:   _____
Address:   _____
_____ (seal)

*Arlene Vargas*
(Name of Witness)

Indemnitor: Allen Othman

By: _____
Print   Name:   Allen   Othman
Its:   Individual   Indemnitor
SSN/Tax I.D. No.:
Address:
_____ (seal)

*Arlene Vargas*
(Name of Witness)

Indemnitor:   Eric   Othman
By: _____
Print   Name:   Eric   Othman
Its:   Individual   Indemnitor
SSN/Tax I.D. No.:
Address:   _____
_____ (seal)

*Arlene Vargas*
(Name of Witness)

Indemnitor: Shereen Othman _____

By: _____
Print Name: Shereen Othman

Its: Individual _____

SSN/Tax I.D. No.: _____   _____

Address: _____   _____

_____   _____

(seal)

---

*(Name of Witness)*

Indemnitor: _2011 _ Allen _ Othman

Trust __

By: _____

Print _ Name: Allen _ Othman _ _

Its: _____ Trustee _____

SSN/Tax I.D. No.: _____   _____

Address: _____   _____

_____   _____

(seal)

---

*(Name of Witness)*

Indemnitor: IMAD and Shereen Othman Family

Trust

By: _____

Print _ Name: Imad _ E. _ Othman _

Its: _____ Trustee _____

SSN/Tax I.D. No.: _____   _____

Address: _____   _____

_____   _____

(seal)

---

*(Name of Witness)*

Indemnitor: IMAD and Shereen Othman Family

Trust

By: _____

Print _ Name: Shereen _ Othman _

Its: _____ Trustee _____

SSN/Tax I.D. No.: _____   _____

Address: _____   _____

_____   _____

(seal)

# ACKNOWLEDGMENT

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not the truthfulness, accuracy, or
> validity of that document.

State of California
County of ORANGE )

On 11 - 26 - 2018 before me, Marlene Assali, Notary Public
(insert name and title of the officer)

personally appeared AHEN OTHMAN + ERIC OTHMAN + SHEREEN OTHMAN
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature Marlene Assali **(Seal)**

MARLENE ASSALI
COMM. #2149159
Notary Public - California
Orange County
My Comm. Expires May 13, 2020
NRO1 NRO1


**Arch** Insurance Company
a member of Arch Insurance Group

## AMENDMENT #1 TO GENERAL INDEMNITY AGREEMENT
### (Homestead Exclusion)

This Amendment No. #1 (hereinafter, this "Amendment") shall be attached to and form part of the General Indemnity Agreement made and entered into by USS Cal Builders, Inc. in favor of the Surety, dated *27th* day of *May*, 20 *15* and as may be amended from time to time, (hereinafter, the "Indemnity Agreement"). It is hereby agreed that:

1. All capitalized terms used but not defined in this Amendment shall have the meaning given to them in the Indemnity Agreement.

2. This Amendment shall take effect and form part of the Indemnity Agreement immediately upon its execution, and except as amended herein, all other terms and conditions of the Indemnity Agreement are unchanged and shall remain in full force and effect.

3. The Indemnitors and Principals hereby agree that notwithstanding Paragraph 26 – HOMESTEAD - of the Indemnity Agreement, it is hereby understood and agreed that Surety shall exclude from any claim or demand for indemnification under the Indemnity Agreement, the bank accounts and real property as described below:

Banks Account(s):   [NOTE: List as many bank accounts as necessary for the applicable client account]

Indemnitors (Owner(s) of Account): None
Description of Property (Account #): None
Valuation of Property: None
Date of Valuation: None

Indemnitors (Owner(s) of Account): None
Description of Property (Account #): None
Valuation of Property: None
Date of Valuation: None

The total value of each account described herein that is excluded from the Indemnity Agreement is limited to the dollar amount indicated on the line identified as "valuation of property" as well as any interest and appreciation in the value of the property as a result of market gains. Any increases to the account other than interest or appreciation in the value of property as a result of market gains shall remain subject to all of the provisions of the Indemnity Agreement. In the event that any such account described herein is sold, assigned, conveyed, divested, or in any other way transferred, no exclusion shall accrue to the proceeds from any such sale, assignment, conveyance, divestiture or transfer, and such proceeds shall be subject to all of the provisions of the Indemnity Agreement.

Real Property:   [NOTE: List as many properties as necessary for the applicable client account]

Indemnitors: (Owner(s) of Property): Allen Othman
Address of Property: _

Limitation: None

Indemnitors: (Owner(s) of Property): <u>Eric Othman</u>
Address of Property: _____

Limitation: <u>None</u>

In the event that any such property described herein is sold, assigned, conveyed, divested, or in any other way transferred, no exclusion shall accrue to the proceeds from any such sale, assignment, conveyance, divestiture or transfer, and such proceeds shall be subject to all of the provisions of the Indemnity Agreement.

IN WITNESS WHEREOF, I/we have signed and sealed this _27th_ day of _May_ 20 _15_.

By affixing his/her/their signatures hereto, each individual signing on behalf of a business entity warrants that each is duly authorized by the Indemnitor to bind such Indemnitor hereto.

**Witness/ Attest**

_Arleene B. Vargas_
(Name of Witness)

Indemnitor: Allen Othman
By: _____
Print Name: Allen Othman
Its: Individual Indemnitor
SSN/Tax I.D. No.:
Address:

                           (seal)

_Arleene B. Vargas_
(Name of Witness)

Indemnitor: Eric Othman
By: _____
Print Name: Eric Othman
Its: Individual Indemnitor
SSN/Tax I.D. No.:
Address:

                           (seal)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

# CALIFORNIA ALL-PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

State of California        )

County of _Orange_        )

On _May 27th, 2015_ before me, _Mona Sultan_,
(here insert name and title of the officer)

personally appeared _Allen Othman and Imad Eric Othman_
_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**MONA SULTAN**
COMMISSION # 2102140
Notary Public - California
ORANGE COUNTY
My Comm. Expires Mar 5, 2019

Signature _____

(Seal)

## OPTIONAL INFORMATION

*Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.*

### Description of Attached Document

The preceding Certificate of Acknowledgment is attached to a document

titled/for the purpose of _____

_____,

containing _____ pages, and dated _____.

The signer(s) capacity or authority is/are as:

☐ Individual(s)
☐ Attorney-in-Fact
☐ Corporate Officer(s) _____
Title(s)

☐ Guardian/Conservator
☐ Partner - Limited/General
☐ Trustee(s)
☐ Other: _____

representing: _____
Name(s) of Person(s) or Entity(ies) Signer is Representing

### Additional Information

**Method of Signer Identification**
Proved to me on the basis of satisfactory evidence:
☐ form(s) of identification   ☐ credible witness(es)

Notarial event is detailed in notary journal on:
Page # _____    Entry # _____

Notary contact: _____

**Other**
☐ Additional Signer(s)   ☐ Signer(s) Thumbprint(s)
☐ _____

© Copyright 2007-2014 Notary Rotary, Inc. PO Box 41400, Des Moines, IA 50311-0507. All Rights Reserved. Item Number 101772. Please contact your Authorized Reseller to purchase copies of this form.

EXHIBIT H –

OCTOBER 15, 2015

*Stanton Utilities*

**Arch** Insurance Company
a member of Arch Insurance Group

# GENERAL INDEMNITY AGREEMENT

THIS GENERAL INDEMNITY AGREEMENT (hereinafter called "Agreement") is made by the undersigned Indemnitors in favor of Arch Insurance Company, Arch Reinsurance Company, and any present or future subsidiary or affiliate of Arch Insurance Company, (hereinafter collectively called "Arch"), for the purpose of indemnifying Surety (as herein defined below) for any Bonds (as herein defined below), which Surety may have issued, or may hereafter issue, or on which Surety otherwise becomes surety.

## RECITALS

A. Principal, as hereinafter defined, in the performance of contracts and the fulfillment of obligations generally, whether in their own names or with others, may desire or be required to give or procure Bonds, and to renew, continue or substitute from time to time the same or new Bonds, or the Indemnitors may have an interest in inducing the Surety to refrain from canceling said Bonds.

B. The Indemnitors understand that the Surety expressly requires the execution and delivery of this Agreement as part of the consideration for the execution by the Surety of such Bonds which may hereafter be furnished, or for the refraining of canceling such Bonds.

C. The Indemnitors have a substantial, material and beneficial interest in the Principal's obtaining of Bonds from the Surety or in the Surety's refraining from canceling such Bonds.

## AGREEMENTS

**IN CONSIDERATION** of the foregoing premises and the Surety's execution and delivery of one or more Bonds or its refraining from canceling the same, and intending to be legally bound hereby, the Indemnitors, for themselves and their respective heirs, executors, administrators, successors, and assigns, hereby agree, jointly and severally, to be obligated to the Surety, its successors and assigns, as follows.

**1. DEFINITIONS** - In addition to the capitalized terms defined elsewhere in this Agreement, the following terms when used in this Agreement, unless the context otherwise requires, shall have the meanings indicated in this paragraph, which meanings shall be equally applicable to both the singular and plural forms of such terms:

    a. **Principal:** Any Indemnitor on behalf of which Surety may execute a Bond and/or any Person whose name is or has been furnished to Surety by any of the Indemnitors or on behalf of which Surety has issued any Bond at the request of any Indemnitor, including, but not limited to, any of the Indemnitors named or referred to as "Principal" in any bond, undertaking or recognizance. The term "Principal" also includes any present or future direct or indirect subsidiary, successor, affiliate or parent of any Indemnitor and any partnerships, LLCs, LLPs or other entities owned in whole or in part by any named Indemnitor.

    b. **Indemnitors:** All Persons who sign this Agreement or whose representatives sign this Agreement or any other agreement that incorporates by reference the terms of this Agreement. The Indemnitors warrant and represent that they have a material and beneficial interest in Surety's issuance of Bonds on behalf of the Principal, and acknowledge that Surety would not issue such Bonds without each Indemnitor's agreement to reimburse Surety for all losses arising under the Bonds.

    c. **Surety:** Arch and/or any other present or future subsidiary or affiliate of Arch, which may issue Bonds, as well as any and all sureties, co-sureties or reinsurers who issue, execute or reinsure any portion of the Bond or who procure bonds at the request of Arch. The terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsurers.

d.  **Person:** An individual, corporation, partnership, Limited Liability Company (hereinafter called LLC), Limited Liability Partnership (hereinafter called LLP), joint venture, trust, estate or other legal entity.

e.  **Bond:** Any and all bonds, including but not limited to surety bonds, undertakings, guaranties, and any renewals or extensions thereof issued by Surety, or issued by another at the request of Surety, on behalf of Principal, whether issued prior to or subsequent to the effective date of this Agreement. The term Bond also includes any electronic processes in lieu of the issuance of paper bonds, whether in the contract bidding process, or otherwise.

f.  **Bonded Contract:** A contract for which Surety issues or has issued a Bond.

g.  **Default:** An instance or condition in which Principal or Indemnitors, or any of them: (a.) fail to pay any Bond premium charge when due, (b.) forfeit, breach, abandon, default or be declared in default on any Bonded Contract or fail to pay when due any obligation to which any Bond may pertain, (c.) neglect or refuse to pay for any labor or materials used in the prosecution of a Bonded Contract, (d.) make or have made any representation as to any Indemnitor's financial condition or supply any information to Surety which is untrue, materially false or misleading, (e.) fail to honor any obligation under this Agreement, (f.) institute or have instituted against any or all of them a case under the Bankruptcy Code or similar statute, with respect to any Indemnitor as debtor, or any suit or proceeding alleging that any one of them is insolvent or requesting the appointment of a receiver or trustee for the benefit of creditors, (g.) have proceedings instituted against any of them that may have the effect of depriving any of them of the use of any part of the materials or equipment used in connection with the work under a Bonded Contract so as to hinder, delay or impede the normal and satisfactory progress of the work, (h.) make an assignment for the benefit of creditors that in any way impedes the rights of the Surety, (i.) in the case of Indemnitors which are not individuals, dissolve or cease to continue their legal existence, (j.) in the case of Indemnitors who are individuals, die, abscond, disappear, become incompetent, are convicted of a felony or are imprisoned, or (k.) violate any other written agreement with Surety or for the benefit of Surety, including without limitation, subordination agreements with Indemnitors (hereinafter referred to as Other Agreements).

h.  **Loss:** Any and all liability, losses, costs, expenses, and fees of whatever kind or nature, that Surety may sustain or incur as a result of executing or procuring any Bond or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement. Loss includes but is not limited to: (a.) sums posted by Surety as a reserve for the payment of potential losses and/or expenses, (b.) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses, (c.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for Principal or Indemnitors, (d.) funds advanced by Surety to a Principal, and (e.) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

**2. PREMIUMS** - The Principal and Indemnitors will pay to the Surety, promptly upon demand, all premiums, costs and charges of the Surety, in accordance with its rate filings, rates as it determines from its manual of rates, or rates as the Surety may otherwise determine, for any Bonds requested from and/or issued by the Surety. Where such premiums, costs and charges are annual, the Principal and Indemnitors agree to pay the same until the Principal and Indemnitors shall deliver evidence satisfactory to the Surety of the discharge or release of all liability under such Bonds.

**3. INDEMNITY** - The Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, pre- and post-judgment interest, court costs and counsel fees, and accounting, engineering and consulting fees, and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, whether such Bond or Bonds were issued prior to or after the date of this Agreement (2) By reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement or Other Agreements. In the event of any payment by the Surety the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such

payments made by the Surety shall be *prima facie* evidence of the fact and amount of the liability to the Surety. As used in this paragraph, "good faith" means honesty in fact and the absence of malice or fraud.

**4. POSTING OF COLLATERAL** - If the Surety determines, in its sole discretion and judgment, that potential liability exists for losses, fees, costs, or expenses, for which the Principal and Indemnitors will be obligated to indemnify the Surety under the terms of this Agreement or Other Agreements, the Principal and Indemnitors shall deposit with the Surety, promptly on demand, a sum of money equal to the amount the Surety determines or collateral security of a type and value satisfactory to the Surety, to cover that liability, whether or not the Surety has : (a) established a reserve; (b) made any payments; or (c) received any notice of claims under the Bonds. At the Surety's sole option, such collateral shall be in addition to and not in lieu of any other collateral that has been previously been provided to the Surety with any Bond or Bonds. The Surety shall have the right to use the collateral, or any portion thereof, in payment or settlement of any such liabilities for which the Principal and Indemnitors would be liable to the Surety under this Agreement or Other Agreements with respect to payments made by Surety. The Surety shall have no obligation to invest or provide a return on any collateral provided under this Agreement. Indemnitors acknowledge that the failure of Indemnitors to pay to Surety, immediately upon demand, the sum demanded by Surety hereunder, shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to temporary, preliminary and final injunctive relief for specific performance of their obligations hereunder, including the obligation to pay to Surety the sum demanded, and waive any defenses thereto. To the extent Surety accepts collateral other than money, Surety shall not be liable to any Indemnitor for any diminution in value, loss or destruction of such collateral and shall have no obligation to maintain or insure such collateral.

**5. SURETY'S CONSENT TO CHANGES** - Surety is authorized and empowered, without notice to or knowledge of the Principal and Indemnitors, to consent to changes in any Bond or to changes in the contract or obligation, which is the subject of any Bond, or may refuse to consent to any such change, including, without limitation, any change in the time for the completion of said contract and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of any Bonds and to executed any substitute or substitutes therefore, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Principal and Indemnitors shall remain bound by the terms of this Agreement, even though any such assent by the Surety does or might substantially increase the liability of the Indemnitors. Surety's actions in consenting or in not consenting to any such change shall not release or affect the obligations of Indemnitors to Surety under this Agreement. The Indemnitors further warrant and represent that they are currently informed and shall remain knowledgeable and apprised of Principal's business activities and financial condition. Surety has no obligation to inform Indemnitors of any change in the business affairs and financial condition of Principal.

**6. SURETY'S RIGHT TO DECLINE BONDS** - Surety has the right to decline to execute any Bond requested by the Principal or Indemnitors, including any such Bond requested after Surety has executed a preliminary bond including, but not limited to, a bid or proposal bond, or a Consent of Surety to the issuance of Bonds. This right applies to any Surety's declining to issue or execute any Bond for any reason whatsoever. If the Surety requests another surety to execute a Bond and such other surety declines to execute the Bond, the Surety shall have no liability to the Principal or Indemnitors for such declination. Surety's declining to execute any Bond shall not release or affect the obligations of Indemnitors to Surety under this Agreement. Principal and Indemnitors acknowledge that the Surety makes no representations as to the acceptability of any of its Bonds to any person, firm or entity under any contract, and that Principal and Indemnitors shall have no claim against the Surety relating to the failure or refusal of any entity to accept any Bond issued by the Surety. The Indemnitors acknowledge and agree that it is their sole responsibility to provide the proper forms on a timely basis for the bonds to be executed by the Surety, and to review and approve any bond and undertaking executed by the Surety on its own forms. Neither the Surety, nor its agents, shall have any liability whatsoever to the Indemnitors if they shall fail to furnish the Surety with the proper forms or to object to forms furnished by the Surety.

**7. BOND FORMS** - It shall be the sole responsibility of the Indemnitors to review all bond forms executed by the Surety for appropriateness and for any errors or omissions prior to delivery of the bonds to an obligee. The Surety and its agents shall have no liability to the Indemnitors on account of any negligence (whether sole or concurrent), inadvertence, error or omission in the preparation, execution, or delivery of any bonds. Prior to requesting that the Surety issue any bond, the Indemnitors shall obtain confirmation that the proposed obligee on the bond will accept the Surety as surety on the proposed bond, and neither the Surety, nor its agents, shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the Surety as surety on any bond. The Indemnitors agree that the Indemnitors shall be solely responsible for arranging, independent of the Surety, for the timely delivery of any bond to the obligee. The Surety and its agents shall have no liability to the Indemnitors if any bond is not timely delivered to any obligee for any reason whatsoever, including any negligent acts or omissions on the part of the surety or its agents.

**8. SURETY'S RIGHT TO SETTLE CLAIMS** - Surety shall have the sole and exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and Surety's decision thereon shall be final and binding upon the Indemnitors. Subject to the Surety's rights set forth in the first sentence of this section, which shall remain in full force and effect, if Principal or Indemnitors desire that the Surety litigate such claim or demand, or defend such suit, or appeal from such judgment, they shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered, or which might be rendered, against the Surety, together with interest, costs and attorneys fees.

**9. SURETY'S RIGHT TO COMPLETE WORK** - In the event of a Default, Surety shall have the right, but not the obligation, to take possession of the work under any and all Bonded Contracts, and complete or consent to the completion of such Bonded Contracts at the expense of the Indemnitors.

**10. ADVANCES** - The Surety is authorized and empowered, but not obligated, to guarantee loans, to advance or lend to the Principal any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Principal, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Principal to the Surety when due, shall be presumed to be a loss by the Surety for which the Principal and the Indemnitors shall be liable, notwithstanding that said money or any part thereof should not be so used by the Principal.

**11. ASSIGNMENTS** - Effective as of the date of this Agreement, but enforceable only in the event of a Default, Principal and Indemnitors do hereby assign, transfer and set over to Surety, all of their rights under all Bonded Contract(s) including (a.) their right, title and interest in all subcontracts, subcontract bonds, and purchase orders let in connection therewith, (b.) all machinery, plant, equipment, tools and materials located anywhere, whether for the purposes of the Bonded Contract(s) or not, (c.) all claims and causes of action against any parties, (d.) any and all sums due, or to become due under any contract, whether bonded or not, (e.) all rights in or arising out of any insurance policies of any type, (f.) all rights it has in patents, patented processes, licenses, designs, copyrights, trademarks and all other intellectual property rights, and expressly authorize Surety to use these property rights, at no cost to the Surety, and all proceeds arising therefrom and all records (in whatever form) related thereto.

**12. ATTORNEY IN FACT** - Principal and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Principal and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Principal and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Principal and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

**13. DISCHARGE OF SURETY** - Upon the request of Surety, Principals and Indemnitors will procure the discharge of Surety from any Bond, and all liability arising there from, and provide evidence to Surety regarding same.

**14. BOOKS & RECORDS** - Principal and Indemnitors shall provide to the Surety within 120 days of the end of their respective fiscal years, financial statements prepared in accordance with Generally Accepted Accounting Principles and reports prepared by reputable accounting firms, prepared in accordance with the AICPA's Statements on Standards for Accounting and Review Services (hereinafter SARS). If the Principal and/or Indemnitors have reports prepared by reputable accounting firms in accordance with AICPA's Statements on Auditing Standards, which reports are prepared in connection with the ordinary course of their financial reporting, then such reports shall be provided instead of reports prepared in accordance with SARS. Principal and Indemnitors shall also provide to Surety any management reports received from their accountants within 30 days of receipt. In addition to the foregoing, the Surety, including its designated agents, shall, at any and all times, have unrestricted access upon reasonable notice to review all books and records of Principal and Indemnitors, including all books and records pertaining to their financial condition, and to the status of each unbonded and Bonded Contract. Principal and Indemnitors hereby authorize those with whom such Bonded Contracts are made to furnish to Surety all information concerning such contracts and the work thereunder. Principal and Indemnitors understand and agree that the failure to provide the information required in this paragraph shall be a material breach of this Agreement and shall entitle the Surety to demand, in its sole discretion, cash collateral up to the penal sums of any and all outstanding Bonds.

**15. INDEMNITORS' WAIVER OF NOTICE** - Indemnitors warrant that each of them is specifically and beneficially interested in the obtaining of each Bond and agree to keep themselves fully informed as to the business activities and financial affairs of any one or more of the Indemnitors or any Principal for whom Bonds are executed by Surety. Indemnitors hereby expressly waive any notice from the Surety of any fact or information coming to the attention or knowledge of the Surety which affects its rights or the rights or liabilities of the Indemnitors, including notice of execution of any particular Bond subject to this Agreement and notice of default by the Principal or of the receipt of claims under any Bond.

**16. EFFECT OF INVALIDITY** - Any defect or invalidity in the execution of this Agreement by any Indemnitor or the failure of any Indemnitor whose name appears hereinbelow to execute this Agreement shall not in any manner affect the validity of these obligations or the liability hereunder of the other Indemnitors. Invalidity of any provision of this Agreement by reason of the laws of any State or for any other reason shall not render the remaining provisions of this Agreement invalid, and this Agreement shall be construed and enforced with the same effect as though such provision or provisions were omitted.

**17. TERMINATION BY ANY INDEMNITOR** - Any Indemnitor wishing to terminate this Agreement must give Arch written notice by Registered Mail at least thirty (30) days prior to termination. The termination will not affect Indemnitor's obligations hereunder with respect to any Bonds executed and issued prior to the termination of this Agreement by that Indemnitor and with respect to any Bonds or renewals executed after the effective date of termination with respect to which Surety had issued a bid bond, consent of surety or prior Bond or undertaking prior to the effective date of termination. The termination by any one Indemnitor shall not affect the liability of any other Indemnitor.

**18. CHANGE IN STATUS/TRANSFER OF ASSETS** - Each Indemnitor agrees not to change or convert its respective individual, corporate or partnership status to either an LLC or an LLP or any other similar structure which has the effect of limiting, reducing or shielding the liability of either the entity or its partners and/or officers hereunder, without the prior, express, written consent of Surety. Should any Indemnitor so change its respective corporate or partnership status without the prior, express, written consent of Surety, Indemnitor agrees that such change in its status shall not limit, reduce or otherwise shield its obligations, its partners' and/or officers' obligations, to Surety which arise from this Agreement. Indemnitors hereby expressly waive as against Surety any and all defenses which may arise from such a conversion to a LLC, LLP or similar status.

**19. CHANGE IN CONTROL** - The Indemnitors shall not permit a Change of Control, as defined hereinbelow, to occur without the Surety's prior written consent. Change in Control means: (a) the transfer, merger or consolidation, in one transaction or a series of transactions, of all or substantially all of the assets of any one Indemnitor, which results in an unaffiliated Person owning, directly or indirectly fifty percent (50%) or more of the beneficial ownership or control of such Indemnitor; (b) the acquisition, in one transaction or a series of transactions, of fifty percent (50%) or more of the beneficial ownership or control of any Indemnitor; or (c) the acquisition by any Indemnitor, directly or indirectly, of fifty percent (50%) or more of the beneficial ownership or control of any joint venture, subsidiary,

division, affiliate, limited partnership, limited liability partnership, limited liability company or other entity through the issuance of fifty percent (50%) or more of the voting power of the total outstanding voting stock of any Indemnitor.

**20. NOTICE OF CHANGE IN RESIDENCE** - Each Indemnitor who is an individual agrees to give Surety written notice of any change in his/her principal residence within 30 days of the change of address. Each Indemnitor, which is not an individual, agrees not to change its principal place of business or the state of jurisdiction in which it is incorporated or otherwise organized without also giving Surety 30 days' written notice of the proposed change. If Surety has previously filed a Uniform Commercial Code Financing Statement with respect to such Indemnitor, Indemnitor agrees to file a Financing Statement in the new state or jurisdiction.

**21. EFFECT OF RELEASE OF ANY INDEMNITOR** - Indemnitors agree that, at any time, Surety may release any Indemnitor or Indemnitors from this Agreement, without affecting, reducing or otherwise limiting the obligations of any remaining Indemnitor, and Indemnitors hereby expressly waive both (a) notice from Surety of any such release, and (b) any defense that may be created in favor of any remaining Indemnitor as a result of Surety's release of another Indemnitor. Waiver of any one Default shall not be deemed a waiver of any other Default.

**22. FILING OF AGREEMENT UNDER THE UCC** - This Agreement shall constitute a Security Agreement to the Surety and also shall constitute a Financing Statement naming Surety as secured creditor and each Indemnitor as debtor, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of a copy of this Agreement shall be solely at the option of Surety and Surety's failure to do so shall not release or impair any obligation of Indemnitors, under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of Surety's rights under this Agreement or otherwise. The appearance of Arch's logo on the first page of this Agreement shall constitute its signature hereon. Indemnitors hereby irrevocably appoint and designate Surety or its authorized representative as their respective Attorneys-In-Fact to sign any Financing Statement form which may be required in order to file the same in any jurisdiction or office.

**23. APPLICABILITY OF AGREEMENT** - This Agreement shall apply to all Bonds executed by and/or procured by Surety for Principal, in its own name or as a joint venture with others. Indemnitors expressly waive any defense that may arise as a result of this Agreement having been executed subsequent to the date of the issuance of any Bond and Indemnitors admit and acknowledge that any such Bond was executed pursuant to Indemnitors' request and in reliance on the Indemnitors' representation and promise to execute this Agreement.

**24. PAYMENTS BY INDEMNITORS** - All payments made by Indemnitors to Surety under this Agreement shall be in United States Dollars and in no other currency and shall be sent, at Surety's discretion via check or wire transfer to any bank account subsequently designated by Surety. All sums payable to the Surety under this Agreement shall bear interest if not paid by Indemnitors within ten (10) days of demand by Surety. The interest rate shall be an annual rate of 10%, or the maximum rate permitted by applicable law if less than 10%. All Payments made shall be credited first to accrued and unpaid interest, if any, and then to the unpaid principal balance of the obligation.

**25. TRUST FUNDS** - Principal and Indemnitors agree and expressly declare that all funds due or to become due under any Bonded Contract are trust funds, whether in the possession of Principal or another and whether designated trust funds or not, for the benefit and payment of all persons to whom Principal incurs obligations in the performance of such contract, for which Surety may be liable under any Bond. If Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds.

**26. HOMESTEAD** - To the extent permitted by applicable law, the Principal and Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory or possession.

**27. SURETIES** - In the event the Surety procures the execution of any Bond by other sureties, or executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsurers, than all the terms and conditions of this Agreement shall inure to the benefit of such Sureties, co-sureties and reinsurers, their successors and assigns, as their interests may appear.

**28. SUITS** - The Surety may bring separate suits under this Agreement as causes of action accrue, and the bringing of suit or the recovery of judgment upon a cause of action shall not bar, prejudice or preclude the Surety's bringing other suits upon other causes of action, whether theretofore or thereafter arising. Surety may enforce this

Agreement against any Indemnitor without the necessity of first proceeding against any Principal or other Indemnitor.

**29. JURISDICTION -** As to any legal action related to this Agreement, Principal and Indemnitors consent to the general jurisdiction of any state or federal court of the United States or its territories having proper subject matter jurisdiction or in any court of the United States in which a claim may be brought against the Surety under any of the Bonds, at the sole discretion of the Surety.  Principal and Indemnitors waive any claim or defense in any such action based on alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

**30. JURY WAIVER -** Principal and Indemnitors hereby expressly waive any right to a trial by jury with respect to any legal proceeding arising under this Agreement.

**31. CURRENCY EXCHANGE -** Should the Surety, when making a payment or incurring any expense directly or indirectly related to the Bond, expend funds in any currency other than U.S. Dollars, then Indemnitors shall either reimburse the Surety in U.S. Dollars equal to the amount expended by the surety at the time the foreign currency was purchased or shall defray the cost of any exchange variation, thereby indemnifying the Surety for any decrease in the valuation of the currency purchased.

**32. NOTICE OF SERVICE -** Notice of Service made by U. S. Mail or by FAX to the last known address constitutes service whether or not received.

**33. ADDRESS FOR NOTICES -** All notices required to be given by Indemnitors under this Agreement shall be sent by registered mail to Arch Insurance Company, 3 Parkway, Suite 1500, Philadelphia, PA 19102 USA and shall include a copy of this Agreement attached thereto.

**34. OTHER INDEMNITY –** This Agreement incorporates, as if set forth at length herein, any duly executed amendments relating to any one or more Indemnitors, Principals and/or entities acquired, whether such amendments are executed contemporaneously with the signing of this Agreement or from time to time in the future. The Indemnitors and/or Principals shall continue to remain bound under the terms of this Agreement, and any other agreements containing indemnity obligations in connection with the execution or procurement of the Bonds, even though the Surety may  from time to time heretofore or hereafter, with or without notice to or knowledge of the Indemnitors and/or Principals, accept  release or reduce any indemnity obligations or collateral of current or future Indemnitors and/or Principals for any reason. The Indemnitors and/or Principals expressly waive notice from the Surety of any such action and, furthermore, it is explicitly understood and agreed by the Indemnitors and/or Principals that any and all other rights which the Surety may have or acquire against the Indemnitors and/or Principals and/or others under any such other or additional agreements or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.  No Indemnitor shall make any defense to the enforcement of this Agreement based on the execution of other agreements or related to the addition or release of any Indemnitor, and each Indemnitor explicitly confirms its joint and several liability for Bonds issued by the Surety as provided in this Agreement.   The Indemnitors and/or Principals also waive and subordinate all rights of indemnity, subrogation and contribution against each other until all obligations to the Surety under this Agreement, at law or in equity, have been satisfied in full.

**35. SUBORDINATION OF INDEMNITORS -** The Indemnitors shall have no rights of indemnity or contribution against the Principal or its property until the Principal's obligations to the Surety under this Agreement have been satisfied in full.

**36.  REPRESENTATIONS -** Indemnitors represent and warrant to Surety that (i) they have carefully read and understand this entire Agreement; (ii) they have had the opportunity to review and discuss it with an attorney of their choosing; (iii) there are no other agreements, understandings or representations made by or on behalf of Surety which would diminish or modify the Indemnitors' obligations or Surety's rights set forth herein; (iv) that this Agreement shall be in addition to and shall not constitute a novation of or revoke or rescind any prior agreements of indemnity executed by an Indemnitor and that Surety's rights under such agreements are cumulative.

**37.  GENERAL PROVISIONS -** (i) This Agreement sets forth unilateral undertakings of Indemnitors only upon which Surety may rely in considering whether to execute Bonds on behalf of any Principal.  Indemnitors acknowledge that Surety is not required to execute this Agreement in order to enforce it; (ii) All references in this Agreement in the singular shall include the plural and vice versa, and all references to a gender shall include all genders.

**38. MODIFICATIONS** - This Agreement, and the rights and remedies of Surety hereunder may not be waived, challenged or modified orally. No change or modification shall be effective unless made by written amendment executed to form a part hereof.

**IN WITNESS WHEREOF,** the Indemnitors have caused this Agreement to be executed by their respective duly authorized representatives this _15TH_ day of _October_, 20 _15_.

**Witness/ Attest**

_(Name of Witness)_

Principal/Indemnitor: Stanton Utilities, Inc.

By:
Print Name: Maita Kayaban
Its: President
Tax I.D. No.:
Address:

(seal)

_(Name of Witness)_

Principal/Indemnitor: Stanton Utilities, Inc.

By:
Print Name: Reza Motadel
Its: Secretary
Tax I.D. No.:
Address:

(seal)

_(Name of Witness)_

Principal/Indemnitor: USS Cal Builders, Inc.

By:
Print Name: Allen Othman
Its: President
Tax I.D. No.:
Address:

(seal)

_(Name of Witness)_

Indemnitor: Allen Othman

By:
Print Name: Allen Othman
Its: Individual
SSN/Tax I.D. No.:
Address:

(seal)

_(Name of Witness)_

Indemnitor: Eric Othman

By:
Print Name: Eric Othman
Its: Individual
SSN/Tax I.D. No.:
Address:

(seal)

_(Name of Witness)_

Indemnitor: Shereen Othman

By: _____
Print Name: Shereen Othman
Its: Individual
SSN/Tax I.D. No.: _____
Address: _____
_____

(seal)

(Name of Witness)

Indemnitor: 2011 Allen Othman Trust

By: _____
Print Name: Allen Othman
Its: Trustee
SSN/Tax I.D. No.: _____
Address: _____

(seal)

(Name of Witness)

Indemnitor: IMAD and Shereen Othman Family Trust

By: _____
Print Name: Imad E. Othman
Its: Trustee
SSN/Tax I.D. No.: _____
Address: _____

(seal)

(Name of Witness)

Indemnitor: IMAD and Shereen Othman Family Trust

By: _____
Print Name: Shereen Othman
Its: Trustee
SSN/Tax I.D. No.: _____
Address: _____

(seal)

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. | CALIFORNIA ALL-PURPOSE CERTIFICATE OF ACKNOWLEDGMENT |

State of California          )

County of _Orange_          )

On _10/15/15_ _____ before me, _Mona Sultan_ _____,
(here insert name and title of the officer)

personally appeared _Maita Kayaban, Reza Motadel, Allen Othman,_
_Imad Eric Othman and Shereen Othman._ _____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

MONA SULTAN
COMMISSION # 2102140
Notary Public - California
ORANGE COUNTY
My Comm. Expires Mar 5, 2019

WITNESS my hand and official seal.

Signature _____                                    (Seal)

─────────────── OPTIONAL INFORMATION ───────────────

*Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.*

## Description of Attached Document

The preceding Certificate of Acknowledgment is attached to a document

titled/for the purpose of _____

_____ '

containing _____ pages, and dated _____

The signer(s) capacity or authority is/are as:

☐ Individual(s)
☐ Attorney-in-Fact
☐ Corporate Officer(s) _____
                              Title(s)

☐ Guardian/Conservator
☐ Partner - Limited/General
☐ Trustee(s)
☐ Other: _____

representing: _____
              Name(s) of Person(s) or Entity(ies) Signer is Representing

**Additional Information**

Method of Signer Identification

Proved to me on the basis of satisfactory evidence:
└─○ form(s) of identification  ○ credible witness(es)

Notarial event is detailed in notary journal on:
        Page # _____  Entry # _____

Notary contact: _____

Other
☐ Additional Signer(s)   ☐ Signer(s) Thumbprint(s)
☐

© Copyright 2007-2014 Notary Rotary, Inc. PO Box 41400, Des Moines, IA 50311-0507. All Rights Reserved. Item Number 101772. Please contact your Authorized Reseller to purchase copies of this form.

EXHIBIT I –

AUGUST 14, 2017



# GENERAL INDEMNITY AGREEMENT

THIS GENERAL INDEMNITY AGREEMENT (hereinafter called "Agreement") is made by the undersigned Indemnitors in favor of Arch Insurance Company, Arch Reinsurance Company, and any present or future subsidiary or affiliate of Arch Insurance Company, (hereinafter collectively called "Arch"), for the purpose of indemnifying Surety (as herein defined below) for any Bonds (as herein defined below), which Surety may have issued, or may hereafter issue, or on which Surety otherwise becomes surety.

## RECITALS

A. Principal, as hereinafter defined, in the performance of contracts and the fulfillment of obligations generally, whether in their own names or with others, may desire or be required to give or procure Bonds, and to renew, continue or substitute from time to time the same or new Bonds, or the Indemnitors may have an interest in inducing the Surety to refrain from canceling said Bonds.

B. The Indemnitors understand that the Surety expressly requires the execution and delivery of this Agreement as part of the consideration for the execution by the Surety of such Bonds which may hereafter be furnished, or for the refraining of canceling such Bonds.

C. The Indemnitors have a substantial, material and beneficial interest in the Principal's obtaining of Bonds from the Surety or in the Surety's refraining from canceling such Bonds.

## AGREEMENTS

**IN CONSIDERATION** of the foregoing premises and the Surety's execution and delivery of one or more Bonds or its refraining from canceling the same, and intending to be legally bound hereby, the Indemnitors, for themselves and their respective heirs, executors, administrators, successors, and assigns, hereby agree, jointly and severally, to be obligated to the Surety, its successors and assigns, as follows.

**1. DEFINITIONS -** In addition to the capitalized terms defined elsewhere in this Agreement, the following terms when used in this Agreement, unless the context otherwise requires, shall have the meanings indicated in this paragraph, which meanings shall be equally applicable to both the singular and plural forms of such terms:

    a. **Principal**: Any Indemnitor on behalf of which Surety may execute a Bond and/or any Person whose name is or has been furnished to Surety by any of the Indemnitors or on behalf of which Surety has issued any Bond at the request of any Indemnitor, including, but not limited to, any of the Indemnitors named or referred to as "Principal" in any bond, undertaking or recognizance. The term "Principal" also includes any present or future direct or indirect subsidiary, successor, affiliate or parent of any Indemnitor and any partnerships, LLCs, LLPs or other entities owned in whole or in part by any named Indemnitor.

    b. **Indemnitors**: All Persons who sign this Agreement or whose representatives sign this Agreement or any other agreement that incorporates by reference the terms of this Agreement. The Indemnitors warrant and represent that they have a material and beneficial interest in Surety's issuance of Bonds on behalf of the Principal, and acknowledge that Surety would not issue such Bonds without each Indemnitor's agreement to reimburse Surety for all losses arising under the Bonds.

    c. **Surety**: Arch and/or any other present or future subsidiary or affiliate of Arch, which may issue Bonds, as well as any and all sureties, co-sureties or reinsurers who issue, execute or reinsure any portion of the Bond or who procure bonds at the request of Arch. The terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsurers.

d. **Person:** An individual, corporation, partnership, Limited Liability Company (hereinafter called LLC), Limited Liability Partnership (hereinafter called LLP), joint venture, trust, estate or other legal entity.

e. **Bond:** Any and all bonds, including but not limited to surety bonds, undertakings, guaranties, and any renewals or extensions thereof issued by Surety, or issued by another at the request of Surety, on behalf of Principal, whether issued prior to or subsequent to the effective date of this Agreement. The term Bond also includes any electronic processes in lieu of the issuance of paper bonds, whether in the contract bidding process, or otherwise.

f. **Bonded Contract:** A contract for which Surety issues or has issued a Bond.

g. **Default:** An instance or condition in which Principal or Indemnitors, or any of them: (a.) fail to pay any Bond premium charge when due, (b.) forfeit, breach, abandon, default or be declared in default on any Bonded Contract or fail to pay when due any obligation to which any Bond may pertain, (c.) neglect or refuse to pay for any labor or materials used in the prosecution of a Bonded Contract, (d.) make or have made any representation as to any Indemnitor's financial condition or supply any information to Surety which is untrue, materially false or misleading, (e.) fail to honor any obligation under this Agreement, (f.) institute or have instituted against any or all of them a case under the Bankruptcy Code or similar statute, with respect to any Indemnitor as debtor, or any suit or proceeding alleging that any one of them is insolvent or requesting the appointment of a receiver or trustee for the benefit of creditors, (g.) have proceedings instituted against any of them that may have the effect of depriving any of them of the use of any part of the materials or equipment used in connection with the work under a Bonded Contract so as to hinder, delay or impede the normal and satisfactory progress of the work, (h.) make an assignment for the benefit of creditors that in any way impedes the rights of the Surety, (i.) in the case of Indemnitors which are not individuals, dissolve or cease to continue their legal existence, (j.) in the case of Indemnitors who are individuals, die, abscond, disappear, become incompetent, are convicted of a felony or are imprisoned, or (k.) violate any other written agreement with Surety or for the benefit of Surety, including without limitation, subordination agreements with Indemnitors (hereinafter referred to as Other Agreements).

h. **Loss**: Any and all liability, losses, costs, expenses, and fees of whatever kind or nature, that Surety may sustain or incur as a result of executing or procuring any Bond or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement.  Loss includes but is not limited to: (a.) sums posted by Surety as a reserve for the payment of potential losses and/or expenses, (b.) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses,  (c.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for Principal or Indemnitors, (d.) funds advanced by Surety to a Principal, and (e.) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

**2. PREMIUMS** - The Principal and Indemnitors will pay to the Surety, promptly upon demand, all premiums, costs and charges of the Surety, in accordance with its rate filings, rates as it determines from its manual of rates, or rates as the Surety may otherwise determine, for any Bonds requested from and/or issued by the Surety. Where such premiums, costs and charges are annual, the Principal and Indemnitors agree to pay the same until the Principal and Indemnitors shall deliver evidence satisfactory to the Surety of the discharge or release of all liability under such Bonds.

**3. INDEMNITY** - The Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, pre- and post-judgment interest, court costs and counsel fees, and accounting, engineering and consulting fees,  and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, whether such Bond or Bonds were issued prior to or after the date of this Agreement (2) By reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement or Other Agreements. In the event of any payment by the Surety the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments

made by the Surety shall be *prima facie* evidence of the fact and amount of the liability to the Surety. As used in this paragraph, "good faith" means honesty in fact and the absence of malice or fraud.

**4. POSTING OF COLLATERAL** - If the Surety determines, in its sole discretion and judgment, that potential liability exists for losses, fees, costs, or expenses, for which the Principal and Indemnitors will be obligated to indemnify the Surety under the terms of this Agreement or Other Agreements, the Principal and Indemnitors shall deposit with the Surety, promptly on demand, a sum of money equal to the amount the Surety determines or collateral security of a type and value satisfactory to the Surety, to cover that liability, whether or not the Surety has : (a) established a reserve; (b) made any payments; or (c) received any notice of claims under the Bonds. At the Surety's sole option, such collateral shall be in addition to and not in lieu of any other collateral that has been previously been provided to the Surety with any Bond or Bonds. The Surety shall have the right to use the collateral, or any portion thereof, in payment or settlement of any such liabilities for which the Principal and Indemnitors would be liable to the Surety under this Agreement or Other Agreements with respect to payments made by Surety. The Surety shall have no obligation to invest or provide a return on any collateral provided under this Agreement. Indemnitors acknowledge that the failure of Indemnitors to pay to Surety, immediately upon demand, the sum demanded by Surety hereunder, shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to temporary, preliminary and final injunctive relief for specific performance of their obligations hereunder, including the obligation to pay to Surety the sum demanded, and waive any defenses thereto. To the extent Surety accepts collateral other than money, Surety shall not be liable to any Indemnitor for any diminution in value, loss or destruction of such collateral and shall have no obligation to maintain or insure such collateral.

**5. SURETY'S CONSENT TO CHANGES** - Surety is authorized and empowered, without notice to or knowledge of the Principal and Indemnitors, to consent to changes in any Bond or to changes in the contract or obligation, which is the subject of any Bond, or may refuse to consent to any such change, including, without limitation, any change in the time for the completion of said contract and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of any Bonds and to executed any substitute or substitutes therefore, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Principal and Indemnitors shall remain bound by the terms of this Agreement, even though any such assent by the Surety does or might substantially increase the liability of the Indemnitors. Surety's actions in consenting or in not consenting to any such change shall not release or affect the obligations of Indemnitors to Surety under this Agreement. The Indemnitors further warrant and represent that they are currently informed and shall remain knowledgeable and apprised of Principal's business activities and financial condition. Surety has no obligation to inform Indemnitors of any change in the business affairs and financial condition of Principal.

**6. SURETY'S RIGHT TO DECLINE BONDS** - Surety has the right to decline to execute any Bond requested by the Principal or Indemnitors, including any such Bond requested after Surety has executed a preliminary bond including, but not limited to, a bid or proposal bond, or a Consent of Surety to the issuance of Bonds. This right applies to any Surety's declining to issue or execute any Bond for any reason whatsoever. If the Surety requests another surety to execute a Bond and such other surety declines to execute the Bond, the Surety shall have no liability to the Principal or Indemnitors for such declination. Surety's declining to execute any Bond shall not release or affect the obligations of Indemnitors to Surety under this Agreement. Principal and Indemnitors acknowledge that the Surety makes no representations as to the acceptability of any of its Bonds to any person, firm or entity under any contract, and that Principal and Indemnitors shall have no claim against the Surety relating to the failure or refusal of any entity to accept any Bond issued by the Surety. The Indemnitors acknowledge and agree that it is their sole responsibility to provide the proper forms on a timely basis for the bonds to be executed by the Surety, and to review and approve any bond and undertaking executed by the Surety on its own forms. Neither the Surety, nor its agents, shall have any liability whatsoever to the Indemnitors if they shall fail to furnish the Surety with the proper forms or to object to forms furnished by the Surety.

**7. BOND FORMS** - It shall be the sole responsibility of the Indemnitors to review all bond forms executed by the Surety for appropriateness and for any errors or omissions prior to delivery of the bonds to an obligee. The Surety and its agents shall have no liability to the Indemnitors on account of any negligence (whether sole or concurrent), inadvertence, error or omission in the preparation, execution, or delivery of any bonds. Prior to requesting that the Surety issue any bond, the Indemnitors shall obtain confirmation that the proposed obligee on the bond will accept the Surety as surety on the proposed bond, and neither the Surety, nor its agents, shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the Surety as surety on any bond. The Indemnitors agree that the Indemnitors shall be solely responsible for arranging, independent of the Surety, for the timely delivery of any bond to the obligee. The Surety and its agents shall have no liability to the Indemnitors if any bond is not timely delivered to any obligee for any reason whatsoever, including any negligent acts or omissions on the part of the surety or its agents.

**8. SURETY'S RIGHT TO SETTLE CLAIMS** - Surety shall have the sole and exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and Surety's decision thereon shall be final and binding upon the Indemnitors.  Subject to the Surety's rights set forth in the first sentence of this section, which shall remain in full force and effect, if Principal or Indemnitors desire that the Surety litigate such claim or demand, or defend such suit, or appeal from such judgment, they shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered, or which might be rendered, against the Surety, together with interest, costs and attorneys fees.

**9. SURETY'S RIGHT TO COMPLETE WORK** - In the event of a Default, Surety shall have the right, but not the obligation, to take possession of the work under any and all Bonded Contracts, and complete or consent to the completion of such Bonded Contracts at the expense of the Indemnitors.

**10. ADVANCES** - The Surety is authorized and empowered, but not obligated, to guarantee loans, to advance or lend to the Principal any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Principal, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Principal to the Surety when due, shall be presumed to be a loss by the Surety for which the Principal and the Indemnitors shall be liable, notwithstanding that said money or any part thereof should not be so used by the Principal.

**11. ASSIGNMENTS** - Effective as of the date of this Agreement, but enforceable only in the event of a Default, Principal and Indemnitors do hereby assign, transfer and set over to Surety, all of their rights under all Bonded Contract(s) including (a.) their right, title and interest in all subcontracts, subcontract bonds, and purchase orders let in connection therewith, (b.) all machinery, plant, equipment, tools and materials located anywhere, whether for the purposes of the Bonded Contract(s) or not, (c.) all claims and causes of action against any parties, (d.) any and all sums due, or to become due under any contract, whether bonded or not, (e.) all rights in or arising out of any insurance policies of any type, (f.) all rights it has in patents, patented processes, licenses, designs, copyrights, trademarks and all other intellectual property rights, and expressly authorize Surety to use these property rights, at no cost to the Surety, and all proceeds arising therefrom and all records (in whatever form) related thereto.

**12. ATTORNEY IN FACT** - Principal and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Principal and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Principal and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Principal and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

**13. DISCHARGE OF SURETY** - Upon the request of Surety, Principals and Indemnitors will procure the discharge of Surety from any Bond, and all liability arising there from, and provide evidence to Surety regarding same.

**14. BOOKS & RECORDS** - Principal and Indemnitors shall provide to the Surety within 120 days of the end of their respective fiscal years, financial statements prepared in accordance with Generally Accepted Accounting Principles and reports prepared by reputable accounting firms, prepared in accordance with the AICPA's Statements on Standards for Accounting and Review Services (hereinafter SARS). If the Principal and/or Indemnitors have reports prepared by reputable accounting firms in accordance with AICPA's Statements on Auditing Standards, which reports are prepared in connection with the ordinary course of their financial reporting, then such reports shall be provided instead of reports prepared in accordance with SARS. Principal and Indemnitors shall also provide to Surety any management reports received from their accountants within 30 days of receipt. In addition to the foregoing, the Surety, including its designated agents, shall, at any and all times, have unrestricted access upon reasonable notice to review all books and records of Principal and Indemnitors, including all books and records pertaining to their financial condition, and to the status of each unbonded and Bonded Contract. Principal and Indemnitors hereby authorize those with whom such Bonded Contracts are made to furnish to Surety all information concerning such contracts and the work thereunder. Principal and Indemnitors understand and agree that the failure to provide the information required in this paragraph shall be a material breach of this Agreement and shall entitle the Surety to demand, in its sole discretion, cash collateral up to the penal sums of any and all outstanding Bonds.

**15. INDEMNITORS' WAIVER OF NOTICE** - Indemnitors warrant that each of them is specifically and beneficially interested in the obtaining of each Bond and agree to keep themselves fully informed as to the business activities and financial affairs of any one or more of the Indemnitors or any Principal for whom Bonds are executed by Surety. Indemnitors hereby expressly waive any notice from the Surety of any fact or information coming to the attention or knowledge of the Surety which affects its rights or the rights or liabilities of the Indemnitors, including notice of execution of any particular Bond subject to this Agreement and notice of default by the Principal or of the receipt of claims under any Bond.

**16. EFFECT OF INVALIDITY** - Any defect or invalidity in the execution of this Agreement by any Indemnitor or the failure of any Indemnitor whose name appears hereinbelow to execute this Agreement shall not in any manner affect the validity of these obligations or the liability hereunder of the other Indemnitors. Invalidity of any provision of this Agreement by reason of the laws of any State or for any other reason shall not render the remaining provisions of this Agreement invalid, and this Agreement shall be construed and enforced with the same effect as though such provision or provisions were omitted.

**17. TERMINATION BY ANY INDEMNITOR** - Any Indemnitor wishing to terminate this Agreement must give Arch written notice by Registered Mail at least thirty (30) days prior to termination. The termination will not affect Indemnitor's obligations hereunder with respect to any Bonds executed and issued prior to the termination of this Agreement by that Indemnitor and with respect to any Bonds or renewals executed after the effective date of termination with respect to which Surety had issued a bid bond, consent of surety or prior Bond or undertaking prior to the effective date of termination. The termination by any one Indemnitor shall not affect the liability of any other Indemnitor.

**18. CHANGE IN STATUS/TRANSFER OF ASSETS** - Each Indemnitor agrees not to change or convert its respective individual, corporate or partnership status to either an LLC or an LLP or any other similar structure which has the effect of limiting, reducing or shielding the liability of either the entity or its partners and/or officers hereunder, without the prior, express, written consent of Surety. Should any Indemnitor so change its respective corporate or partnership status without the prior, express, written consent of Surety, Indemnitor agrees that such change in its status shall not limit, reduce or otherwise shield its obligations, its partners' and/or officers' obligations, to Surety which arise from this Agreement. Indemnitors hereby expressly waive as against Surety any and all defenses which may arise from such a conversion to a LLC, LLP or similar status.

**19. CHANGE IN CONTROL** - The Indemnitors shall not permit a Change of Control, as defined hereinbelow, to occur without the Surety's prior written consent. Change in Control means: (a) the transfer, merger or consolidation, in one transaction or a series of transactions, of all or substantially all of the assets of any one Indemnitor, which results in an unaffiliated Person owning, directly or indirectly fifty percent (50%) or more of the beneficial ownership or control of such Indemnitor; (b) the acquisition, in one transaction or a series of transactions, of fifty percent (50%) or more of the beneficial ownership or control of any Indemnitor; or (c) the acquisition by any Indemnitor, directly or indirectly, of fifty percent (50%) or more of the beneficial ownership or control of any joint venture, subsidiary, division, affiliate, limited partnership, limited liability partnership, limited liability company or other entity through the issuance of fifty percent (50%) or more of the voting power of the total outstanding voting stock of any Indemnitor.

**20. NOTICE OF CHANGE IN RESIDENCE** - Each Indemnitor who is an individual agrees to give Surety written notice of any change in his/her principal residence within 30 days of the change of address. Each Indemnitor, which is not an individual, agrees not to change its principal place of business or the state of jurisdiction in which it is incorporated or otherwise organized without also giving Surety 30 days' written notice of the proposed change. If Surety has previously filed a Uniform Commercial Code Financing Statement with respect to such Indemnitor, Indemnitor agrees to file a Financing Statement in the new state or jurisdiction.

**21. EFFECT OF RELEASE OF ANY INDEMNITOR** - Indemnitors agree that, at any time, Surety may release any Indemnitor or Indemnitors from this Agreement, without affecting, reducing or otherwise limiting the obligations of any remaining Indemnitor, and Indemnitors hereby expressly waive both (a) notice from Surety of any such release, and (b) any defense that may be created in favor of any remaining Indemnitor as a result of Surety's release of another Indemnitor. Waiver of any one Default shall not be deemed a waiver of any other Default.

**22. FILING OF AGREEMENT UNDER THE UCC** - This Agreement shall constitute a Security Agreement to the Surety and also shall constitute a Financing Statement naming Surety as secured creditor and each Indemnitor as debtor, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of a copy of this Agreement shall be solely at the option of Surety and Surety's failure to do so shall not release or impair any obligation of Indemnitors, under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of Surety's rights under this Agreement or otherwise. The appearance of Arch's logo on the first page of this Agreement shall constitute its signature hereon. Indemnitors hereby irrevocably appoint and designate Surety or its authorized representative as their respective Attorneys-In-Fact to sign any Financing Statement form which may be required in order to file the same in any jurisdiction or office.

**23. APPLICABILITY OF AGREEMENT** - This Agreement shall apply to all Bonds executed by and/or procured by Surety for Principal, in its own name or as a joint venture with others. Indemnitors expressly waive any defense that may arise as a result of this Agreement having been executed subsequent to the date of the issuance of any Bond and Indemnitors admit and acknowledge that any such Bond was executed pursuant to Indemnitors' request and in reliance on the Indemnitors' representation and promise to execute this Agreement.

**24. PAYMENTS BY INDEMNITORS** - All payments made by Indemnitors to Surety under this Agreement shall be in United States Dollars and in no other currency and shall be sent, at Surety's discretion via check or wire transfer to any bank account subsequently designated by Surety. All sums payable to the Surety under this Agreement shall bear interest if not paid by Indemnitors within ten (10) days of demand by Surety. The interest rate shall be an annual rate of 10%, or the maximum rate permitted by applicable law if less than 10%. All Payments made shall be credited first to accrued and unpaid interest, if any, and then to the unpaid principal balance of the obligation.

**25. TRUST FUNDS** - Principal and Indemnitors agree and expressly declare that all funds due or to become due under any Bonded Contract are trust funds, whether in the possession of Principal or another and whether designated trust funds or not, for the benefit and payment of all persons to whom Principal incurs obligations in the performance of such contract, for which Surety may be liable under any Bond. If Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds.

**26. HOMESTEAD** - To the extent permitted by applicable law, the Principal and Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory or possession.

**27. SURETIES** - In the event the Surety procures the execution of any Bond by other sureties, or executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsurers, then all the terms and conditions of this Agreement shall inure to the benefit of such Sureties, co-sureties and reinsurers, their successors and assigns, as their interests may appear.

**28. SUITS** - The Surety may bring separate suits under this Agreement as causes of action accrue, and the bringing of suit or the recovery of judgment upon a cause of action shall not bar, prejudice or preclude the Surety's bringing other suits upon other causes of action, whether theretofore or thereafter arising. Surety may enforce this Agreement against any Indemnitor without the necessity of first proceeding against any Principal or other Indemnitor.

**29. JURISDICTION -** As to any legal action related to this Agreement, Principal and Indemnitor consent to the general jurisdiction of any state or federal court of the United States or its territories having proper subject matter

jurisdiction or in any court of the United States in which a claim may be brought against the Surety under any of the Bonds, at the sole discretion of the Surety.  Principal and Indemnitors waive any claim or defense in any such action based on alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

**30. JURY WAIVER** - Principal and Indemnitors hereby expressly waive any right to a trial by jury with respect to any legal proceeding arising under this Agreement.

**31. CURRENCY EXCHANGE** - Should the Surety, when making a payment or incurring any expense directly or indirectly related to the Bond, expend funds in any currency other than U.S. Dollars, then Indemnitors shall either reimburse the Surety in U.S. Dollars equal to the amount expended by the surety at the time the foreign currency was purchased or shall defray the cost of any exchange variation, thereby indemnifying the Surety for any decrease in the valuation of the currency purchased.

**32. NOTICE OF SERVICE -** Notice of Service made by U. S. Mail or by FAX to the last known address constitutes service whether or not received.

**33. ADDRESS FOR NOTICES** - All notices required to be given by Indemnitors under this Agreement shall be sent by registered mail to Arch Insurance Company, 3 Parkway, Suite 1500, Philadelphia, PA 19102 USA and shall include a copy of this Agreement attached thereto.

**34. OTHER INDEMNITY** – This Agreement incorporates, as if set forth at length herein, any duly executed amendments relating to any one or more Indemnitors, Principals and/or entities acquired, whether such amendments are executed contemporaneously with the signing of this Agreement or from time to time in the future.  The Indemnitors and/or Principals shall continue to remain bound under the terms of this Agreement, and any other agreements containing indemnity obligations in connection with the execution or procurement of the Bonds, even though the Surety may  from time to time heretofore or hereafter, with or without notice to or knowledge of the Indemnitors and/or Principals, accept  release or reduce any indemnity obligations or collateral of current or future Indemnitors and/or Principals for any reason. The Indemnitors and/or Principals expressly waive notice from the Surety of any such action and, furthermore, it is explicitly understood and agreed by the Indemnitors and/or Principals that any and all other rights which the Surety may have or acquire against the Indemnitors and/or Principals and/or others under any such other or additional agreements or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.  No Indemnitor shall make any defense to the enforcement of this Agreement based on the execution of other agreements or related to the addition or release of any Indemnitor, and each Indemnitor explicitly confirms its joint and several liability for Bonds issued by the Surety as provided in this Agreement.  The Indemnitors and/or Principals also waive and subordinate all rights of indemnity, subrogation and contribution against each other until all obligations to the Surety under this Agreement, at law or in equity, have been satisfied in full.

**35. SUBORDINATION OF INDEMNITORS** - The Indemnitors shall have no rights of indemnity or contribution against the Principal or its property until the Principal's obligations to the Surety under this Agreement have been satisfied in full.

**36.  REPRESENTATIONS** - Indemnitors represent and warrant to Surety that (i) they have carefully read and understand this entire Agreement; (ii) they have had the opportunity to review and discuss it with an attorney of their choosing; (iii) there are no other agreements, understandings or representations made by or on behalf of Surety which would diminish or modify the Indemnitors' obligations or Surety's rights set forth herein; (iv) that this Agreement shall be in addition to and shall not constitute a novation of or revoke or rescind any prior agreements of indemnity executed by an Indemnitor and that Surety's rights under such agreements are cumulative.

**37.  GENERAL PROVISIONS** - (i) This Agreement sets forth unilateral undertakings of Indemnitors only upon which Surety may rely in considering whether to execute Bonds on behalf of any Principal.  Indemnitors acknowledge that Surety is not required to execute this Agreement in order to enforce it; (ii) All references in this Agreement in the singular shall include the plural and vice versa, and all references to a gender shall include all genders.

**38. MODIFICATIONS** - This Agreement, and the rights and remedies of Surety hereunder may not be waived, challenged or modified orally. No change or modification shall be effective unless made by written amendment executed to form a part hereof.

**IN WITNESS WHEREOF,** the Indemnitors have caused this Agreement to be executed by their respective duly authorized representatives this _____ day of _____ , 20____.

**Witness/ Attest**

_____
(Name of Witness)

_____
(Name of Witness)

_____
(Name of Witness)

_____
(Name of Witness)

Principal/Indemnitor: R/J Builders, Inc. / Platinum construction Inc. as a Joint Venture

By: _____
Print Name: John Louis Basso
Its: President
SSN/Tax I.D. No.: _____
Address: _____

(seal)

PLEASE SEE NOTARIAL SEAL ON THE ATTACHMENT

08.14.2017

Principal/Indemnitor: Platinum Construction, Inc.

By: _____
Print Name: Lutfi Bustami
Its: President and Corporate Secretary
Tax I.D. No.: _____
Address: _____

(seal)

Principal/Indemnitor: USS Cal Builders, Inc.

By: _____
Print Name: Allen Othman
Its: President
Tax I.D. No.: _____
Address: _____

(seal)

Principal/Indemnitor: USS Cal Builders, Inc.

By: _____
Print Name: Eric Othman
Its: Corporate Secretary
Tax I.D. No.: _____
Address: _____

(seal)

_(Name of Witness)_

Indemnitor: John Louis Basso

By: _____

Print Name: John Louis Basso

Its: Individual

SSN/Tax I.D. No.: _____

Address: _____

_____

(seal)

PLEASE SEE NOTARIAL SEAL ON THE ATTACHMENT

08. 14-2017

_(Name of Witness)_

Indemnitor: Roxanne Basso

By: _____

Print Name: Roxanne Basso

Its: Individual

SSN/Tax I.D. No.: _____

Address _____

_____

(seal)

PLEASE SEE NOTARIAL SEAL ON THE ATTACHMENT

08. 14-2017

_(Name of Witness)_

Indemnitor: Lutfi Bustami

By: _____

Print Name: Lutfi Bustami

Its: Individual

SSN/Tax I.D. No.: _____

Address: _____

(seal)

_(Name of Witness)_

Indemnitor: Line Alghannam

By: _____

Print Name: Line Alghannam

Its: Individual

SSN/Tax I.D. No.: _____

Address: _____

(seal)

_(Name of Witness)_

Indemnitor: JJ Zhang

By: _____

Print Name: JJ Zhang

Its: Individual

SSN/Tax I.D. No.: _____

Address: _____

(seal)

(Name of Witness) Philip Vega

Indemnitor: Loretta Wu

By:

Print Name: Loretta Wu

Its: Individual

SSN/Tax I.D. No.:

Address:

(seal)

\* see Attachment- Notery

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                          CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
> document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                                    )
County of __ORANGE_____                  )

On __08/14/2017_____ before me, ___MERVIN C. LORICO, NOTARY PUBLIC_____,
        *Date*                                        *Here Insert Name and Title of the Officer*

personally appeared _____ALLEN OTHMAN_____
                                        *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws
of the State of California that the foregoing paragraph
is true and correct.

WITNESS my hand and official seal.

> MERVIN C. LORICO
> COMM. #2149612
> Notary Public - California
> Orange County
> My Comm. Expires Apr. 19, 2020

Signature _____
                    *Signature of Notary Public*

                    *Place Notary Seal Above*
———————————————————— **OPTIONAL** ————————————————————
*Though this section is optional, completing this information can deter alteration of the document or*
*fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: __GIA_____
Document Date: ___08/14/2017_____ Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| | |
|---|---|
| Signer's Name: _____ | Signer's Name: _____ |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited  ☐ General | ☐ Partner — ☐ Limited  ☐ General |
| ☐ Individual       ☐ Attorney in Fact | ☐ Individual       ☐ Attorney in Fact |
| ☐ Trustee       ☐ Guardian or Conservator | ☐ Trustee       ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2016 National Notary Association · www.NationalNotary.org · 1-800-US NOTARY (1-800-876-6827)   Item #5907

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**       **CIVIL CODE § 1189**

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
|---|

State of California                                   )
County of __ORANGE__                        )

On ___08/14/2017___ before me, ___MERVIN C. LORICO, NOTARY PUBLIC___,
      *Date*                                        *Here Insert Name and Title of the Officer*

personally appeared ___ERIC OTHMAN___
                               *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> MERVIN C. LORICO
> COMM. #2149612
> Notary Public · California
> Orange County
> My Comm. Expires Apr. 19, 2020

Signature _____
              *Signature of Notary Public*

*Place Notary Seal Above*
——————————— **OPTIONAL** ———————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: ___GIA___
Document Date: ___18/14/2017___                      Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2016 National Notary Association · www.NationalNotary.org · 1-800-US NOTARY (1-800-876-6827) Item #5907

# California All-Purpose Certificate of Acknowledgment

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los Angeles_ } s.s.

On _August 14 2017_ before me, _DENEB A CRAVIOTO NOTARY PUBLIC_,
<span>Name of Notary Public, Title</span>

personally appeared _JOHN LOUIS BASEO_
<span>Name of Signer (1)</span>

_____
<span>Name of Signer (2)</span>

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

> DENEB A. CRAVIOTO
> Notary Public - California
> Los Angeles County
> Commission # 2174830
> My Comm. Expires Dec 8, 2020

Seal

—————————————— OPTIONAL INFORMATION ——————————————

*Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.*

## Description of Attached Document

The preceding Certificate of Acknowledgment is attached to a

document titled/for the purpose of _____

_____

containing _____ pages, and dated _____.

The signer(s) capacity or authority is/are as:

- ☐ Individual(s)
- ☐ Attorney-in-fact
- ☐ Corporate Officer(s) _____
  <span>Title(s)</span>

  _____

- ☐ Guardian/Conservator
- ☐ Partner - Limited/General
- ☐ Trustee(s)
- ☐ Other: _____

representing: _____
<span>Name(s) of Person(s) Entity(ies) Signer is Representing</span>

### Additional Information

Method of Signer Identification

Proved to me on the basis of satisfactory evidence:

☐ form(s) of identification   ☐ credible witness(es)

Notarial event is detailed in notary journal on:

Page # _____   Entry # _____

Notary contact: _____

Other

☐ Additional Signer   ☐ Signer(s) Thumbprints(s)

☐ _____

© 2009-2015 Notary Learning Center – All Rights Reserved     You can purchase copies of this form from our web site at www.TheNotarysStore.com

# California All-Purpose Certificate of Acknowledgment

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _In angeles_                                    s.s.

On _August 14 2017_ before me, _DENEB A CRAVIOTO NOTARY PUBLIC_,
                                    Name of Notary Public, Title

personally appeared _ROXANNE BASSO_
                                    Name of Signer (1)

_____
Name of Signer (2)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

DENEB A. CRAVIOTO
Notary Public - California
Los Angeles County
Commission # 2174830
My Comm. Expires Dec 8, 2020

Seal

──────────────── OPTIONAL INFORMATION ────────────────

*Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.*

## Description of Attached Document

The preceding Certificate of Acknowledgment is attached to a

document titled/for the purpose of _____

_____,

containing _____ pages, and dated _____.

The signer(s) capacity or authority is/are as:

☐ Individual(s)
☐ Attorney-in-fact
☐ Corporate Officer(s) _____
                                    Title(s)

_____

☐ Guardian/Conservator
☐ Partner - Limited/General
☐ Trustee(s)
☐ Other: _____

representing: _____
                    Name(s) of Person(s) Entity(ies) Signer is Representing

### Additional Information

Method of Signer Identification

Proved to me on the basis of satisfactory evidence:

☐ form(s) of identification  ☐ credible witness(es)

Notarial event is detailed in notary journal on:

Page # _____ Entry # _____

Notary contact: _____

Other

☐ Additional Signer  ☐ Signer(s) Thumbprints(s)

☐ _____

© 2009-2015 Notary Learning Center - All Rights Reserved      You can purchase copies of this form from our web site at www.TheNotarysStore.com

# ALL- PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California _____ }

County of Los Angeles _____ }

On 10th August 2017 before me, Pradip V. Patel Notary Public
(Here insert name and title of the officer)

personally appeared J.J. Zhang _____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public Signature _____ (Notary Public Seal)

PRADIP V. PATEL
COMM. #2155464
Notary Public - California
LOS ANGELES COUNTY
My Comm. Exp. Jun. 28, 2020

---

## ADDITIONAL OPTIONAL INFORMATION

DESCRIPTION OF THE ATTACHED DOCUMENT

General Indemnity
(Title or description of attached document)

Agreement
(Title or description of attached document continued)

Number of Pages _____ Document Date 08/10/17

CAPACITY CLAIMED BY THE SIGNER
- ☑ Individual (s)
- ☐ Corporate Officer

_____
(Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

www.NotaryClasses.com 800-873-9865

### INSTRUCTIONS FOR COMPLETING THIS FORM
*This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgents from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

# ALL- PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                    }

County of __Los Angeles__    }

On 10 August 2017 before me, Pradip V. Patel Notary Public
(Here insert name and title of the officer)

personally appeared __Loretta Wu.__

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public Signature                    (Notary Public Seal)

PRADIP V. PATEL
COMM. #2155464
Notary Public - California
LOS ANGELES COUNTY
My Comm. Exp. Jun. 28, 2020

---

## ADDITIONAL OPTIONAL INFORMATION

DESCRIPTION OF THE ATTACHED DOCUMENT

General Indemnity
(Title or description of attached document)

Agreement
(Title or description of attached document continued)

Number of Pages _____ Document Date 08|10|17

CAPACITY CLAIMED BY THE SIGNER
☑ Individual (s)
☐ Corporate Officer

_____
(Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM

*This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
  ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

# ALL- PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California  }

County of Los Angeles  }

On 10 August 2017 before me, Pradip V. Patel Notary Public
(Here insert name and title of the officer)

personally appeared Lutfi Mustafa Bustami ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public Signature                    (Notary Public Seal)

> PRADIP V. PATEL
> COMM. #2155464
> Notary Public - California
> LOS ANGELES COUNTY
> My Comm. Exp. Jun. 28, 2020

---

## ADDITIONAL OPTIONAL INFORMATION

DESCRIPTION OF THE ATTACHED DOCUMENT

General Indemnity
(Title or description of attached document)

Agreement
(Title or description of attached document continued)

Number of Pages _____ Document Date 08 / 10 / 17

CAPACITY CLAIMED BY THE SIGNER
☒ Individual (s)
☐ Corporate Officer

_____
(Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

www.NotaryClasses.com 800-873-9865

## INSTRUCTIONS FOR COMPLETING THIS FORM

This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

## CALIFORNIA ALL-PURPOSE
## CERTIFICATE OF ACKNOWLEDGMENT
### (CALIFORNIA CIVIL CODE § 1189)

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )

COUNTY OF Orange )

On 14 August 201 before me, Shane William Houston, Notary Public
(Date)                    (Here Insert Name and Title of the Officer)

personally appeared Line Alghannam

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SHANE WILLIAM HOUSTON
Notary Public - California
Orange County
Commission # 2160217
My Comm. Expires Jul 18, 2020

Signature of Notary Public                    (Notary Seal)

_____ADDITIONAL OPTIONAL INFORMATION_____

**Description of Attached Document**

Title or Type of Document: General Idemnity Agreement  Document Date: 14 August 2017

Number of Pages: 10  Signer(s) Other Than Named Above: None

Additional Information: None

EXHIBIT J

| Principal Name | Bond Number | Bond Amount | Bond Description | Obligee Name |
|---|---|---|---|---|
| Caliba, Inc. | SU 1131726-0000 | 15000 | Caliba- Contractors License Bond license No. 657694 | California Contractors License Board |
| Caliba, Inc. | SU 1145417-0000 | 61000 | 7 Pacific Wave Circle, Dana Point, CA; Precise | City of Dana Point |
| Calpromax Engineering, Inc. | SU 1145463-0000 | 318140 | Traffic Signal Installation at Jackson Avenue & Allison Avenue/Murrieta Plaza; City Project 16- | City of Murrieta |
| Calpromax Engineering, Inc. | SU 1146803-0000 | 719220 | Washington BL at Garfield AV/Yates AV & Garfield AV at Yates AV/Malt AV Sidewalk & Traffic Signal Federal Aid Project #HSIP- | City of Commerce |
| Calpromax Engineering, Inc. | SU 1146820-0000 | 151466 | Contract 12A1697 State Hwy in OC, City of Laguna Beach, Intersection of SR-1 & Brooks | California Department of Transportation |
| Calpromax Engineering, Inc. | SU 1146823-0000 | 567790 | Pedestrian Countdown Head Improvements Traffic Signal Modificatios Highway 111 El | City of Perris |
| Calpromax Engineering, Inc. | SU 1147695-0000 | 229900 | Dorado Drive; Project No. 92-15B | City of Indian Wells |
| Calpromax Engineering, Inc. | SU 1148759-0000 | 92000 | Villa Real Drive SCE Service Undergrounding; Bid No: 178-12; Project No. SP-4016 | City of Orange |
| Calpromax Engineering, Inc. | SU 1150408-0000 | 639464 | Pacific Electric Trail Safety Enhancements & Green Bike Lane Along Base Line Road; Contract | City of Rancho Cucamonga |
| Calpromax Engineering, Inc. | SU 1150413-0000 | 737887 | Shorecliffs Middle School Safe Routes to School Pedestrian & Bicycle; Project No. 17327 | City of San Clemente |
| Calpromax Engineering, Inc. | SU 1151926-0000 | 199400 | Contract No. 12A1733; Additional Lighting to Improve Safety During Dark Hours 5 Freeway El | California Department of Transportation |
| Calpromax Engineering, Inc. | SU 1151927-0000 | 198822 | Contract 12A1738 City of Laguna Beach Route 1; 17th Street & Route 133 Laguna Festival Arts | California Department of Transportation |
| CLS Constructors Inc. | SU 1125176-0000 | 99176 | Little Lake Elementary (3) Classroom Relocatable Replacement | Hemet Unified School District |
| CLS Constructors Inc. | SU 1127128-0000 | 850000 | Chaparral & Temecula Valley HS Stadium Improvements Category No. 013-Concrete Bid | Temecula Valley Unified School District |
| CLS Constructors Inc. | SU 1127210-0000 | 412786 | Project No. PW14-07 Citywide Concrete Repairs Fiscal Year 2014-15 | City of Temecula |
| CLS Constructors Inc. | SU 1127230-0000 | 315505 | Pedestrian Accessibilty Phase III Project | City of Placentia |

| | | | | |
|---|---|---|---|---|
| CLS Constructors Inc. | SU 1127232-0000 | 900011 | Auditorium Improvements at Polytechnic High School Long Beach USD); Contract No. 113-009A; (Sub) Pinner Cost Code No. 3300 | Pinner Construction Co., Inc. |
| CLS Constructors Inc. | SU 1131727-0000 | 576500 | Bid No. 145-32;SP No 3905 Concrete Street Rehabilitation at Various Locations | City of Orange |
| CLS Constructors Inc. | SU 1131772-0000 | 130000 | Chaparral & Temecula Valley HS Miscellaneous Improvements | Temecula Valley Unified School District |
| CLS Constructors Inc. | SU 1131803-0000 | 184330 | FY 2015-2016 City Wide Curb, Gutter and Sidewalk Repair; Bid No. 7336 | City of Riverside |
| CLS Constructors Inc. | SU 1131892-0000 | 4645000 | Business & Computer Technology (New Construction & Language Learning Center Building Expansion) - Concrete BC 03 Bid No. | Mt. San Antonio Community College District |
| CLS Constructors Inc. | SU 1131908-0000 | 1630000 | Chaffey High School Building E Replacement - Work Category 15/16/-011-03 Concrete Site & | Chaffey Joint Union High School District |
| CLS Constructors Inc. | SU 1143803-0000 | 829000 | Sherman E. Burroughs High School-BP 027-70/Concrete Site Work ; D.O.D. Modernization | Sierra Sands Unified School Dist |
| Coatto Motorsports, LLC | SU 1131722-0000 | 50000 | CA Motor Vehicle Dealer | California Department of Motor Vehicles |
| MFS Framing and Drywall, Inc. | SU 1141235-0000 | 15000 | CA Contractor's License No. 1010623 | California Contractors License Board |
| Oklan, LLC | SU 1102333-0000 | 18800 | Subdivision Tax | County of Orange |
| Platinum Construction, Inc. | SU 1125170-0000 | 297543 | Mary Putnam Hench Intermediate School Modernization Phase 3 Metal Stud/Drywall, Subcontract #4579; Job #235014 Lytle Creek | Rim of The World Unifed School District |
| Platinum Construction, Inc. | SU 1127126-0000 | 560000 | Elementary School Metal Studs & Drywall | Robert Clapper Construction Services |
| Platinum Construction, Inc. | SU 1127135-0000 | 290000 | Project No. 3430 Lake Center Middle School & Lakeside Middle School Penetration Firestopping, Metal Support Metal Framing & | Erickson-Hall Construction Co. |
| Platinum Construction, Inc. | SU 1127145-0000 | 1352450 | Crafton Hills College-Occupational Building-2 Building (OE-2) Metal Stud Framing; Subcontract | Sinanian Development, Inc. |
| Platinum Construction, Inc. | SU 1127146-0000 | 1351572 | Subcontract No. 3424-3-23 Whole Site Modernization, New Theatre Building & Interim Housing at Patrick Henry High School, San Diego, | T.B. Penick & Sons, Inc. |

| | | | | |
|---|---|---|---|---|
| Platinum Construction, Inc. | SU 1127159-0000 | 2754216 | Project No. 01.14084.3 Rancho Campana High | S.C. Anderson, Inc. |
| | | | Project No. 13-14/014; Horace Mann School | |
| | | | New Classroom Building - Beverly Hills USD: 19: | ProWest PCM, Inc. dba ProWest |
| Platinum Construction, Inc. | SU 1127166-0000 | 3464400 | Glass Fiber Cement; 24: Fireproofing/30 | Constructors |
| | | | Subcontract No. 3432-1-20; P-72808 Medical | |
| | | | Clinic Replacement Marine Corps Air Ground | |
| Platinum Construction, Inc. | SU 1127171-0000 | 1224000 | Combat Center - Metal Stud Framing, Drywall, | T.B. Penick & Sons, Inc. |
| | | | NCI Project No, 2127 Chime Charter School | |
| Platinum Construction, Inc. | SU 1127202-0000 | 654875 | Expansion, Metal Framing, Drywall, Plaster | Novus Construction |
| Platinum Construction, Inc. | SU 1127216-0000 | 60000 | UCLA-Dentistry 43-033 Laboratory Renovation | Novus Construction |
| | | | Subcontract 3443-08 Fanning Elementary School | |
| Platinum Construction, Inc. | SU 1127217-0000 | 122941 | Non Structural Metal Framing - Brea Olinda | Erickson-Hall Construction Co. |
| | | | Heritage Fields K8 School Bid Package #08; | |
| Platinum Construction, Inc. | SU 1131702-0000 | 1492129 | Insulation, Drywall, Lath, Plaster, Caulking & | Irvine Unified School District |
| | | | Subcontract No. 113003-0038; Project No. H- | |
| | | | 113003-00 UCSB San Joaquin Apartments & | |
| Platinum Construction, Inc. | SU 1131749-0000 | 1048000 | Improvements - Plaster Systmes & Air Barriers | Harper Construction Co., Inc. |
| | | | Subcontract No. 113003-0037; Project No. H- | |
| | | | 113003-00 UCSB San Joaquin Apartments & | |
| Platinum Construction, Inc. | SU 1131750-0000 | 2379000 | Improvements - Gypsum Board Assemblies | Harper Construction Co., Inc. |
| | | | Subcontract No. 14608-018; BCI Job No. 14608; | |
| | | | Crest Apartments-Plaster, 13604 Sherman Way, | |
| Platinum Construction, Inc. | SU 1131756-0000 | 684176 | Van Nuys, CA 914056 | Benchmark Contractors Inc |
| | | | Subcontract 3509-11; Torrey Pines High School | |
| | | | Building B North - Penetration Fire Stopping, Fire | |
| Platinum Construction, Inc. | SU 1131761-0000 | 437000 | Resistive Joint System, Joint Sealants Non | Erickson-Hall Construction Co. |
| Platinum Construction, Inc. | SU 1131863-0000 | 15000 | CA Contractor's License No. 870864 | California Contractors License Board |
| | | | NCI Project No. 2129 South Whittier Community | |
| | | | Resource Center Bid#CDC15-005; Metal | |
| Platinum Construction, Inc. | SU 1131874-0000 | 174653 | Framing, Weather Barrier, Plaster, Drywall | Novus Construction |
| | | | NC Project No. 2130; UCLA - RRUMC Emergency | |
| Platinum Construction, Inc. | SU 1131886-0000 | 132000 | Department Expansion; UCLA Project No. | Novus Construction |

| | | | | |
|---|---|---|---|---|
| Platinum Construction, Inc. | SU 1131918-0000 | 846592 | Subcontract No. 15-006-24; CCI HCFIP-Tehachapi Healthcare Facility Improvement Program Browning High School Metal Stud Framing, | Bowe Contractors, Inc. |
| Platinum Construction, Inc. | SU 1139745-0000 | 788000 | Drywall Lath & Plaster; Subcontract No. 3497-3-21st Century Library & Community Learning Center & Heritage Plaza Arboretum; Metal Stud | T.B. Penick & Sons, Inc. |
| Platinum Construction, Inc. | SU 1139789-0000 | 3568252 | Framing, Drywall, Lath & Plaster; Subcontract Wilson Auditorium Boiler & ADA; Subcontract | T.B. Penick & Sons, Inc. |
| Platinum Construction, Inc. | SU 1141243-0000 | 947900 | No. 3415-15; Owner: Long Beach USD Subcontract for LADOT New & Existing Bus | 2H Construction |
| Platinum Construction, Inc. | SU 1142535-0000 | 972996 | Maintenance Facility Metal Framing & Drywall Geffen Academy at UCLA Campus, Metal Stud,Framing, Drywall, Taping, Acoustical Ceiling; | Sinanian Development, Inc. |
| Platinum Construction, Inc. | SU 1145429-0000 | 1623417 | Subcontract No. 716015.2-05 Porter Ranch Community School (LAUSD) Lath, Plaster, Studs, Drywall, Sheathing, | BNBuilders Inc. |
| Platinum Construction, Inc. | SU 1145430-0000 | 940000 | Waterproofing Membrane; Subcontract Project Weingart Center Improvements; Elevator Freight Systems; New Water Heating system; Hand | SJ Amoroso Construction Co. Inc. |
| R/J Builders, Inc./Platinum Construction, Inc as A JV | SU 1145433-0000 | 1320875 | Blowers; Security Key System for Elevators; CA Contractors License/APP Fee No. | Weingart Center Association |
| RAMI Designs & USS Cal Builders, Inc. | SU 1141248-0000 | 15000 | 20160102757 S/C No. 14803-Job No. 1536; Foothills Middle | California Contractors License Board |
| Stanton Utilities, Inc. | SU 1121215-0000 | 178500 | School Campus Alterations - Arcadia USD Business & Computer Technology (New construction & Language Learning Center | Bernards Bros., Inc. |
| Stanton Utilities, Inc. | SU 1131906-0000 | 2537000 | Building Expansion) - Plumbing BC 18; Bid No. Business & computer Technology (New Construction & Language Learning Center | Mt. San Antonio Community College District |
| Stanton Utilities, Inc. | SU 1131907-0000 | 3511000 | Building Expansion) - Mechanical HVAC BC 20 Bid Burroughs High School Modernization - Project | Mt. San Antonio Community College District |
| Stanton Utilities, Inc. | SU 1137980-0000 | 906000 | Number 220002 Bid Package 01110.16 - | Sierra Sands Unified School Dist |

| | | | | |
|---|---|---|---|---|
| | | | Patton State Hospital; HVAC for Construction of New Main Kitchen, Contract No. 121-049; Pinner Subcontract Cost Code No. 15500 | |
| Stanton Utilities, Inc. | SU 1137989-0000 | 3580000 | | Pinner Construction Co., Inc. |
| Stanton Utilities, Inc. | SU 1138001-0000 | 1220000 | Contract No. 120-020; Pinner Subcontract Cost Code No.15400; Katella High School DROPS - Site Improvement (District Project No. RFQ/RFP | Pinner Construction Co., Inc. |
| Stanton Utilities, Inc. | SU 1143769-0000 | 2072588 | SDUSD Innovation MS Modernization; 5095 Arvinels Avenue, San Diego, CA  HVAC, Plumbing, Site Utilities; Subcontract #4700077127 | Turner Construction |
| Top End Constructors International, a Joint Venture | SU 1119685-0000 | 15000 | CA Contractors License No. 983680 | California Contractors License Board |
| Top End Constructors International, a Joint Venture | SU 1143787-0000 | 127300 | LAX Terminal 2 & 3 Redevelopment Program; Project No. 113554; (Sub) Contract No. 42733 - Product 096623 Epoxy Terrazzo | Clark/McCarthy, a Joint Venture |
| USS Cal Builders INT'L, Inc. | SU 1125173-0000 | 15000 | CA Contractor's License - 20120108202 | California Contractors License Board |
| USS Cal Builders INT'L, Inc. | SU 1131725-0000 | 15000 | CA Contractor's License | California Contractors License Board |
| USS Cal Builders International, Inc. | SU 1127144-0000 | 15000 | CA Contractor's License No. 995325 | California Contractors License Board |
| USS Cal Builders, Inc. | SU 1017232-0000 | 3000 | Labor Bond | Southern California Plastering Institute |
| USS Cal Builders, Inc. | SU 1017233-0000 | 5481000 | City of Vernon, Fire Station Number 2 Replacement. Contract No. 582 | City of Vernon |
| USS Cal Builders, Inc. | SU 1017235-0000 | 7578000 | Cypress College-Piazza Infrastructure Repair | North Orange County Community College District |
| USS Cal Builders, Inc. | SU 1017241-0000 | 1196000 | Orange Coast College Fitness Center | Coast Community College District |
| USS Cal Builders, Inc. | SU 1017242-0000 | 9436750 | Contract No.06P21, student services administration building, bid no. 06P21 | Chaffey Community College District |
| USS Cal Builders, Inc. | SU 1017245-0000 | 11286000 | Modernization of West Covina High School | West Covina Unified School District |
| USS Cal Builders, Inc. | SU 1017247-0000 | 504480 | Modernization of Lexington Junior High School | Anaheim Union School District |

| Company | Number | Amount | Description | Entity |
|---|---|---|---|---|
| USS Cal Builders, Inc. | SU 1017250-0000 | 1486000 | Soccer Field Improvements | Rancho Santiago Community College District |
| USS Cal Builders, Inc. | SU 1017421-0000 | 597000 | HVAC Replacement-MP Building | Fullerton School District |
| USS Cal Builders, Inc. | SU 1017425-0000 | 658000 | Rough Carpentry and Framing at Sandburg | Glendora Unified School District |
| USS Cal Builders, Inc. | SU 1017426-0000 | 4296000 | Valley High School Modernization | Santa Ana Unified School District |
| USS Cal Builders, Inc. | SU 1017427-0000 | 3692000 | New Construction of Library and Learning Center | City of Highland |
| USS Cal Builders, Inc. | SU 1017428-0000 | 906000 | Class Room Refurbishing-Electrical & Plumbing | Coast Community College District |
| USS Cal Builders, Inc. | SU 1017429-0000 | 196000 | Fullerton School District Tackboard Replacement at Arcadia School | Fullerton School District |
| USS Cal Builders, Inc. | SU 1017432-0000 | 78000 | Katella High School Expansion | Anaheim Union School District |
| USS Cal Builders, Inc. | SU 1017433-0000 | 592000 | Arroyo Student Housing, Stairs & Railings | University of California-Riverside |
| USS Cal Builders, Inc. | SU 1017434-0000 | 832000 | Arroyo Student Housing, Structural & | University of California-Riverside |
| USS Cal Builders, Inc. | SU 1017436-0000 | 498000 | Fullerton School District MP Buildings | Fullerton School District |
| USS Cal Builders, Inc. | SU 1017437-0000 | 984000 | Commons Expansion Main Building | University of California-Riverside |
| USS Cal Builders, Inc. | SU 1017439-0000 | 2132000 | Emmerton II-BP#9 Construction | San Bernardino City Unified School District |
| USS Cal Builders, Inc. | SU 1017440-0000 | 968000 | College of Education Building-Bid Pkg. #5 | Douglas E. Barnhart, Inc. |
| USS Cal Builders, Inc. | SU 1017534-0000 | 99400 | Arroyo Student Housing | University of California-Riverside |
| USS Cal Builders, Inc. | SU 1017535-0000 | 198600 | Arroyo Student Housing | University of California-Riverside |
| USS Cal Builders, Inc. | SU 1017536-0000 | 18194000 | Costa Mesa Police Facility Expansion and | City of Costa Mesa |
| USS Cal Builders, Inc. | SU 1017539-0000 | 188000 | Landscaping & Irrigation Repair at football field | Compton Unified School District |
| USS Cal Builders, Inc. | SU 1017540-0000 | 1322000 | Geology and Physics Renovations | University of California-Riverside |
| USS Cal Builders, Inc. | SU 1017541-0000 | 578000 | San Marino Library Repairs | City of San Marino Parks & Public Works Department |
| USS Cal Builders, Inc. | SU 1017542-0000 | 3244000 | Vina Danks & Wiltsey Middle School Modernization Project no. AB40 AB44 | Ontario-Monclair School District |
| USS Cal Builders, Inc. | SU 1017543-0000 | 2792000 | IVC Business Technology Center @ Irvine Valley College | South Orange County Community College District |
| USS Cal Builders, Inc. | SU 1017545-0000 | 11985000 | South Los Angeles Fire Station #64 | City of Los Angeles |
| USS Cal Builders, Inc. | SU 1017686-0000 | 768000 | Creekside Education Center, Phase 1 | Irvine Unified School District |
| USS Cal Builders, Inc. | SU 1017687-0000 | 2764000 | Valley High School Aquatic Center Modernization | Santa Ana Unified School District |
| USS Cal Builders, Inc. | SU 1017692-0000 | 2294000 | New Restroom Construction | Magnolia School District |
| USS Cal Builders, Inc. | SU 1017693-0000 | 1287000 | Foothill High School Modernization | Tustin Unified School District |

| | | | | |
|---|---|---|---|---|
| USS Cal Builders, Inc. | SU 1017694-0000 | 22127000 | Anaheim School Expansion | Anaheim Union School District |
| USS Cal Builders, Inc. | SU 1017695-0000 | 538000 | Renovations at El Toro H.S. | Saddleback Valley Unified School District |
| USS Cal Builders, Inc. | SU 1017696-0000 | 10787000 | Reopening of Enadia Way E.S. | Los Angeles Unified School District |
| USS Cal Builders, Inc. | SU 1017697-0000 | 495000 | Kindergarden Restroom Upgrades-Multiple | Fullerton School District |
| USS Cal Builders, Inc. | SU 1017698-0000 | 198379 | HVAC Improvements for Coaches Offices-Ladera Vista H.S., Nicolas J.H.S. & Parks J.H.S. | Fullerton School District |
| USS Cal Builders, Inc. | SU 1017700-0000 | 6978000 | Yorba Linda High School-General Construction | Placentia - Yorba Linda Unified School District |
| USS Cal Builders, Inc. | SU 1017917-0000 | 773400 | Laguna Hills H.S. Modernization | Saddleback Valley Unified School District |
| USS Cal Builders, Inc. | SU 1017925-0000 | 278000 | Mountain View T.I. | Santa Ana Unified School District |
| USS Cal Builders, Inc. | SU 1017930-0000 | 38582000 | Upgrade New Education Central Plant & New Building | Los Angeles Community College District |
| USS Cal Builders, Inc. | SU 1017934-0000 | 209568 | Release of Stop Notice | North Orange County Community College District |
| USS Cal Builders, Inc. | SU 1017939-0000 | 13750 | Stop Notice Bond, Rock Hard Concrete | Santa Ana Unified School District |
| USS Cal Builders, Inc. | SU 1018184-0000 | 17949000 | Contract No. 4907-0039 Project No. TM070039 California State University Corporation Yard-New Construction at | Trustees of the California State University Los Angeles |
| USS Cal Builders, Inc. | SU 1018185-0000 | 4723000 | Contract No DSA19-6DPS Animo Venice Charter High School | Green Dot Public Schools |
| USS Cal Builders, Inc. | SU 1018188-0000 | 13984000 | The Franklin Hall Modernization | Los Angeles Community College District |
| USS Cal Builders, Inc. | SU 1018189-0000 | 41986000 | Los Angeles Trade Technical College, Contract#70529 | Los Angeles Community College District |
| USS Cal Builders, Inc. | SU 1037810-0000 | 515087 | Stop Notice Bond, Rock Hard Concrete-Anaheim Union High School District | Anaheim Union School District c/o |
| USS Cal Builders, Inc. | SU 1037811-0000 | 35421 | Release of Stop Notice- Rock Hard Concrete | Tustin Unified School District |
| USS Cal Builders, Inc. | SU 1037848-0000 | 587614 | Release Money Withheld on a Stop Notice Rock Hard Concrete | County of Los Angeles |
| USS Cal Builders, Inc. | SU 1038028-0000 | 392000 | Orange Coast College softball field renovation | Coast Community College District |
| USS Cal Builders, Inc. | SU 1038029-0000 | 2992000 | Site work & Athletic Field of Redondo Union H.S. | Redondo Beach Unified School District |

| | | | | |
|---|---|---|---|---|
| USS Cal Builders, Inc. | SU 1038032-0000 | 1369000 | Ocean View HS Stadium Improvements, Restroom Addition, Select Renovations & East | Huntington Beach Union High School District |
| USS Cal Builders, Inc. | SU 1038034-0000 | 1189500 | LACC Bakery/Central Plant Bldg.No.2-Claimant Construction Steel Works, Inc. | Los Angeles Community College District |
| USS Cal Builders, Inc. | SU 1102335-0000 | 1109000 | Replacement of existing cooling plant | Los Angeles Unified School District |
| USS Cal Builders, Inc. | SU 1103281-0000 | 2975000 | Contract No. C-2007 Modification of Sunline's Maintenance Facility | Sunline Transit Agency |
| USS Cal Builders, Inc. | SU 1103282-0000 | 1978000 | Project No. 20-09-061-1.2 Santa Ana USD Critically Overcrowded Schools (COS) | Santa Ana Unified School District |
| USS Cal Builders, Inc. | SU 1119678-0001 | 640581 | SSFUSD Modular projects-Modular Replacement Phase 1- Baden High School | South San Francisco Unified School District |
| USS Cal Builders, Inc. | SU 1119678-0002 | 3928425 | SSFUSD Modular Projects-Modular Replacement Phase 1 - Monte Verde Elementary School | South San Francisco Unified School District |
| USS Cal Builders, Inc. | SU 1119678-0003 | 2513842 | SSFUSD Modular Projects-Modular Replacement Phase 1 - Alta Loma Middle School | South San Francisco Unified School District |
| USS Cal Builders, Inc. | SU 1119678-0004 | 2473743 | SSFUSD Modular Projects-Modular Replacement Phase 1 - Skyline Elementary School | South San Francisco Unified School District |
| USS Cal Builders, Inc. | SU 1119678-0005 | 3102805 | SSFUSD Modular Projects-Modular Replacement Phase 2 - Junipero Serra Elementary School | South San Francisco Unified School District |
| USS Cal Builders, Inc. | SU 1119678-0006 | 3773000 | SSFUSD Modular Projects-Modular Replacement Phase 2 - Spruce Elementary School | South San Francisco Unified School District |
| USS Cal Builders, Inc. | SU 1119678-0007 | 3350827 | SSFUSD Modular Projects-Modular Replacement Phase 2 - Ponderosa Elementary School | South San Francisco Unified School District |
| USS Cal Builders, Inc. | SU 1119678-0008 | 1608247 | SSFUSD Modular Projects-Modular Replacement Phase 2 - Westbrough Middle School-Classroom | South San Francisco Unified School District |
| USS Cal Builders, Inc. | SU 1119678-0009 | 1602953 | SSFUSD Modular Projects-Modular Replacement Phase 3 - Martin Elementary School | South San Francisco Unified School District |
| USS Cal Builders, Inc. | SU 1119678-0010 | 1614499 | SSFUSD Modular Projects-Modular Replacement Phase 3 - Los Cerritos Elementary School | South San Francisco Unified School District |
| USS Cal Builders, Inc. | SU 1119678-0011 | 2455734 | SSFUSD Modular Projects-Modular Replacement Phase 3 - Sunshine Gardens Elementary School | South San Francisco Unified School District |
| USS Cal Builders, Inc. | SU 1119678-0012 | 19964201 | SSFUSD Modular Projects-Modular Replacement Phase 3 - Parkway Heights Middle School | South San Francisco Unified School District |

| | | | | |
|---|---|---|---|---|
| USS Cal Builders, Inc. | SU 1119678-0013 | 8833605 | SSFUSD Modular Projects-New School Design Build - South San Francisco High School | South San Francisco Unified School District |
| USS Cal Builders, Inc. | SU 1119678-0014 | 16879690 | SSFUSD Modular Projects-New School Design Build - Buri Buri Elementary School | South San Francisco Unified School District |
| USS Cal Builders, Inc. | SU 1119678-0015 | 4971953 | SSFUSD Modular Projects-Science Renovation Program - El Camino High School | South San Francisco Unified School District |
| USS Cal Builders, Inc. | SU 1119678-0016 | 879892 | SSFUSD Modular Projects-Science Renovation Program - Alta Loma Middle School | South San Francisco Unified School District |
| USS Cal Builders, Inc. | SU 1119682-0000 | 28068289 | Tustin Avenue/Rose Drive RailRoad Grade Separation Project; Agreement No. C-2-1485 | Orange County Transportation Authority |
| USS Cal Builders, Inc. | SU 1119684-0000 | 11163555 | RCP2013-09791; Tustin Avenue & La Palma Avenue Widening & Intersection Improvements | City of Anaheim |
| USS Cal Builders, Inc. | SU 1121202-0000 | 35000 | Refuse Disposal Credit | Los Angeles County Sanitation District No. 2 |
| USS Cal Builders, Inc. | SU 1121205-0000 | 21114233 | La Kretz Innovation Campus; W.O. No. E1907574 for the Department of Water & Power | City of Los Angeles |
| USS Cal Builders, Inc. | SU 1121208-0000 | 7000 | Rework Curb & Gutter Adjaent to new Building | City of Stanton |
| USS Cal Builders, Inc. | SU 1121210-0000 | 146669 | City Hall Community Center Movable Wall | City of Stanton |
| USS Cal Builders, Inc. | SU 1121219-0000 | 72000 | Water Improvement Plans CO 8222 (2 Sheets) at 2704 N. Garey Ave., Pomona, CA Metro Link Train Control & & Operations Support Facility | City of Pomona |
| USS Cal Builders, Inc. | SU 1125150-0000 | 37974278 | State College Boulevard Grade Separation | City of Fullerton |
| USS Cal Builders, Inc. | SU 1127089-0000 | 16962000 | Bid CZ-14-0910-29 Athletic Facilities & Site Improvements at University City High School | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1127099-0000 | 1547377 | Westborough Middle School Classroom Remodel (0550) | South San Francisco Unified School District |
| USS Cal Builders, Inc. | SU 1127152-0000 | 92560 | Street improvement Plans FA-2068 A, B. C for Project at 2704 N. Garey Avenue, Pomona, CA | City of Pomona |
| USS Cal Builders, Inc. | SU 1127207-0000 | 319000 | Puente Hills Materials Recovery Facility Push Wall Modifications | County of Los Angeles |
| USS Cal Builders, Inc. | SU 1127237-0000 | 18125 | Release of Stop Notice: Hyperon Treatment Plant Digester Gas Compressor - (R & J Sheet | City of Los Angeles |

| | | | | |
|---|---|---|---|---|
| USS Cal Builders, Inc. | SU 1127238-0000 | 1058701 | Release of Stop Notice: Hyperon Treatment Plant Digester Gas Compressor (J.J. Crew & Son, | City of Los Angeles |
| USS Cal Builders, Inc. | SU 1131698-0000 | 11885000 | Stadium Improvements at La Jolla High School; Bid No. CZ-15-0777-57 | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1131703-0000 | 2591916 | Release of Stop Notice: Hyperion Treatment Plant Digester Gas Compressor Facility CIP-1022 Project (J.J. Crew and Son, Inc.) | City of Los Angeles |
| USS Cal Builders, Inc. | SU 1131704-0000 | 13231 | Release of Stop Notice: Hyperion Treatment Plant Digester Gas Compressor Facility CIP-1022 Project (R&J Sheet Metal, Inc.) | City of Los Angeles |
| USS Cal Builders, Inc. | SU 1131706-0000 | 134905 | Claimant: Prime Steel, Inc., LADWP LA Kretz Innovation Campus-RSN | Los Angeles Department of Water and Power |
| USS Cal Builders, Inc. | SU 1131739-0000 | 9645432 | Stanton Central Park Project | City of Stanton |
| USS Cal Builders, Inc. | SU 1131742-0000 | 233551 | Claimant: AVAR Construction Puente Hills Intermodel Facility & Railroad RSN | County of Los Angeles |
| USS Cal Builders, Inc. | SU 1131792-0000 | 28414 | Release of Stop Notice Claimant: Alpha & Omega Pavers, Inc. for North Embarcadero Visionary | San Diego Unified Port District |
| USS Cal Builders, Inc. | SU 1131796-0000 | 8953830 | Old Otay Mesa Road Improvements Project; Bid No: K-15-1216-DBB-3 | City of San Diego |
| USS Cal Builders, Inc. | SU 1131814-0000 | 90858 | Claimant: AFAB, Inc.; CIP 08-145/Stewart Street Underpass; RSN | City of Loma Linda |
| USS Cal Builders, Inc. | SU 1131815-0000 | 740568 | Beach Boulevard Beautification Project | City of Stanton |
| USS Cal Builders, Inc. | SU 1131914-0000 | 5738960 | Buffer Park Construction Project (SP2254) | City of Santa Monica |
| USS Cal Builders, Inc. | SU 1131916-0000 | 662319 | Encinitas Community Park; Claimant: F.J. Willert Contracting Co./Release of Stop Notice Bond | City of Encinitas |
| USS Cal Builders, Inc. | SU 1131917-0000 | 142657 | Encinitas Community Park; Claimant: Dick Miller, Inc./ Release of Stop Notice Bond | City of Encinitas |
| USS Cal Builders, Inc. | SU 1131920-0000 | 1795400 | Bid Package #03 - Animo Pat Brown Charter High | Green Dot Public Schools |
| USS Cal Builders, Inc. | SU 1131923-0000 | 135738 | Claimant: Project Frog, Inc. - South San Francisco High School (GCNA)-RSN | South San Francisco Unified School District |
| USS Cal Builders, Inc. | SU 1131924-0000 | 128409 | Claimant: Project Frog, Inc. - Parkway Heights Middle School (GCNA)-RSN | South San Francisco Unified School District |

| | | | | |
|---|---|---|---|---|
| | | | Claimant: Project Frog, Inc. - Buri-Buri | South San Francisco Unified School |
| USS Cal Builders, Inc. | SU 1131925-0000 | 835865 | Elementary School (GCNA)-RSN | District |
| | | | Claimant: Project Frog, Inc. -Junipero Serra | South San Francisco Unified School |
| USS Cal Builders, Inc. | SU 1131926-0000 | 433255 | Elementary School (GCNA)-RSN | District |
| | | | Subcontract Job No. 91748; Hyperion Electrical | |
| USS Cal Builders, Inc. | SU 1131946-0000 | 1155064 | Control Room Pre-Fabricated Metal Building | Performance Mechanical Inc. |
| | | | Contract No. 12-0N1104; 12-ORA-133-9.15; | California Department of |
| USS Cal Builders, Inc. | SU 1137969-0000 | 15014626 | Stabilize Slope Embankment & Roadway at | Transportation |
| USS Cal Builders, Inc. | SU 1137970-0000 | 15000 | CA Contractor's License No. 654454 | California Contractors License Board |
| | | | Contract No. 07-306204 07-LA-91-R11.3/R20.7; | |
| | | | Roadway Rehabilitation from .02 Miles East Long | California Department of |
| USS Cal Builders, Inc. | SU 1137973-0000 | 15011486 | Beach Blvd. Undercrossing in Long Beach to | Transportation |
| | | | Burroughs High School Modernization-Electrical | |
| USS Cal Builders, Inc. | SU 1137987-0000 | 5788000 | & Special Systems | Sierra Sands Unified School Dist |
| | | | Claimant: Martinezteel Corporation - Tustin | Orange County Transportation |
| USS Cal Builders, Inc. | SU 1137988-0000 | 761283 | Avenue/Rose Drive Grade Separation - RSN | Authority |
| | | | McKinley Elementary School Joint Use Field & | |
| USS Cal Builders, Inc. | SU 1138003-0000 | 2108722 | Site Improvements; Bid No. CZ-16-0973-29 | San Diego Unified School District |
| | | | Pacific Beach Middle School; Joint Use Field ADA | |
| USS Cal Builders, Inc. | SU 1138004-0000 | 2817115 | Upgrades & Site Improvements - Contract No. CZ- | San Diego Unified School District |
| | | | Hancock Elementary School Whole Site | |
| USS Cal Builders, Inc. | SU 1138005-0000 | 20598000 | Modernization; Bid No. CZ-16-0976-057 | San Diego Unified School District |
| | | | BART Downtown Berkley Plaza Improvements; | San Francisco Bay Area Rapid Transit |
| USS Cal Builders, Inc. | SU 1139750-0000 | 7628400 | Contract No. 05EA-110 | District |
| | | | Longfellow K-8 School Whole Site Modernization | |
| USS Cal Builders, Inc. | SU 1139755-0000 | 19385000 | & Interim Housing; Bid No. CZ-16-1110-29 | San Diego Unified School District |
| | | | State College Boulevard Grade Separation; | |
| | | | Project No. 45660; Claimant: Malcolm Drilling | |
| USS Cal Builders, Inc. | SU 1139760-0000 | 1750906 | Company, Inc. (Release of Stop Notice) | City of Fullerton |
| | | | College Blvd. Grade Separation Project No. | |
| USS Cal Builders, Inc. | SU 1139764-0000 | 326250 | 45660; Claimant: Twining, Inc. Release of Stop | City of Fullerton |

| | | | | |
|---|---|---|---|---|
| USS Cal Builders, Inc. | SU 1139784-0000 | 352690 | Claimant: Hardy & Harper, Inc.; Tustin Avenue/Rose Drive | Orange County Transportation Authority |
| USS Cal Builders, Inc. | SU 1139785-0000 | 46434 | Claimant: Vulcan Materials Co.; Construction of Tustin Avenue/Rose Drive Grade Separation RSN | Orange County Transportation Authority |
| USS Cal Builders, Inc. | SU 1142512-0000 | 1881177 | SR-91 Westbound Off-Ramp Improvements at Beach Boulevard | City of Buena Park |
| USS Cal Builders, Inc. | SU 1142519-0000 | 9247100 | Mira Mesa High School Stadium & Athletic Facilities Improvements; Bid No. CS-17-0272-08 | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1142520-0000 | 177034 | Claimant: JDS Plumbing & Mechanical; University City HS Athletic Facilites Project/GCNA-RSN | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1142532-0000 | 193611 | RSN; Claimant: American Integrated Services, Inc. - State College Grade Separation Job GCNA) | City of Fullerton |
| USS Cal Builders, Inc. | SU 1142536-0000 | 70865 | Claimant: Construction Labors Trust Fund of Southern California Administrative Company | Orange County Transportation Authority |
| USS Cal Builders, Inc. | SU 1142540-0000 | 26846000 | Scripps Ranch High School New Classroom Building & Wholesite Modernization; Bid No. CZ- | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1142542-0000 | 26058 | Claimant: Construction Laborers Trust Funds of Southern California; State College Blvd. Grade Separation Project #45660 in Fullerton (GCNA)- | City of Fullerton |
| USS Cal Builders, Inc. | SU 1142544-0000 | 383036 | RSN/Claimant: Eagle Contracting, Inc.; La Jolla HS Stadium Paint Stripping/Exterior of Gym Project | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1142546-0000 | 493804 | RSN/ - McKinley Elementary School Claimant: Eagle Contracting, Inc. | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1143789-0000 | 324099 | RSN/Claimant:  Eagle Contracting, Inc,; for Hancock Elementary School Whole Site | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1143794-0000 | 5731994 | Moffett Drive Extension Bridge & Roadway Construction Project CIP No. 70224 | City of Tustin |
| USS Cal Builders, Inc. | SU 1143799-0000 | 618000 | Sherman E. Burroughs High School-BP 160-00 Electrical; D.O.D. Modernization Phase 2 | Sierra Sands Unified School Dist |
| USS Cal Builders, Inc. | SU 1143809-0000 | 24699000 | Bishop Elementary School Modernization | Sunnyvale School District |
| USS Cal Builders, Inc. | SU 1143815-0000 | 4650000 | LaFayette Station Site Improvements; Contract No. 15QH-150 | San Francisco Bay Area Rapid Transit District |

| | | | | |
|---|---|---|---|---|
| USS Cal Builders, Inc. | SU 1145422-0000 | 80000 | Guarantee of Soil Removal at Technology Drive Before Cul-de-Sac | Irvine Community Development Company, LLC |
| USS Cal Builders, Inc. | SU 1145443-0000 | 220000 | Encroachment Permit No. 2015- | City of Sunnyvale |
| USS Cal Builders, Inc. | SU 1145448-0000 | 7788000 | Park de la Cruz Neighborhood Recreation Center & Gym; Bid No. K-17-1539-DBB-3 | City of San Diego |
| USS Cal Builders, Inc. | SU 1146826-0000 | 2809485 | Downtown Parking Facility Improvements Projects 16-1301/ 16-1302, 16-1303, 16-1304 | City of Santa Ana |
| USS Cal Builders, Inc. | SU 1147701-0000 | 6582119 | Centennial Hills Memory Care Facility; 6660 Grand Montecito Parkway, Las Vegas, NV | Welbrook Grand Montecito, LLC |
| USS Cal Builders, Inc. | SU 1148739-0000 | 14820500 | John Glenn HS Athletic Fields Renovation & Accessory Buildings DSA #03-117757; Bid No. | Norwalk-La Mirada Unified School District |
| USS Cal Builders, Inc. | SU 1148742-0000 | 50000 | NV Contractor's License | Nevada State Contractors Board |
| USS Cal Builders, Inc. | SU 1148754-0000 | 6388000 | Algin Sutton Recreation Center (PRJ 21117) )W.O. #E170293F) Project | City of Los Angeles |
| USS Cal Builders, Inc. | SU 1148755-0000 | 305606 | Claimant: Zamborelli Enterprises; Moffett Drive Extension Bridge/RSN | City of Tustin |
| USS Cal Builders, Inc. | SU 1148760-0000 | 4997831 | Houghton Park Community Center | City of Long Beach |
| USS Cal Builders, Inc. | SU 1148763-0000 | 788000 | Wayfinding & Signage Phase II; Project No. 31328 | San Jose Evergreen Community College District |
| USS Cal Builders, Inc. | SU 1148764-0000 | 3304094 | Norte Vista Sidewalk Improvements Federal Aid #ATPL-5058(097) Bid 7457 | City of Riverside |
| USS Cal Builders, Inc. | SU 1148765-0000 | 1588000 | Dodson Middle School ADA Barrier Removal; Contract No. 1810056 | Los Angeles Unified School District |
| USS Cal Builders, Inc. | SU 1148776-0000 | 29292 | Claimant: IronTrac, Inc.; Project: Scripps Ranch | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1148777-0000 | 90204 | Claimant: RAP Engineering; Project: Scripps Ranch HS/RSN (GCNA) | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1148778-0000 | 246590 | Claimant: McKenna General Engineering; Project: Scripps Ranch HS/RSN (GCNA) | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1148779-0000 | 41673 | Claimant: SignSource, Inc. Project; BART Downtown Berkeley/RSN (GCNA) | San Francisco Bay Area Rapid Transit District |
| USS Cal Builders, Inc. | SU 1148784-0000 | 6488000 | McKinley Elementary School-Windos, Paint, Floors & Doors (WPFD), HVAC & Fire Alarm Project 2401 Santa Monica Blvd., Santa Monica, | Santa Monica-Malibu Unified School District |

| | | | | |
|---|---|---|---|---|
| USS Cal Builders, Inc. | SU 1150411-0000 | 533327 | Claimant: Neal Electric Corp; Scripps Ranch HS | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1150426-0000 | 627791 | Claimant: Ferma Greenbox, Inc.; J289 La Fayette Station Site/RSN | San Francisco Bay Area Rapid Transit District |
| USS Cal Builders, Inc. | SU 1150427-0000 | 29092 | Claimant: IronTrac, Inc. for Old Otay Mesa Road Improvements/RSN | City of San Diego |
| USS Cal Builders, Inc. | SU 1150428-0000 | 430485 | Claimant: McKenna General Engineering Old Otay Mesa Road/RSN | City of San Diego |
| USS Cal Builders, Inc. | SU 1150429-0000 | 277657 | Claimant: McKenna General Engineering; Old Otay Mesa Road/RSN | City of San Diego |
| USS Cal Builders, Inc. | SU 1150430-0000 | 7048000 | Webster Middle School (23.11803) Paving, Low Impact Development & Drought Response Outreach Program for School | Los Angeles Unified School District |
| USS Cal Builders, Inc. | SU 1150435-0000 | 28400 | Sewer/Storm Drain Connection | City of Los Angeles |
| USS Cal Builders, Inc. | SU 1151928-0000 | 533327 | Claimant: Neal Electric Corporation for Scripps Ranch HS/RSN (GCNA) | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1153590-0000 | 238695 | ACR Glazing Contractors - Bishop ES/RSN | Sunnyvale School District |
| USS Cal Builders, Inc. | SU 1153593-0000 | 51664 | Who Built Creative Builders, Inc. - Bishop ES/RSN | Sunnyvale School District |
| USS Cal Builders, Inc. | SU 1153594-0000 | 203523 | Demolition Services & Grading - Bishop ES/RSN | Sunnyvale School District |
| USS Cal Builders, Inc. | SU 1153599-0000 | 5544 | Porter Corp. - Bishop ES/RSN | Sunnyvale School District |
| USS Cal Builders, Inc. | SU 1153600-0000 | 228250 | Quesada Construction, Inc. - Bishop ES/RSN | Sunnyvale School District |
| USS Cal Builders, Inc. | SU 1153602-0000 | 282087 | Rick Slater Construction - Bishop ES/RSN | Sunnyvale School District |
| USS Cal Builders, Inc. | SU 1153612-0000 | 447808 | Twining, Inc. - State college Blvd. Grade | City of Fullerton |
| USS Cal Builders, Inc. | SU 1153725-0000 | 155515 | Claimant: Marina Landscape-La Fayette Station Site/RSN | San Francisco Bay Area Rapid Transit Dist. |
| USS Cal Builders, Inc. | SU 1153726-0000 | 118229 | Claimant: Griffith Company-John Glen HS Athletic Field/RSN | Norwalk-La Mirada Unified School District |
| USS Cal Builders, Inc. | SU 1153727-0000 | 152862 | Claimant: Huntington Glazing, Inc.-McKinley ES, 2401 Santa Monica Blvd., Santa Monica, CA/RSN | Santa Monica-Malibu Unified School District |
| USS Cal Builders, Inc. | SU 1153728-0000 | 37717 | Claimant: Naval Coating, Inc. - Park De La Cruz Neighborhood Recreation Center & Gym/RSN | City of San Diego |
| USS Cal Builders, Inc. | SU 1154877-0000 | 27739435 | Fountain Valley Senior Living Project No. 143-43042; Fountain Valley, CA (US Department of Housing and Urban Development) | Fountain Valley PropCo LLC |

| | | | | |
|---|---|---|---|---|
| | | | Claimant: ABBA Distributors dba: Design | |
| USS Cal Builders, Inc. | SU 1158345-0000 | 98742 | Hardware - Hancock ES Modernization/RSN | San Diego Unified School District |
| | | | Claimant: World Bridge Technoligies-Longfellow | |
| USS Cal Builders, Inc. | SU 1158346-0000 | 135835 | Interim Housing/RSN | San Diego Unified School District |
| | | | Claimant: Woodcraft Company - Longfellow | |
| USS Cal Builders, Inc. | SU 1158347-0000 | 92056 | Spanish Immersion Magnet School/RSN | San Diego Unified School District |
| | | | Claimant: CAI Ironworks Inc. -Longfellow ES & | |
| USS Cal Builders, Inc. | SU 1158348-0000 | 170858 | Longfellow K-8 School/RSN | San Diego Unified School District |
| | | | Claimant: Neal Electric Company - Scripps Ranch | |
| USS Cal Builders, Inc. | SU 1158349-0000 | 360343 | HS New Classroom/RSN | San Diego Unified School District |
| | | | Claimant: In-LineFence & Railing Co. - Scripps | |
| USS Cal Builders, Inc. | SU 1158350-0000 | 156093 | Ranch HS Modernization & Tennis Court/RSN | San Diego Unified School District |
| | | | Claimant: Burns & Sons Trucking - Scripps HS, | |
| USS Cal Builders, Inc. | SU 1158351-0000 | 45613 | San Diego, CA/RSN | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1158352-0000 | 356375 | Claimant: SimplexGrinnell - Scripps Ranch | San Diego Unified School District |
| | | | Claimant: Siloa General Engineering dba: SG | |
| USS Cal Builders, Inc. | SU 1160840-0000 | 393735 | Engineering - Bishop ES Modernization, | Sunnyvale School District |
| | | | Claimant: Herbert, Inc. Moffett Drive Extension | |
| USS Cal Builders, Inc. | SU 1160841-0000 | 437879 | Bridge & Roadway Project | City of Tustin |
| | | | RSN-Claimant: Design Hardware Company; | |
| USS Cal Builders, Inc. | SU 1160853-0000 | 98742 | Project: Hancock ES, San Diego CA | San Diego Unified School District |
| | | | RSN-Claimant: The Industry Trust funds; Project: | |
| USS Cal Builders, Inc. | SU 1160854-0000 | 9610 | Hancock ES, San Diego CA | San Diego Unified School District |
| | | | RSN-Claimant: CG Acoustics, Inc.; Project: | |
| USS Cal Builders, Inc. | SU 1160855-0000 | 68796 | Hancock ES, San Diego CA | San Diego Unified School District |
| | | | RSN-Claimant: RAP Engineering, Inc.; Project: | |
| USS Cal Builders, Inc. | SU 1160856-0000 | 45470 | Hancock ES, San Diego CA | San Diego Unified School District |
| | | | RSN-Claimant: Audio Associates of San Diego; | |
| USS Cal Builders, Inc. | SU 1160857-0000 | 2886 | Project: Hancock ES, San Diego CA | San Diego Unified Port District |
| | | | RSN-Claimant: Shell Electric, Inc.; Project: | |
| USS Cal Builders, Inc. | SU 1160858-0000 | 801928 | Hancock ES, San Diego CA | San Diego Unified School District |
| | | | RSN-Claimant: Southwest Design & Supply | |
| USS Cal Builders, Inc. | SU 1160859-0000 | 11623 | Company: Project: Longfellow K-8 School | San Diego Unified School District |

| | | | | |
|---|---|---|---|---|
| | | | RSN-Claimant: Shell Electric, Inc.; Project: | |
| USS Cal Builders, Inc. | SU 1163817-0000 | 537030 | Hancock ES, San Diego CA | San Diego Unified School District |
| | | | RSN-Claimant: World Bridge Technologies, Inc; | |
| USS Cal Builders, Inc. | SU 1163818-0000 | 135835 | Project: Longfellow K-8 School, San Diego CA | San Diego Unified School District |
| | | | RSN-Claimant: Woodcraft Company; Project: | |
| USS Cal Builders, Inc. | SU 1163819-0000 | 92056 | Longfellow K-8 School, San Diego CA | San Diego Unified School District |
| | | | RSN-Claimant: Simplex Grinnell LP; Project: | |
| USS Cal Builders, Inc. | SU 1163820-0000 | 8065 | Longfellow K-8 School, San Diego CA | San Diego Unified School District |
| | | | RSN-Claimant: A Good Roofer, Inc.; Project: | |
| USS Cal Builders, Inc. | SU 1163821-0000 | 15536 | Longfellow K-8 School, San Diego CA | San Diego Unified School District |
| | | | RSN-Claimant: In-Line Fence & Railing Company, | |
| USS Cal Builders, Inc. | SU 1163822-0000 | 437144 | Inc.; Project: Longfellow K-8 School, San Diego | San Diego Unified School District |
| | | | RSN-Claimant: Design Hardware Company; | |
| USS Cal Builders, Inc. | SU 1163823-0000 | 54203 | Project: Longfellow K-8 School, San Diego CA | San Diego Unified School District |
| | | | RSN-Claimant: RAP Engineering, Inc.; Project: | |
| USS Cal Builders, Inc. | SU 1163824-0000 | 19237 | Longfellow K-8 School, San Diego CA | San Diego Unified School District |
| | | | RSN-Claimant: Cal Ironworks, Inc.; Project: | |
| USS Cal Builders, Inc. | SU 1163825-0000 | 170758 | Longfellow K-8 School, San Diego CA | San Diego Unified School District |
| | | | RSN-Claimant: Eagle Contracting, Inc.; Project: | |
| | | | Longfellow K-8 School, San Diego CA | |
| USS Cal Builders, Inc. | SU 1163826-0000 | 207630 | | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1163827-0000 | 9223 | RSN-Claimant: Simplex Grinnell LP; Project: Mira | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1163828-0000 | 12324 | RSN-Claimant: Design Hardware Co.; Project: | San Diego Unified School District |
| | | | RSN-Claimant: World Bridge Technologies, Inc.; | |
| USS Cal Builders, Inc. | SU 1163829-0000 | 92637 | Project: Scripps Ranch HS | San Diego Unified School District |
| | | | RSN-Claimant: Rocky Coast Builders, Inc.; | |
| USS Cal Builders, Inc. | SU 1163830-0000 | 175796 | Project: Scripps Ranch HS | San Diego Unified School District |
| | | | RSN-Claimant: Premier West Landscape; Project: | |
| USS Cal Builders, Inc. | SU 1163831-0000 | 45045 | Scripps Ranch HS | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1163832-0000 | 356262 | RSN-Claimant: Simplex Grinnell LP Project: | San Diego Unified School District |
| | | | RSN-Claimant: Siteone Landscape Supply, Inc.; | |
| USS Cal Builders, Inc. | SU 1163833-0000 | 3628 | Project: Scripps Ranch HS | San Diego Unified School District |

| | | | | |
|---|---|---|---|---|
| | | | RSN-Claimant: Inline Fence & Railing Company, | |
| USS Cal Builders, Inc. | SU 1163834-0000 | 156093 | Inc.; Project: Scripps Ranch HS | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1163835-0000 | 23513 | RSN-Claimant: Hartmanaire; Project: Scripps | San Diego Unified School District |
| USS Cal Builders, Inc. | SU 1163836-0000 | 49324 | RSN-Claimant: Neal Electric Corp.; Project: | San Diego Unified School District |
| | | | RSN-Claimant: A&A Flooring, Inc. dba: A&S | |
| USS Cal Builders, Inc. | SU 1163837-0000 | 70910 | Flooring; Project: Scripps Ranch HS | San Diego Unified School District |
| | | | RSN-Claimant: Design Hardware Company; | |
| USS Cal Builders, Inc. | SU 1163838-0000 | 9678 | Project: Dodson MS | Los Angeles Unified School District |
| | | | RSN-Claimant: Johnson Controls Fire Protection, | Santa Monica-Malibu Unified School |
| USS Cal Builders, Inc. | SU 1163839-0000 | 232863 | LP; Project: McKinley ES | District |
| | | | RSN-Claimant: Robertson Ready Mix Ltd.; | Santa Monica-Malibu Unified School |
| USS Cal Builders, Inc. | SU 1163840-0000 | 9158 | Project: McKinley ES | District |
| | | | RSN-Claimant: Shell Electric, Inc; Project: | Santa Monica-Malibu Unified School |
| USS Cal Builders, Inc. | SU 1163841-0000 | 154322 | McKinley ES | District |
| USS Cal Builders, Inc. | SU 1163842-0000 | 358105 | RSN-Claimant: Paver Plus, Inc; Project: Dodson | Los Angeles Unified School District |
| | | | APN 125-20-711-015, Wellbrook Memory Care, | |
| USS Cal Builders, Inc. | SU 1163861-0000 | 38719 | 630  AKA 6660 Grand Montecito Parkway, Las | Red Cap Acoustics, Inc. |
| | | | Claimant: Woodcraft Company|Project: | |
| USS Cal Builders, Inc. | SU 1163865-0000 | 92056 | Longfellow K-8 | San Diego Unified School District |
| | | | Claimant: ACR Glazing Contractors | Project: | |
| USS Cal Builders, Inc. | SU 1163866-0000 | 226760 | Bishop ES Modernization RSN | Sunnyvale School District |
| | | | Claimant: In-Line Fence & Railing Company|Park | |
| USS Cal Builders, Inc. | SU 1165562-0000 | 20767 | de la Cruz Neighborhood Project -RSN | City of San Diego |
| | | | Claimant: E.L. Hobbs, Inc.|Park de la Cruz | |
| USS Cal Builders, Inc. | SU 1165563-0000 | 18852 | Neighborhood Project -RSN | City of San Diego |
| | | | Claimant: Bedrock Group|Project: Dodson MS | |
| USS Cal Builders, Inc. | SU 1165564-0000 | 50000 | ADA Barrier Removal-RSN | Los Angeles Unified School District |
| | | | Claimant: ABC Resources, Inc.|Project: McKinley | Santa Monica-Malibu Unified School |
| USS Cal Builders, Inc. | SU 1165565-0000 | 91749 | ES - RSn | District |
| USS Cal Builders, Inc. | SU 1165566-0000 | 302211 | Claimant: Eagle Contracting|Project:Webster MS | Los Angeles Unified School District |
| | | | RSN Claimant: ACR Glazing Contractors for BART | San Francisco Bay Area Rapid Transit |
| USS Cal Builders, Inc. | SU 1168051-0000 | 577823 | Downtown Berkeley Plaza Project | District |

| | | | | |
|---|---|---|---|---|
| USS Cal Builders, Inc. | SU 1168052-0000 | 366699 | RSN Claimant: El Camino Asphalt Paving for Daniel Webster MS Paving Project | Los Angeles Unified School District |
| USS Cal Builders, Inc. | SU 1172924-0000 | 337795 | 11360 Warner Avenue, Fountan Valley, CA Lien Doc. No. 2021000147610 | 20/20 Plumbing & Heating, Inc. |
| USS Cal Builders, Inc. | SU 1172926-0000 | 254594 | 11360 Warner Avenue, Fountain Valley, CA Lien Doc No. 2021000095736 | Sierra Framing, Inc. |
| USS Cal Builders, Inc. | SU 1177158-0000 | 119158 | RSN | Claimant: Platinum Construction | Longfellow K-8 Wholesite Modernization and Interim Housing | BP #CZ-16-1110-29 | Platinum Construction, Inc. |
| USS Cal Builders, Inc. | SU 1177159-0000 | 20825 | RSN | Claimant: Platinum Construction | Hancock ES Wholesite Modernization and Interim Housing | BP #CZ-16-0976-57 | Platinum Construction, Inc. |
| USS Cal Builders, Inc. | SU 1177160-0000 | 24346 | 11360 Warner Ave. Fountain Valley, CA 92708; Fountain Valley Senior Living | Release of Lien | Advanced Landscape 2000, Inc. |
| USS Cal Builders, Inc. | SU 1177161-0000 | 338274 | Wellbrook Senior Living | Release of Lien | Millwork Pioneers, Inc. |
| USS Cal Builders, Inc. | SU 1177162-0000 | 337727 | Park View Estates/Fountain Valley Senior Living | Release of Lien | Platinum Construction, Inc. |
| USS Cal Builders, Inc. | SU 1177163-0000 | 203248 | Fountain Valley Senior Living; 11360 Warner Ave., Fountain Valley, CA 92708| Release of Lien | Finishing Touch Moulding DBA Finishing Touch Millworks Inc. |
| USS Cal Builders, Inc. | SU 1177164-0000 | 68215 | 11360 Warner Ave., Fountain Valley, CA 92708| Release of Lien | Civil Works Corporation |
| USS Cal Builders, Inc. | SU 1177165-0000 | 221470 | 11360 Warner Ave., Fountain Valley, CA 92708| Release of Lien | Advanced Electrical Technologies, Inc. |
| USS Cal Builders, Inc. | SU 1177166-0000 | 97302 | Fountain Valley Senior Living, 11360 Warner Avenue, Fountain Valley, CA | Doc. 2021000492215 dated: 08/04/2021 | Release of | Christian Brothers Mechanical Services, Inc. |
| USS Cal Builders, Inc. | SU 1182134-0000 | 429694 | RSN McKinley ES Claimant: AM Glazing Contractor | Santa Monica-Malibu Unified School District |
| USS Cal Platinum a Joint Venture | SU 1131780-0000 | 15000 | CA Contractor's License Bond | California Contractors License Board |

EXHIBIT K

**USS CAL BUILDERS** _____

*Building Your Future*

July 19, 2018

Arch Insurance Company
3 Parkway, Suite 1500
Philadelphia, PA 19102

      Attention: Surety Claims;
            Kim McNaughton & Peter Apostolidis

   RE:     Principal: USS Cal Builders, Inc.
           Surety: Arch Insurance Company
           Obligee(s): Various
           Bonds, Contracts and Projects: Various

**REQUEST FOR FINANCIAL ASSISTANCE**

Dear Sirs:

     Please be advised that USS Cal Builders, Inc. ("Principal") is experiencing cash flow problems due to its stabilizing of CLS Constructors and Stanton Utilities and, without Arch Insurance Company's ("Surety")financial assistance, is unable to pay the bills of its subcontractors and suppliers on many of the contracts (the "Bonded Contracts") for which the Surety executed Payment Bonds and may become unable to perform and/or complete the performance of the work on many of the contracts for which the Surety executed Performance Bonds.

     The Principal acknowledges that it and the other persons and entities described below as Indemnitors have executed in favor of the Surety Indemnity Agreements dated February 12, 2014 (amended March 23, 2015 and April 13, 2015); May 27, 2015 (amended May 27, 2015); March 11, 2014; and October 15, 2015,copies of which are attached as **Exhibit A**, **Exhibit B**, **Exhibit C** and **Exhibit D** to this letter. As a result of the above facts, and because of its request for the Surety's financial assistance as described below, the Principal further acknowledges that it is in breach and in default of its obligations to the Surety under the Indemnity Agreements ("GIA Default"). However, the Principal also states that as of this writing, it continues to perform all bonded contracts and that it has not been terminated for default by any obligee on any bonded contract.

     Due to the Principal's inability to pay the bills of its subcontractors and suppliers and other obligations on many of the contracts for which the Surety executed Payment Bonds and potential inability to perform and/or complete the performance of the work on many of the contracts for which the Surety executed Performance Bonds, the Principal hereby requests that the Surety provide the Principal with financial assistance in the form of payments to certain of the Principal's critical subcontractors, suppliers and other vendors on the bonded projects. The Principal and the Indemnitors represent to Surety that they have no other source of funding or money to satisfy the Principal's obligations under the Bonded Contracts and acknowledge and understand that Surety will rely upon the representations of the Principal and Indemnitors in considering this request for financial assistance.

Furthermore, the Principal and the Indemnitors acknowledge and agree that:

1.    The obligees under the Performance and Payment Bonds for the bonded contracts may be holding bonded contract funds under the bonded contracts which may be used to pay the Principal and/or the Principal's subcontractors and suppliers on the respective bonded contracts;

2.    As a result of the Principal's GIA Default, the Surety has the right to use the bonded contract funds for the payment of the Principal's unpaid subcontractors and suppliers on the bonded projects;

3.    The Principal and Indemnitors agree the Indemnity Agreements and other applicable statutes, contract provisions, regulations and/or other applicable law require the Principal and the Indemnitors to hold the bonded contract funds in trust for the benefit of the Surety and/or for the payment of the Principal's subcontractors and suppliers on the bonded projects; and

4. The failure of the Principal and/or the Indemnitors to comply with their trust fund obligations and fiduciary duties with respect to the bonded contract funds from the bonded contracts will result in the Surety's incurring additional losses.

The Principal and the Indemnitors understand and acknowledge that the Surety intends to keep this letter confidential and will use its best efforts to do so.  Nothing in this letter is intended to alter the terms of any indemnity agreement entered into by the Principal or any Indemnitor.

The Principal and the Indemnitors understand and acknowledge that the Surety has made no agreements or promises to provide the Principal and/or the Indemnitors with any financial assistance and has no obligation to provide any financial assistance.

Very truly yours,

Allen Othman
President, USS Cal Builders, Inc.

## ACKNOWLEDGEMENT AND CONSENT BY THE INDEMNITORS

By their execution of this letter, the following persons and entities listed below acknowledge and agree that they are Indemnitors of the Principal pursuant to an Indemnity Agreement executed by the Principal and the Indemnitors in favor of the Surety. The Indemnitors acknowledge and agree with the Principal's request for financial assistance to the Surety and do not dispute the Principal's acknowledgement that it is in breach and in default of its obligations to the Surety under the Indemnity Agreements.. The Indemnitors provide their consent to and for the Principal's request for the Surety's financial assistance. The Indemnitors further acknowledge their continuing liability to the Surety under the Indemnity Agreements, including but not limited to their indemnity obligations to reimburse the Surety for its losses under the Performance and Payment Bonds, for all of the Surety's losses, costs and expenses as more fully described in the Indemnity Agreements and for any financial assistance that the Surety may provide to the Principal as a result of the Principal's request for the Surety's financial assistance. **The Indemnitors understand and acknowledge that the Surety has made no agreements or promises to provide the Principal with any financial assistance and has no obligation to provide any financial assistance. The Indemnitors understand and acknowledge that each of them shall be jointly and severally liable to reimburse, indemnify and hold harmless Surety regardless of whether some or any of the Indemnitors listed below do not sign this Acknowledgment and Consent.**

USS CAL BUILDERS, INC.

By: _____
        ALLEN OTHMAN, President


_____
ALLEN OTHMAN, Individual


_____
SHEREEN OTHMAN


IMAD and SHEREEN OTHMAN
FAMILY TRUST

By: _____
        IMAD E. OTHMAN, Trustee


CABILA, INC.

By: _____
        ALLEN OTHMAN


OAKLAN, LLC

By: _____
        ALLEN OTHMAN, President


_____
ERIC OTHMAN, Individual


2011 ALLEN OTHMAN TRUST

By: _____
        ALLEN OTHMAN, Trustee

IMAD and SHEREEN OTHMAN
FAMILY TRUST

By: _____
        SHEREEN OTHMAN, Trustee


CLS CONSTRUCTORS, INC.

By: _____
        LARRY SOBOLEWSKI, JR., President

_____          _____
LARRY SOBOLEWSKI, Individual              CECELIA SOBOLEWSKI, Individual


STANTON UTILITIES, INC.                   STANTON UTILITIES, INC.


By_____        By:_____
       MAITA KAYABAN, President                   REZA MOTADEL, Secretary


USS CAL INTERNATIONAL, A Joint Venture


By:_____
       ALLEN OTHMAN

EXHIBIT L

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| 714/480-8500 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|

| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |
|---|
| Booth, Mitchel & Strange LLP<br>701 South Parker Street, Suite 6500<br>Orange, CA 92868<br>USA |

**DOCUMENT NUMBER:** 70383720002
**FILING NUMBER:** 18-7650862154
**FILING DATE:** 05/29/2018 15:31

**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| CLS Constructors, Inc. | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 21935 Van Buren Street, Unit B-7 | Grand Terrace | CA | 92313 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Sobolewski | Cecelia | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 23864 Creekwood Drive | Moreno Valley | CA | 92557 | USA |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Arch Insurance Company | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3 Parkway, Suite 1500 | Philadelphia | PA | 19102 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

**See Attachment(s)**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

| | |
|---|---|
| **9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because individual Debtor name did not fit, check here ☐ | |

| OR | 9a. ORGANIZATION'S NAME |
|---|---|
| | CLS Constructors, Inc. |
| | 9b. INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITAL(S) · SUFFIX |

**DOCUMENT NUMBER:** 70383720002

**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| OR | 10a. ORGANIZATION'S NAME |
|---|---|
| | USS Cal Builders, Inc. |
| | 10b. INDIVIDUAL'S SURNAME |
| | INDIVIDUAL'S FIRST PERSONAL NAME |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) · SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8051 Main Street | Stanton | CA | | USA |

**11.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only <u>one</u> name (11a or 11b)

| OR | 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | 11c. MAILING ADDRESS | CITY | STATE · POSTAL CODE | COUNTRY |

**12. ADDITIONAL SPACE FOR ITEM 4 (collateral):**

| | |
|---|---|
| **13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | **14.** This FINANCING STATEMENT: ☐ covers timber to be cut  ☐ covers as-extracted collateral  ☐ is filed as a fixture filing. |
| **15.** Name and address of RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | **16.** Description of real estate: |

**17. MISCELLANEOUS:**

**FILING OFFICE COPY**

## UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because individual Debtor name did not fit, check here ☐

| | |
|---|---|
| 18a. ORGANIZATION'S NAME | CLS Constructors, Inc. |
| OR 18b. INDIVIDUAL'S SURNAME | |
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**DOCUMENT NUMBER:** 70383720002

**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 19b. INDIVIDUAL'S SURNAME Sobolewski | FIRST PERSONAL NAME Larry | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 19c. MAILING ADDRESS 23864 Creekwood Drive | CITY Moreno Valley | STATE CA | POSTAL CODE 92557 | COUNTRY USA |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 20b. INDIVIDUAL'S SURNAME Othman | FIRST PERSONAL NAME Allen | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 20c. MAILING ADDRESS 6942 Steeplechase Circle | CITY Huntington Beach | STATE CA | POSTAL CODE 92648 | COUNTRY USA |

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 21b. INDIVIDUAL'S SURNAME Othman | FIRST PERSONAL NAME Eric | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c. MAILING ADDRESS 2852 Kempton Drive | CITY Rossmoor | STATE CA | POSTAL CODE 90720 | COUNTRY USA |

22. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

23. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

24. MISCELLANEOUS:

FILING OFFICE COPY

## UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

| 18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because individual Debtor name did not fit, check here ☐ | |
|---|---|
| OR | 18a. ORGANIZATION'S NAME<br>CLS Constructors, Inc. |
| | 18b. INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S)               SUFFIX |

**DOCUMENT NUMBER:** 70383720002

**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

**19. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 19a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 19b. INDIVIDUAL'S SURNAME<br>Othman | FIRST PERSONAL NAME<br>Shereen | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 19c. MAILING ADDRESS<br>2852 Kempton Drive | CITY<br>Rossmoor | STATE<br>CA | POSTAL CODE<br>90720 | COUNTRY<br>USA |

**20. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 20a. ORGANIZATION'S NAME<br>2011 Allen Othman Trust | | | |
|---|---|---|---|---|
| OR | 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 20c. MAILING ADDRESS<br>4806 Bindewald Street | CITY<br>Torrance | STATE<br>CA | POSTAL CODE<br>90505 | COUNTRY<br>USA |

**21. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 21a. ORGANIZATION'S NAME<br>Imad and Shereen Othman Family Trust | | | |
|---|---|---|---|---|
| OR | 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c. MAILING ADDRESS<br>4806 Bindewald Street | CITY<br>Torrance | STATE<br>CA | POSTAL CODE<br>90505 | COUNTRY<br>USA |

**22.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| | 22a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**23.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| | 23a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**24. MISCELLANEOUS:**

FILING OFFICE COPY



# GENERAL INDEMNITY AGREEMENT

THIS GENERAL INDEMNITY AGREEMENT (hereinafter called "Agreement") is made by the undersigned Indemnitors in favor of Arch Insurance Company, Arch Reinsurance Company, and any present or future subsidiary or affiliate of Arch Insurance Company, (hereinafter collectively called "Arch"), for the purpose of indemnifying Surety (as herein defined below) for any Bonds (as herein defined below), which Surety may have issued, or may hereafter issue, or on which Surety otherwise becomes surety.

## RECITALS

A.  Principal, as hereinafter defined, in the performance of contracts and the fulfillment of obligations generally, whether in their own names or with others, may desire or be required to give or procure Bonds, and to renew, continue or substitute from time to time the same or new Bonds, or the Indemnitors may have an interest in inducing the Surety to refrain from canceling said Bonds.

B. The Indemnitors understand that the Surety expressly requires the execution and delivery of this  Agreement as part of the consideration for the execution by the Surety of such Bonds which may hereafter be furnished, or for the refraining of canceling such Bonds.

C. The Indemnitors have a substantial, material and beneficial interest in the Principal's obtaining of Bonds from the Surety or in the Surety's refraining from canceling such Bonds.

## AGREEMENTS

**IN CONSIDERATION** of the foregoing premises and the Surety's execution and delivery of one or more Bonds or its refraining from canceling the same, and intending to be legally bound hereby, the Indemnitors, for themselves and their respective heirs, executors, administrators, successors, and assigns, hereby agree, jointly and severally, to be obligated to the Surety, its successors and assigns, as follows:

**1. DEFINITIONS -** In addition to the capitalized terms defined elsewhere in this Agreement, the following terms when used in this Agreement, unless the context otherwise requires, shall have the meanings indicated in this paragraph, which meanings shall be equally applicable to both the singular and plural forms of such terms:

   a.  **Principal**: Any Indemnitor on behalf of which Surety may execute a Bond and/or any Person whose name is or has been furnished to Surety by any of the Indemnitors or on behalf of which Surety has issued any Bond at the request of any Indemnitor, including, but not limited to, any of the Indemnitors named or referred to as "Principal" in any bond, undertaking or recognizance. The term "Principal" also includes any present or future direct or indirect subsidiary, successor, affiliate or parent of any Indemnitor and any partnerships, LLCs, LLPs or other entities owned in whole or in part by any named Indemnitor.

   b.  **Indemnitors**: All Persons who sign this Agreement or whose representatives sign this Agreement or any other agreement that incorporates by reference the terms of this Agreement. The Indemnitors warrant and represent that they have a material and beneficial interest in Surety's issuance of Bonds on behalf of the Principal, and acknowledge that Surety would not issue such Bonds without each Indemnitor's agreement to reimburse Surety for all losses arising under the Bonds.

   c.  **Surety**: Arch and/or any present or future subsidiary or affiliate of Arch, which may issue Bonds, as well as any and all sureties, co-sureties or reinsurers who issue, execute or reinsure any portion of the Bond or who procure bonds at the request of Arch.  The terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsurers.

d.  **Person:** An individual, corporation, partnership, Limited Liability Company (hereinafter called LLC), Limited Liability Partnership (hereinafter called LLP), joint venture, trust, estate or other legal entity.

e.  **Bond:** Any and all bonds, including but not limited to surety bonds, undertakings, guaranties, and any renewals or extensions thereof issued by Surety, or issued by another at the request of Surety, on behalf of Principal, whether issued prior to or subsequent to the effective date of this Agreement. The term Bond also includes any electronic processes in lieu of the issuance of paper bonds, whether in the contract bidding process, or otherwise.

f.  **Bonded Contract:** A contract for which Surety issues or has issued a Bond.

g.  **Default:** An instance or condition in which Principal or Indemnitors, or any of them: (a.) fail to pay any Bond premium charge when due, (b.) forfeit, breach, abandon, default or be declared in default on any Bonded Contract or fail to pay when due any obligation to which any Bond may pertain, (c.) neglect or refuse to pay for any labor or materials used in the prosecution of a Bonded Contract, (d.) make or have made any representation as to any Indemnitor's financial condition or supply any information to Surety which is untrue, materially false or misleading, (e.) fail to honor any obligation under this Agreement, (f.) institute or have instituted against any or all of them a case under the Bankruptcy Code or similar statute, with respect to any Indemnitor as debtor, or any suit or proceeding alleging that any one of them is insolvent or requesting the appointment of a receiver or trustee for the benefit of creditors, (g.) have proceedings instituted against any of them that may have the effect of depriving any of them of the use of any part of the materials or equipment used in connection with the work under a Bonded Contract so as to hinder, delay or impede the normal and satisfactory progress of the work, (h.) make an assignment for the benefit of creditors that in any way impedes the rights of the Surety, (i.) in the case of Indemnitors which are not individuals, dissolve or cease to continue their legal existence, (j.) in the case of Indemnitors who are individuals, die, abscond, disappear, become incompetent, are convicted of a felony or are imprisoned, or (k.) violate any other written agreement with Surety or for the benefit of Surety, including without limitation, subordination agreements with Indemnitors (hereinafter referred to as Other Agreements).

h.  **Loss:** Any and all liability, losses, costs, expenses, and fees of whatever kind or nature, that Surety may sustain or incur as a result of executing or procuring any Bond or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement. Loss includes but is not limited to: (a.) sums posted by Surety as a reserve for the payment of potential losses and/or expenses, (b.) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses, (c.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for Principal or Indemnitors, (d.) funds advanced by Surety to a Principal, and (e.) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

**2. PREMIUMS** - The Principal and Indemnitors will pay to the Surety, promptly upon demand, all premiums, costs and charges of the Surety, in accordance with its rate filings, rates as it determines from its manual of rates, or rates as the Surety may otherwise determine, for any Bonds requested from and/or issued by the Surety. Where such premiums, costs and charges are annual, the Principal and Indemnitors agree to pay the same until the Principal and Indemnitors shall deliver evidence satisfactory to the Surety of the discharge or release of all liability under such Bonds.

**3. INDEMNITY** - The Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, pre- and post-judgment interest, court costs and counsel fees, and accounting, engineering and consulting fees,  and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, whether such Bond or Bonds were issued prior to or after the date of this Agreement (2) By reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement or Other Agreements.  In the event of any payment by the Surety the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such

payments made by the Surety shall be *prima facie* evidence of the fact and amount of the liability to the Surety. As used in this paragraph, "good faith" means honesty in fact and the absence of malice or fraud.

**4. POSTING OF COLLATERAL** - If the Surety determines, in its sole discretion and judgment, that potential liability exists for losses, fees, costs, or expenses, for which the Principal and Indemnitors will be obligated to indemnify the Surety under the terms of this Agreement or Other Agreements, the Principal and Indemnitors shall deposit with the Surety, promptly on demand, a sum of money equal to the amount the Surety determines or collateral security of a type and value satisfactory to the Surety, to cover that liability, whether or not the Surety has : (a) established a reserve; (b) made any payments; or (c) received any notice of claims under the Bonds. At the Surety's sole option, such collateral shall be in addition to and not in lieu of any other collateral that has been previously been provided to the Surety with any Bond or Bonds. The Surety shall have the right to use the collateral, or any portion thereof, in payment or settlement of any such liabilities for which the Principal and Indemnitors would be liable to the Surety under this Agreement or Other Agreements with respect to payments made by Surety. The Surety shall have no obligation to invest or provide a return on any collateral provided under this Agreement. Indemnitors acknowledge that the failure of Indemnitors to pay to Surety, immediately upon demand, the sum demanded by Surety hereunder, shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to temporary, preliminary and final injunctive relief for specific performance of their obligations hereunder, including the obligation to pay to Surety the sum demanded, and waive any defenses thereto. To the extent Surety accepts collateral other than money, Surety shall not be liable to any Indemnitor for any diminution in value, loss or destruction of such collateral and shall have no obligation to maintain or insure such collateral.

**5. SURETY'S CONSENT TO CHANGES** - Surety is authorized and empowered, without notice to or knowledge of the Principal and Indemnitors, to consent to changes in any Bond or to changes in the contract or obligation, which is the subject of any Bond, or may refuse to consent to any such change, including, without limitation, any change in the time for the completion of said contract and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of any Bonds and to executed any substitute or substitutes therefore, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Principal and Indemnitors shall remain bound by the terms of this Agreement, even though any such assent by the Surety does or might substantially increase the liability of the Indemnitors. Surety's actions in consenting or in not consenting to any such change shall not release or affect the obligations of Indemnitors to Surety under this Agreement. The Indemnitors further warrant and represent that they are currently informed and shall remain knowledgeable and apprised of Principal's business activities and financial condition. Surety has no obligation to inform Indemnitors of any change in the business affairs and financial condition of Principal.

**6. SURETY'S RIGHT TO DECLINE BONDS** - Surety has the right to decline to execute any Bond requested by the Principal or Indemnitors, including any such Bond requested after Surety has executed a preliminary bond including, but not limited to, a bid or proposal bond, or a Consent of Surety to the issuance of Bonds. This right applies to any Surety's declining to issue or execute any Bond for any reason whatsoever. If the Surety requests another surety to execute a Bond and such other surety declines to execute the Bond, the Surety shall have no liability to the Principal or Indemnitors for such declination. Surety's declining to execute any Bond shall not release or affect the obligations of Indemnitors to Surety under this Agreement. Principal and Indemnitors acknowledge that the Surety makes no representations as to the acceptability of any of its Bonds to any person, firm or entity under any contract, and that Principal and Indemnitors shall have no claim against the Surety relating to the failure or refusal of any entity to accept any Bond issued by the Surety. The Indemnitors acknowledge and agree that it is their sole responsibility to provide the proper forms on a timely basis for the bonds to be executed by the Surety, and to review and approve any bond and undertaking executed by the Surety on its own forms. Neither the Surety, nor its agents, shall have any liability whatsoever to the Indemnitors if they shall fail to furnish the Surety with the proper forms or to object to forms furnished by the Surety.

**7. BOND FORMS** - It shall be the sole responsibility of the Indemnitors to review all bond forms executed by the Surety for appropriateness and for any errors or omissions prior to delivery of the bonds to an obligee. The Surety and its agents shall have no liability to the Indemnitors on account of any negligence (whether sole or concurrent), inadvertence, error or omission in the preparation, execution, or delivery of any bonds. Prior to requesting that the Surety issue any bond, the Indemnitors shall obtain confirmation that the proposed obligee on the bond will accept the Surety as surety on the proposed bond, and neither the Surety, nor its agents, shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the Surety as surety on any bond. The Indemnitors agree that the Indemnitors shall be solely responsible for arranging, independent of the Surety, for the timely delivery of any bond to the obligee. The Surety and its agents shall have no liability to the Indemnitors if any bond is not timely delivered to any obligee for any reason whatsoever, including any negligent acts or omissions on the part of the surety or its agents.

**8. SURETY'S RIGHT TO SETTLE CLAIMS** - Surety shall have the sole and exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and Surety's decision thereon shall be final and binding upon the Indemnitors.  Subject to the Surety's rights set forth in the first sentence of this section, which shall remain in full force and effect, if Principal or Indemnitors desire that the Surety litigate such claim or demand, or defend such suit, or appeal from such judgment, they shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered, or which might be rendered, against the Surety, together with interest, costs and attorneys fees.

**9. SURETY'S RIGHT TO COMPLETE WORK -** In the event of a Default, Surety shall have the right, but not the obligation, to take possession of the work under any and all Bonded Contracts, and complete or consent to the completion of such Bonded Contracts at the expense of the Indemnitors.

**10. ADVANCES** - The Surety is authorized and empowered, but not obligated, to guarantee loans, to advance or lend to the Principal any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Principal, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Principal to the Surety when due, shall be presumed to be a loss by the Surety for which the Principal and the Indemnitors shall be liable, notwithstanding that said money or any part thereof should not be so used by the Principal.

**11. ASSIGNMENTS** - Effective as of the date of this Agreement, but enforceable only in the event of a Default, Principal and Indemnitors do hereby assign, transfer and set over to Surety, all of their rights under all Bonded Contract(s) including (a.) their right, title and interest in all subcontracts, subcontract bonds, and purchase orders let in connection therewith, (b.) all machinery, plant, equipment, tools and materials located anywhere, whether for the purposes of the Bonded Contract(s) or not, (c.) all claims and causes of action against any parties, (d.) any and all sums due, or to become due under any contract, whether bonded or not, (e.) all rights in or arising out of any insurance policies of any type, (f.) all rights it has in patents, patented processes, licenses, designs, copyrights, trademarks and all other intellectual property rights, and expressly authorize Surety to use these property rights, at no cost to the Surety, and all proceeds arising therefrom and all records (in whatever form) related thereto.

**12. ATTORNEY IN FACT -** Principal and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Principal and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Principal and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Principal and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

**13. DISCHARGE OF SURETY** - Upon the request of Surety, Principals and Indemnitors will procure the discharge of Surety from any Bond, and all liability arising there from, and provide evidence to Surety regarding same.

**14. BOOKS & RECORDS** - Principal and Indemnitors shall provide to the Surety within 120 days of the end of their respective fiscal years, financial statements prepared in accordance with Generally Accepted Accounting Principles and reports prepared by reputable accounting firms, prepared in accordance with the AICPA's Statements on Standards for Accounting and Review Services (hereinafter SARS). If the Principal and/or Indemnitors have reports prepared by reputable accounting firms in accordance with AICPA's Statements on Auditing Standards, which reports are prepared in connection with the ordinary course of their financial reporting, then such reports shall be provided instead of reports prepared in accordance with SARS. Principal and Indemnitors shall also provide to Surety any management reports received from their accountants within 30 days of receipt. In addition to the foregoing, the Surety, including its designated agents, shall, at any and all times, have unrestricted access upon reasonable notice to review all books and records of Principal and Indemnitors, including all books and records pertaining to their financial condition, and to the status of each unbonded and Bonded Contract. Principal and Indemnitors hereby authorize those with whom such Bonded Contracts are made to furnish to Surety all information concerning such contracts and the work thereunder. Principal and Indemnitors understand and agree that the failure to provide the information required in this paragraph shall be a material breach of this Agreement and shall entitle the Surety to demand, in its sole discretion, cash collateral up to the penal sums of any and all outstanding Bonds.

**15. INDEMNITORS' WAIVER OF NOTICE** - Indemnitors warrant that each of them is specifically and beneficially interested in the obtaining of each Bond and agree to keep themselves fully informed as to the business activities and financial affairs of any one or more of the Indemnitors or any Principal for whom Bonds are executed by Surety. Indemnitors hereby expressly waive any notice from the Surety of any fact or information coming to the attention or knowledge of the Surety which affects its rights or the rights or liabilities of the Indemnitors, including notice of execution of any particular Bond subject to this Agreement and notice of default by the Principal or of the receipt of claims under any Bond.

**16. EFFECT OF INVALIDITY** - Any defect or invalidity in the execution of this Agreement by any Indemnitor or the failure of any Indemnitor whose name appears hereinbelow to execute this Agreement shall not in any manner affect the validity of these obligations or the liability hereunder of the other Indemnitors. Invalidity of any provision of this Agreement by reason of the laws of any State or for any other reason shall not render the remaining provisions of this Agreement invalid, and this Agreement shall be construed and enforced with the same effect as though such provision or provisions were omitted.

**17. TERMINATION BY ANY INDEMNITOR** - Any Indemnitor wishing to terminate this Agreement must give Arch written notice by Registered Mail at least thirty (30) days prior to termination. The termination will not affect Indemnitor's obligations hereunder with respect to any Bonds executed and issued prior to the termination of this Agreement by that Indemnitor and with respect to any Bonds or renewals executed after the effective date of termination with respect to which Surety had issued a bid bond, consent of surety or prior Bond or undertaking prior to the effective date of termination. The termination by any one Indemnitor shall not affect the liability of any other Indemnitor.

**18. CHANGE IN STATUS/TRANSFER OF ASSETS** - Each Indemnitor agrees not to change or convert its respective individual, corporate or partnership status to either an LLC or an LLP or any other similar structure which has the effect of limiting, reducing or shielding the liability of either the entity or its partners and/or officers hereunder, without the prior, express, written consent of Surety. Should any Indemnitor so change its respective corporate or partnership status without the prior, express, written consent of Surety, Indemnitor agrees that such change in its status shall not limit, reduce or otherwise shield its obligations, its partners' and/or officers' obligations, to Surety which arise from this Agreement. Indemnitors hereby expressly waive as against Surety any and all defenses which may arise from such a conversion to a LLC, LLP or similar status.

**19. CHANGE IN CONTROL** - The Indemnitors shall not permit a Change of Control, as defined hereinbelow, to occur without the Surety's prior written consent. Change in Control means: (a) the transfer, merger or consolidation, in one transaction or a series of transactions, of all or substantially all of the assets of any one Indemnitor, which results in an unaffiliated Person owning, directly or indirectly fifty percent (50%) or more of the beneficial ownership or control of such Indemnitor; (b) the acquisition, in one transaction or a series of transactions, of fifty percent (50%) or more of the beneficial ownership or control of any Indemnitor; or (c) the acquisition by any Indemnitor, directly or indirectly, of fifty percent (50%) or more of the beneficial ownership or control of any joint venture, subsidiary,

division, affiliate, limited partnership, limited liability partnership, limited liability company or other entity through the issuance of fifty percent (50%) or more of the voting power of the total outstanding voting stock of any Indemnitor.

**20. NOTICE OF CHANGE IN RESIDENCE** - Each Indemnitor who is an individual agrees to give Surety written notice of any change in his/her principal residence within 30 days of the change of address.  Each Indemnitor, which is not an individual, agrees not to change its principal place of business or the state of jurisdiction in which it is incorporated or otherwise organized without also giving Surety 30 days' written notice of the proposed change. If Surety has previously filed a Uniform Commercial Code Financing Statement with respect to such Indemnitor, Indemnitor agrees to file a Financing Statement in the new state or jurisdiction.

**21. EFFECT OF RELEASE OF ANY INDEMNITOR -** Indemnitors agree that, at any time, Surety may release any Indemnitor or Indemnitors from this Agreement, without affecting, reducing or otherwise limiting the obligations of any remaining Indemnitor, and Indemnitors hereby expressly waive both (a) notice from Surety of any such release, and (b) any defense that may be created in favor of any remaining Indemnitor as a result of Surety's release of another Indemnitor. Waiver of any one Default shall not be deemed a waiver of any other Default.

**22. FILING OF AGREEMENT UNDER THE UCC** - This Agreement shall constitute a Security Agreement to the Surety and also shall constitute a Financing Statement naming Surety as secured creditor and each Indemnitor as debtor, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of a copy of this Agreement shall be solely at the option of Surety and Surety's failure to do so shall not release or impair any obligation of Indemnitors, under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of Surety's rights under this Agreement or otherwise. The appearance of Arch's logo on the first page of this Agreement shall constitute its signature hereon. Indemnitors hereby irrevocably appoint and designate Surety or its authorized representative as their respective Attorneys-In-Fact to sign any Financing Statement form which may be required in order to file the same in any jurisdiction or office.

**23. APPLICABILITY OF AGREEMENT** - This Agreement shall apply to all Bonds executed by and/or procured by Surety for Principal, in its own name or as a joint venture with others.  Indemnitors expressly waive any defense that may arise as a result of this Agreement having been executed subsequent to the date of the issuance of any Bond and Indemnitors admit and acknowledge that any such Bond was executed pursuant to Indemnitors' request and in reliance on the Indemnitors' representation and promise to execute this Agreement.

**24. PAYMENTS BY INDEMNITORS** - All payments made by Indemnitors to Surety under this Agreement shall be in United States Dollars and in no other currency and shall be sent, at Surety's discretion via check or wire transfer to any bank account subsequently designated by Surety. All sums payable to the Surety under this Agreement shall bear interest if not paid by Indemnitors within ten (10) days of demand by Surety. The interest rate shall be an annual rate of 10%, or the maximum rate permitted by applicable law if less than 10%. All Payments made shall be credited first to accrued and unpaid interest, if any, and then to the unpaid principal balance of the obligation.

**25. TRUST FUNDS** - Principal and Indemnitors agree and expressly declare that all funds due or to become due under any Bonded Contract are trust funds, whether in the possession of Principal or another and whether designated trust funds or not, for the benefit and payment of all persons to whom Principal incurs obligations in the performance of such contract, for which Surety may be liable under any Bond. If Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds.

**26. HOMESTEAD** - To the extent permitted by applicable law, the Principal and Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory or possession.

**27. SURETIES** - In the event the Surety procures the execution of any Bond by other sureties, or executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsurers, then all the terms and conditions of this Agreement shall inure to the benefit of such Sureties, co-sureties and reinsurers, their successors and assigns, as their interests may appear.

**28. SUITS** - The Surety may bring separate suits under this Agreement as causes of action accrue, and the bringing of suit or the recovery of judgment upon a cause of action shall not bar, prejudice or preclude the Surety's bringing other suits upon other causes of action, whether theretofore or thereafter arising.  Surety may enforce this

Agreement against any Indemnitor without the necessity of first proceeding against any Principal or other Indemnitor.

**29. JURISDICTION** - As to any legal action related to this Agreement, Principal and Indemnitors consent to the general jurisdiction of any state or federal court of the United States or its territories having proper subject matter jurisdiction or in any court of the United States in which a claim may be brought against the Surety under any of the Bonds, at the sole discretion of the Surety.  Principal and Indemnitors waive any claim or defense in any such action based on alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

**30. JURY WAIVER** - Principal and Indemnitors hereby expressly waive any right to a trial by jury with respect to any legal proceeding arising under this Agreement.

**31. CURRENCY EXCHANGE** - Should the Surety, when making a payment or incurring any expense directly or indirectly related to the Bond, expend funds in any currency other than U.S. Dollars, then Indemnitors shall either reimburse the Surety in U.S. Dollars equal to the amount expended by the surety at the time the foreign currency was purchased or shall defray the cost of any exchange variation, thereby indemnifying the Surety for any decrease in the valuation of the currency purchased.

**32. NOTICE OF SERVICE -** Notice of Service made by U. S. Mail or by FAX to the last known address constitutes service whether or not received.

**33. ADDRESS FOR NOTICES** - All notices required to be given by Indemnitors under this Agreement shall be sent by registered mail to Arch Insurance Company, 3 Parkway, Suite 1500, Philadelphia, PA 19102 USA and shall include a copy of this Agreement attached thereto.

**34. OTHER INDEMNITY** - The Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of the Bonds, from the Indemnitors or others, it being expressly understood and agreed by the Indemnitors that any and all other rights which the Surety may have or acquire against the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

**35. SUBORDINATION OF INDEMNITORS** - The Indemnitors shall have no rights of indemnity or contribution against the Principal or its property until the Principal's obligations to the Surety under this Agreement have been satisfied in full.

**36.  REPRESENTATIONS** - Indemnitors represent and warrant to Surety that (i) they have carefully read and understand this entire Agreement; (ii) they have had the opportunity to review and discuss it with an attorney of their choosing; (iii) there are no other agreements, understandings or representations made by or on behalf of Surety which would diminish or modify the Indemnitors' obligations or Surety's rights set forth herein; (iv) that this Agreement shall be in addition to and shall not constitute a novation of or revoke or rescind any prior agreements of indemnity executed by an Indemnitor and that Surety's rights under such agreements are cumulative.

**37.  GENERAL PROVISIONS** - (i) This Agreement sets forth unilateral undertakings of Indemnitors only upon which Surety may rely in considering whether to execute Bonds on behalf of any Principal.  Indemnitors acknowledge that Surety is not required to execute this Agreement in order to enforce it; (ii) All references in this Agreement in the singular shall include the plural and vice versa, and all references to a gender shall include all genders.

**38. MODIFICATIONS** - This Agreement, and the rights and remedies of Surety hereunder may not be waived, challenged or modified orally. No written waiver, change or modification shall be effective unless signed by an officer or other authorized representative of Surety.

**IN WITNESS WHEREOF**, the Indemnitors have caused this Agreement to be executed by their respective duly authorized representatives this _March_ day of _11_ , 20_14_.

**Witness/ Attest**

_____
(Name of Witness)

Principal/Indemnitor: CLS Constructors Inc.

By: _____
Print Name: Larry Sobolewski Jr.
Its: President

Address: 21935 Van Buren St. Unit B-7
Grand Terrace, CA 92313

(seal)

_____
(Name of Witness)

Principal/Indemnitor: Cecelia Sobolewski

By: _____
Print Name: Cecelia Sobolewski
Its: Secretary

Address: 21935 Van Buren St. Unit B-7
Grand Terrace, CA 92313

(seal)

Arlene B. Vargas
_____
(Name of Witness)

Principal/Indemnitor: USS Cal Builders, Inc.

By: _____
Print Name: Allen Othman
Its: President

Address: 8051 Main Street
Stanton, CA 90650

(seal)

_____
(Name of Witness)

Indemnitor: Larry Sobolewski Jr.

By: _____
Print Name: Larry Sobolewski Jr.
Its: Individual

(seal)

_____
(Name of Witness)

Indemnitor: Cecelia Sobolewski

By: _____
Print Name: Cecelia Sobolewski,
Its: Individual

(seal)

_____
(Name of Witness)

Indemnitor: Allen Othman

By: _____

Print Name: Allen Othman

Its: Individual

(seal)

_____
(Name of Witness)

Indemnitor: Eric Othman

By: _____

Print Name: Eric Othman

Its: Individual

(seal)

_____
(Name of Witness)

Indemnitor: Shereen Othman

By: _____

Print Name: Shereen Othman

Its: Individual

(seal)

_____
(Name of Witness)

Indemnitor: 2011 Allen Othman Trust

By: _____

Print Name: Allen Othman

Its: Trustee

(seal)

_____
(Name of Witness)

Indemnitor: IMAD and Shereen Othman Family Trust

By: _____

Print Name: Imad E. Othman

Its: Trustee

(seal)

_(signature)_
(Name of Witness)

Indemnitor: IMAD and Shereen Othman Family Trust

By: _(signature)_
Print Name: Shereen Othman
Its: Trustee

(seal)

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of _Riverside_

On _02/17/2014_ before me, _C. Montana Notary public_

<span style="font-size:smaller">(Here insert name and title of the officer)</span>

personally appeared _Larry Lee Sobolewski Jr and Cecelia Marie Sobolewski_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____          (Notary Seal)
Signature of Notary Public

C. MONTANA
COMM. #2043306
Notary Public - California
SAN BERNARDINO
My Commission Expires Sept. 29, 2017

---

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_General Indemnity Agreement_
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date _____

_____
(Additional Information)

### CAPACITY CLAIMED BY THE SIGNER
☐ Individual (s)
☐ Corporate Officer
_____
(Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of **Orange**

On **March 13, 2014** before me, **Veronica Alicia Lepe, Notary Public**
_Date_                                                     _Here Insert Name and Title of the Officer_

personally appeared **Allen Amer Othman, Imad Eric Othman**
**and Shereen Othman**
_Name(s) of Signer(s)_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**VERONICA ALICIA LEPE**
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

Place Notary Seal Above

Signature: _____
_Signature of Notary Public_

---

## OPTIONAL

_Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document._

**Description of Attached Document**

Title or Type of Document: **General Indemnity Agreement**

Document Date: **March 11, 2014**                   Number of Pages: **10**

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
- Corporate Officer — Title(s): _____
- Individual
- Partner — ☐ Limited ☐ General
- Attorney in Fact
- Trustee
- Guardian or Conservator
- Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____
- Corporate Officer — Title(s): _____
- Individual
- Partner — ☐ Limited ☐ General
- Attorney in Fact
- Trustee
- Guardian or Conservator
- Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of _Orange_____

On _March 8 2014_ before me, _Veronica Alicia Lepe, Notary Public_
　　Date　　　　　　　　　　　　　　　　Here Insert Name and Title of the Officer

personally appeared _Allen Amer Othman  Imad Eric Othman_
_and Shereen Othman_
　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____
Place Notary Seal Above　　　　　　　　Signature of Notary Public

VERONICA ALICIA LEPE
Commission # 1914012
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2014

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _General Indemnity Agreement_

Document Date: _March 11, 2014_　　　　　Number of Pages: _10_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____

☐ Corporate Officer — Title(s): _____

☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____

☐ Corporate Officer — Title(s): _____

☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here